# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MONOSOL RX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:17-cv-00246 BRM-DEA |
| | ) | |
| v. | ) | |
| | ) | Motion Date: April 3, 2017 |
| BIODELIVERY SCIENCES INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Scott S. Christie
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Danielle L. Herritt
Kia L. Freeman
**McCARTER & ENGLISH, LLP**
265 Franklin Street
Boston, Massachusetts 02110
(617) 449-6538

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................... 1

II.    BACKGROUND ............................................................................ 2

       A.    The Parties ....................................................................... 2

       B.    This Action Is The Latest In A Series Of Patent
             Infringement Lawsuits Between MonoSol And Its
             Business Partner Indivior Against BDSI............................ 3

III.   ARGUMENT.................................................................................. 6

       A.    General Standard Of Review On A Motion To Dismiss ................... 6

       B.    MonoSol Has Not Adequately Pleaded Patent Law
             Jurisdiction And Standing To Enforce The '167 Patent. .................... 7

             1.    Requirements For Jurisdiction And
                   Standing In A Patent Infringement
                   Action. ................................................................ 7

             2.    The Complaint Does Not Establish Patent
                   Jurisdiction Or That MonoSol Has
                   Standing to Enforce The '167 Patent
                   Without Indivior As A Co-Plaintiff............................ 9

       C.    MonoSol Has Not Adequately Pleaded Facts To
             Demonstrate Infringement Of The '167 Patent................................ 11

             1.    Requirements For Pleading Patent
                   Infringement ................................................. 11

             2.    MonoSol's Pleadings Concerning Patent
                   Infringement Are Woefully Deficient ......................... 12

                   a.    MonoSol Has Not Pleaded That
                         BELBUCA® "Film Is Self-
                         Supporting" As Required By The
                         Asserted Claims Of The '167
                         Patent ................................................. 15

                   b.    MonoSol Has Not Pleaded That
                         BELBUCA® Film Features "A
                         Substantially Uniform
                         Distribution…Of Said Active

i

Component Within Said Polymer Matrix" As Required By The Asserted Claims Of The '167 Patent .................................................................. 15

    c.    MonoSol Has Not Pleaded That BELBUCA® Film Involves "A Controlled Drying Process Which Rapidly Forms A Viscoelastic Matrix To Lock-In Said Active In Place Within Said Matrix" As Required By The Asserted Claims Of The '167 Patent ............................................. 16

    d.    MonoSol Has Not Adequately Pleaded That, For BELBUCA® Film, "Substantially Equal Sized Individual Unit Doses…Do Not Vary By More Than 10% Of Said Desired Amount Of Said Active Component," As Required By The Asserted Claims Of The '167 Patent .................................................................. 17

IV.    CONCLUSION .............................................................................. 21

ME1 24319430v.1

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................6, 7, 12, 20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................6

*Drone Technologies, Inc. v. Parrot S.A.,*
838 F.3d 1283 (Fed.Cir. 2016) ...........................................9

*Ethicon, Inc. v. United States Surgical Corp.,*
135 F.3d 1456 (Fed.Cir. 1998) ...........................................8

*Independent Wireless Telegraph Co. v. Radio Corp. of America,*
269 U.S. 459 (1926)...............................................................8

*Isr. Bio–Eng'g Project v. Amgen, Inc.,*
475 F.3d 1256 (Fed.Cir. 2007) ...........................................9

*K–Tech Telecomm., Inc. v. Time Warner Cable, Inc.,*
714 F.3d 1277 (Fed. Cir. 2013) .........................................11

*Oy Ajat, Ltd. v. Vatech Am., Inc.,*
No. CIV.A. 10-4875 PGS, 2011 WL 1458052 (D.N.J. Apr. 14, 2011) ............10

*Pittsburgh v. W. Penn Power Co.,*
147 F.3d 256 (3d Cir. 1998) ................................................7

*Robern, Inc. v. Glasscrafters, Inc.,*
2016 WL 3951726 (D.N.J. July 22, 2016) ........................12

*Schering Corp. v. Roussel–UCLAF SA,*
104 F.3d 341 (Fed.Cir. 1997) ..............................................9

*STC. UNM v. Intel Corp.,*
754 F.3d 940 (Fed.Cir. 2014) ............................................11

iii

*Straight Path IP Group, Inc. v. Vonage Holdings Corp.*,
Civ. No. 14–502 (JLL), 2014 WL 3345618 (D.N.J. July 7, 2014) ....................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................................7

*W. Penn Allegheny Health Svs. v. UPMC*,
627 F.3d 85 (3d Cir. 2010) ...........................................................................7, 12

*Waterman v. Mackenzie*,
138 U.S. 252 (1891)........................................................................................7, 8

## FEDERAL STATUTES

35 U.S.C. § 100(d) ...............................................................................................8

35 U.S.C. § 271(a) ..............................................................................................12

35 U.S.C. § 271(e)(2) ...........................................................................................3

35 U.S.C. § 281 ....................................................................................................8

## RULES

Fed. R. Civ. P. 12(b) .........................................................................................1, 6

Fed. R. Civ. P. 12(b)(6).....................................................................................7, 21

Fed. R. Civ. P. 12(b)(7).......................................................................................11

## OTHER AUTHORITIES

5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure:
Civil 3d § 1357 (3d ed. 2007)............................................................................7

iv

# I.    INTRODUCTION

Defendant BioDelivery Sciences International, Inc. ("BDSI") hereby moves, pursuant to Fed. R. Civ. P. 12(b), to dismiss patent infringement claims asserted by Plaintiff MonoSol Rx, LLC ("MonoSol").  On January 13, 2017, MonoSol filed the instant Complaint in the District of New Jersey, while a previous action against BDSI asserting the exact same patent, U.S. Patent No. 8,765,167 (the "'167 Patent"), remains pending in the Eastern District of North Carolina.

In its eagerness to move forward despite the pending Eastern District of North Carolina action, MonoSol failed to join a necessary party.  Indivior PLC (f/k/a Reckitt Benckiser Pharmaceuticals, Inc.), the exclusive licensee of the '167 Patent, jointly initiated the pending Eastern District of North Carolina action with MonoSol.  As a co-plaintiff, MonoSol endorsed Indivior's right to bring an action based on the '167 Patent.  Curiously, MonoSol now seeks in this case to enforce the same patent that MonoSol and Indivior are jointly enforcing in the pending Eastern District of North Carolina action —but without Indivior.  By failing to join its exclusive licensee Indivior here, MonoSol has neglected to join a party with an incontrovertible right to bring suit based on the '167 Patent.  MonoSol's Complaint should be dismissed for failure to join a necessary party.

MonoSol also has failed to state a claim upon which relief may be granted.  MonoSol's allegations that BDSI's BELBUCA® product infringes the '167 Patent

1

form is the sole basis for this action. Nonetheless, MonoSol failed to meet its burden to plead patent infringement with the requisite specificity because the Complaint does not allege that all elements of any asserted claim are satisfied by the BELBUCA® product. MonoSol simply does not allege sufficient facts for a reasonable inference of infringement to be drawn. Thus, the instant Complaint also should be dismissed for failure to meet the appropriate pleading standard.

## II.   BACKGROUND

### A.   The Parties

MonoSol's business partner Indivior is the holder of New Drug Application ("NDA") 22-410 for Suboxone® sublingual film. Declaration of Scott S. Christie in support of Defendants' Motion to Dismiss ("Christie Decl.") at ¶ 8, Exh. 6 at ¶ 2. Since the approval of NDA 22-410, Suboxone® film has been exclusively manufactured in the United States by MonoSol and exclusively sold in the United States by non-party Indivior, MonoSol's exclusive licensee of the '167 Patent. *Id.*, Exh. 6 at ¶¶ 3, 15-16. Defendant BDSI, on the other hand, is the holder of NDA No. 207932 for BELBUCA® pharmaceutical film. Dkt. 1 at ¶ 19. BDSI offers BELBUCA® film for sale throughout the United States. *Id.* Like Suboxone® film, BELBUCA® is a film for delivery of buprenorphine to treat opioid addiction. *Id.* at ¶¶ 3, 19.

2

ME1 24319430v.1

**B. This Action Is The Latest In A Series Of Patent Infringement Lawsuits Between MonoSol And Its Business Partner Indivior Against BDSI.**

This litigation represents the latest attempt, by MonoSol and its partner Indivior to gain a competitive advantage over BDSI through litigation. On October 29, 2013, Indivior and MonoSol filed a related complaint for patent infringement in the Eastern District of North Carolina, Civil Action Number 5:13-760-BO, alleging that BDSI's buprenorphine pharmaceutical film product BUNAVAIL® – a product that, at the time, had neither received FDA approval nor been marketed by BDSI – would, if marketed, infringe U.S. Patent No. 8,475,832 (the "'832 Patent"). (the "First E.D.N.C. Action"). *Id.* at ¶ 3, Exh. 1 at ¶¶ 1, 4.

On December 13, 2013, BDSI moved to dismiss the First E.D.N.C. Complaint for several reasons, including the fact that (i) the plaintiffs failed to state a claim for patent infringement pursuant to 35 U.S.C. § 271(e)(2), and (ii) the plaintiffs' claim for declaratory judgment was not ripe and therefore failed to invoke the Court's subject matter jurisdiction. *Id.* at ¶ 4, Exh. 2. After filing a petition for *inter partes* review ("IPR") of the '832 Patent in the United States Patent and Trademark Office ("USPTO"), BDSI filed a motion on January 31, 2014 to stay the case pending conclusion of the IPR. *Id.* at ¶ 5, Exh. 3. On May 21, 2014, the court dismissed the First E.D.N.C. Action, concluding that the

ME1 24319430v.1

plaintiffs' claims were premature, and that the plaintiffs had failed to state a Hatch-Waxman claim for patent infringement. *Id*. at ¶ 6, Exh. 4.

Following the dismissal of the First E.D.N.C. Action, during Indivior's investor presentation on July 28, 2014, Indivior's Chief Executive Officer stated in reference to BDSI that "of course the minute they launch [the BUNAVAIL® product], we will sue them for patent infringement...we are going to be aggressive about that and uncompromising." *Id*. at ¶ 7, Exh. 5 at ¶ 32.

As BDSI finalized its preparations for its commercial launch of BUNAVAIL®, on September 20, 2014, it filed a declaratory judgment action against Indivior and MonoSol in the Eastern District of North Carolina, Civil Action No. 5:14-cv-00529-H (the "Declaratory Judgment Action"). BDSI's Declaratory Judgment Action seeks a declaration that BDSI does not infringe any valid claim of the '832 Patent, U.S. Patent No. 7,897,080 (the "'080 Patent"), or U.S. Patent No. 8,652,378 (the "'378 Patent").[1] *Id*. at ¶ 7, Exh. 5. On December 23, 2014, the court granted the parties' joint motion to stay pending *inter partes* review of the '832 Patent and the '080 Patent in the USPTO. *Id*. at ¶ 9, Exh. 7.

In response to the filing of the Declaratory Judgment Action two days earlier in the Eastern District of North Carolina, Indivior and MonoSol filed a related

---

[1] On December 12, 2014, BDSI filed a Notice of Partial Voluntary Dismissal Without Prejudice of Count III of its Declaratory Judgment Action complaint which pertains to the '378 Patent. Thus, the Declaratory Judgment Action no longer asserts any claims based upon the '378 Patent.

4

complaint for patent infringement in this District, Civil Action No. 3:14-cv-05892-MAS-TJB, on September 22, 2014 against BDSI and its contract marketing organization, Quintiles, alleging that BDSI's BUNAVAIL® product infringed MonoSol's U.S. Patent No. 8,765,167 (the "'167 Patent") (the "First '167 Patent Infringement Action"). *Id.* at ¶ 8, Exh. 6 at ¶¶ 1, 24. Nevertheless, Judge Shipp granted BDSI's motion to transfer the First '167 Patent Infringement Action to the Eastern District of North Carolina on July 21, 2015. *Id.* at ¶ 10, Exh. 8 at 11. On May 6, 2016, the Eastern District of North Carolina court granted the parties' joint motion to stay pending reexamination of the '167 Patent in the USPTO. *Id.* at ¶ 11, Exh. 9.

On January 13, 2017, apparently motivated by a BDSI licensee's intent to terminate its license, Dkt. 1 at ¶ 19, MonoSol filed yet another action in the District of New Jersey against BDSI alleging infringement of the '167 Patent. Like the allegations in the First '167 Patent Infringement Action, MonoSol's new infringement allegations are directed to another BDSI buprenorphine pharmaceutical film product. *Id.* at ¶¶ 5, 21. While BDSI also is moving, in the alternative, to transfer this case to the Eastern District of North Carolina because, among other reasons, all of MonoSol's allegations that BDSI's buprenorphine pharmaceutical film products infringe the '167 Patent and related patents should be

ME1 24319430v.1

addressed and resolved in one forum, the Court nevertheless should dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b).

## III.  ARGUMENT

### A.  General Standard Of Review On A Motion To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted).

6

The Supreme Court and the Third Circuit have both held that the *Iqbal/Twombly* pleading standard applies in all civil cases. See *id.* at 684 (pleading standard applies in "all civil actions"); *W. Penn Allegheny Health Svs. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) ("Rule 8's pleading standard applies with the same level of rigor in all civil actions") (internal quotation marks omitted). Moreover, in deciding a motion to dismiss, a court may consider not only the allegations in the complaint, but also documents attached to or specifically referenced in the complaint and matters of public record. *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).

**B. MonoSol Has Not Adequately Pleaded Patent Law Jurisdiction And Standing To Enforce The '167 Patent.**

**1. Requirements For Jurisdiction And Standing In A Patent Infringement Action.**

It is well settled that all entities with the right of enforcement must join in a patent infringement suit. *See, e.g.*, *Waterman v. Mackenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). "The patentee or his assigns may, by instrument in

7

writing, assign, grant, and convey, either (1) the whole patent...; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. A transfer of any of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers." *Id.* at 255 (emphasis added). The presence of all parties with the right of enforcement is necessary "to give jurisdiction under the patent laws." *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 468; 46 S.Ct. 166, 70 L.Ed. 357 (1926); 35 U.S.C. § 281 ("A *patentee* shall have remedy by civil action for infringement of his patent.") (emphasis added); 35 U.S.C. § 100(d) (defining *patentee* to include the entity to whom the patent issued and any "successors in title").

The Federal Circuit has long applied the rule that a patent infringement suit may only be maintained if all entities with an enforcement interest in the patent are joined as plaintiffs. *See, e.g.*, *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed.Cir. 1998) ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit."). One entity having an enforcement interest in a patent may prevent another such entity from enforcing the patent by refusing to join a suit to enforce the patent. *See, e.g.*,

8

*Schering Corp. v. Roussel–UCLAF SA*, 104 F.3d 341, 345 (Fed.Cir. 1997) ("[O]ne co-owner has the right to impede the co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."). Absent joinder of all entities with a right to enforce a patent, a single such entity seeking to enforce the patent alone lacks standing. *See, e.g.*, *Isr. Bio–Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed.Cir. 2007); *Drone Technologies, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed.Cir. 2016) (standing derives from the alleged injury of violation of the entity's exclusionary rights).

### 2. The Complaint Does Not Establish Patent Jurisdiction Or That MonoSol Has Standing to Enforce The '167 Patent Without Indivior As A Co-Plaintiff

MonoSol claims to own "all rights…to the '167 patent, including the right to sue and to recover for any current or past infringement of that patent." Dkt. 1 at ¶ 18. On the other hand, MonoSol concedes that Indivior is the exclusive licensee of the '167 Patent. Christie Decl. at ¶ 8, Exh. 6 at ¶¶ 15-16, and at ¶ 12, Exh. 10 at p. 1 (Indivior "is an exclusive licensee of the '167 Patent for Suboxone® sublingual film and other products."). Furthermore, MonoSol acknowledges that it and Indivior jointly "sued BDSI for infringement of the '167 patent." Dkt. 1 at ¶ 4; *see also* Christie Decl. at ¶ 8, Exh. 6.

Although the First '167 Patent Infringement Action has been transferred to the Eastern District of North Carolina, that lawsuit remains viable. If MonoSol in

9

fact owns all rights to the '167 patent, as it asserts here, then there would have been no need for Indivior to join as a co-plaintiff in the pending First '167 Patent Infringement Action. By joining with Indivior in the First '167 Patent Infringement Action to enforce the '167 Patent, MonoSol has endorsed Indivior's right to enforce the '167 Patent. Indeed, the fact that Indivior, the exclusive licensee of the '167 Patent, is suing to enforce that patent in the First '167 Patent Infringement Action constitutes an admission by co-plaintiff MonoSol that it actually does not possess the exclusive right to sue and recover from alleged infringers of this patent.

Contradictory and conclusory statements are not sufficient to satisfy the pleading standard. *See, e.g.*, *Straight Path IP Group, Inc. v. Vonage Holdings Corp.*, Civ. No. 14–502 (JLL), 2014 WL 3345618, at *2-3 (D.N.J. July 7, 2014); *Oy Ajat, Ltd. v. Vatech Am., Inc.*, No. CIV.A. 10-4875 PGS, 2011 WL 1458052, at *2-3 (D.N.J. Apr. 14, 2011). Here, MonoSol's assertion that is owns all rights to the '167 Patent is not only conclusory, but also is contradicted by its concession that it joined with Indivior to enforce the '167 Patent in the First '167 Patent Infringement Action. Thus, MonoSol has failed to meet its burden to adequately plead patent jurisdiction and standing.

10

ME1 24319430v.1

The joinder rule safeguards against the possibility that "an accused infringer [would be subject] to a different infringement suit on the same patent." See *STC. UNM v. Intel Corp.*, 754 F.3d 940, 947 (Fed.Cir. 2014). Because of Indivior's interest in the '167 Patent and involvement in the co-pending First '167 Patent Infringement Action, allowing this case to proceed in the absence of Indivior as a plaintiff would unfairly subject BDSI to all manner of prejudicial inconsistencies arising from two parallel suits alleging infringement of the '167 Patent by BDSI buprenorphine pharmaceutical film products – including as to claim construction, infringement and invalidity. Even assuming *arguendo* that if the pleading standards were satisfied as to patent law jurisdiction and MonoSol's standing, MonoSol should not be allowed to proceed without Indivior as a co-plaintiff as a matter of public policy. Because MonoSol has failed to join Indivior as a necessary party, the Complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) and 19.

### C.    MonoSol Has Not Adequately Pleaded Facts To Demonstrate Infringement Of The '167 Patent

#### 1.    Requirements For Pleading Patent Infringement

Prior to the abrogation of Rule 84, the Federal Circuit held that bare-bones allegations of direct patent infringement consistent with Form 18 were sufficient to meet the pleading standard. *See, e.g.*, *K–Tech Telecomm., Inc. v. Time Warner*

11

ME1 24319430v.1

*Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013). But since the abrogation of Rule 84 and Form 18 in December 2015, no credible conflict remains between the requirements of Form 18 and the more general pleading requirements and, thus, the *Iqbal/Twombly* standard applies to patent infringement pleadings. See *Robern, Inc. v. Glasscrafters, Inc.*, 2016 WL 3951726, *4 (D.N.J. July 22, 2016). The *Robern* court holding is consistent with both Supreme Court and the Third Circuit precedent. *See Ashcroft v. Iqbal,* 556 U.S. 662, 684 (2009) (pleading standard applies in "all civil actions"); *W. Penn Allegheny Health Svs. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) ("Rule 8's pleading standard applies with the same level of rigor in all civil actions") (internal quotation marks omitted).

### 2. MonoSol's Pleadings Concerning Patent Infringement Are Woefully Deficient

MonoSol alleges that BDSI infringes by making, offering to sell, and/or selling BELBUCA® film. Dkt. 1 at ¶¶ 2-3, 11, 19-20, 25, 27-28, 33. In other words, MonoSol's allegations that BDSI infringes the '167 Patent are all based solely on its activities related to BELBUCA® film. *Id.* Because establishing patent infringement requires activities directed to the "patented invention," 35 U.S.C. § 271(a), MonoSol cannot meet the *Iqbal/Twombly* standard unless its allegations are sufficiently detailed as to BELBUCA® film.

12

MonoSol identifies only two independent claims of the '167 Patent purportedly infringed by BELBUCA® film: claim 13 and claim 95. *See* Dkt. 1 at ¶¶ 2, 4, 5, 28, 32, 36, 37 (each identifying the same list of claims allegedly infringed) and Exh. A (only claims 13 and 95 of the '167 Patent identified as independent claims). Each of the two asserted independent claims is directed to "[a]n oral film for delivery of a desired amount of an active component." *Id.* at Exh. A, 41:50-51 and 46:58-59. Both of the asserted independent claims recite many of the same features.

MonoSol's factual assertions relating to how BELBUCA® film may satisfy elements of the '167 Patent claims are remarkably limited. MonoSol characterizes BELBUCA® as a "buccal film" and "a pharmaceutical drug product." *Id.* at ¶¶ 2, 21). MonoSol identifies BELBUCA®'s alleged ingredients and various alleged dosage strengths. *Id.* at ¶¶ 20-23. And finally, MonoSol asserts that "[t]he strength of each BELBUCA® film is dependent on the buprenorphine concentration in the formulation and the surface area of the film." *Id.* at ¶ 22.

However, like asserted independent claim 13, asserted independent claim 95 requires much more. Claim 95 of the '167 patent recites:

> 95. An oral film for delivery of a desired amount of an active component comprising:
>
> an ingestible, water-soluble polymer matrix comprising a polymer selected from the group consisting of hydroxyethylcellulose,

ME1 24319430v.1

hydroxypropylcellulose and carboxymethyl cellulose and combinations thereof;

at least one anti-tacking agent comprising sodium benzoate;

a substantially uniform distribution of said desired amount of said active component within said polymer matrix, wherein said active component is selected from the group consisting of cosmetic agents, pharmaceutical agents, vitamins, bioactive agents and combinations thereof, said film being formed by a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said active in place within said matrix and maintain said substantially uniform distribution;

wherein said film is self-supporting and the active component is substantially uniformly distributed, whereby said substantially uniform distribution is measured by substantially equally sized individual unit doses which do not vary by more than 10% of said desired amount of said active component.

MonoSol simply ignores most of the elements required by the two asserted independent claims.

The Complaint demonstrates that MonoSol made no effort to relate its factual allegations regarding BELBUCA® film to any asserted '167 Patent claim. MonoSol simply fails to present factual allegations from which one might reasonably infer that BELBUCA® film satisfies all the elements of either asserted independent claim, much less any of the asserted dependent claims. The following are representative examples of MonoSol's pleading deficiencies, which are by no means comprehensive of the scope of the problem.

14

### a. MonoSol Has Not Pleaded That BELBUCA® "Film Is Self-Supporting" As Required By The Asserted Claims Of The '167 Patent

Both asserted independent claims only encompass "film [that] is self-supporting."  Dkt. 1 at ¶ 17, Exh. A at 42:3 (claim 13 reciting "wherein said film is self-supporting")).  But film is not necessarily self-supporting.  According to the '167 Patent, film that requires a separate support to maintain its integrity and structure is not self-supporting.  *Id.* at Exh. A at 23:37-39 ("Desirably, the films will also be self-supporting or in other words able to maintain their integrity and structure in the absence of a separate support.")).  MonoSol presents no factual allegations from which BDSI may reasonably infer that BELBUCA® film is self-supporting.

### b. MonoSol Has Not Pleaded That BELBUCA® Film Features "A Substantially Uniform Distribution…Of Said Active Component Within Said Polymer Matrix" As Required By The Asserted Claims Of The '167 Patent

MonoSol asserts that the '167 Patent (not BELBUCA®) generally relates to films "that contain an active component—such as a drug—that is evenly distributed throughout the film."  *Id.* at ¶ 16.  Claims 13 and 95 each recite uniformity, in some respect, at least four times.  But MonoSol nonetheless presents no assertions from which one might reasonably infer that BELBUCA® film features the required uniformity.

15

Furthermore, both asserted independent claims only encompass film that features "a substantially uniform distribution…of said active component within said polymer matrix." *Id*. at ¶ 17; Exh. A at 41:57-58. The '167 Patent discloses that, after a matrix is cast into a film, active particles may be "placed on" its surface. *Id*. at Exh. A at 11:9-30. When the active component is placed on its surface before drying, a film would not have the matrix uniformity required by the asserted claims.

MonoSol presents no allegations about how the buprenorphine active is part of BELBUCA® film. Moreover, MonoSol presents no facts at all concerning the distribution of the buprenorphine active within the BELBUCA® matrix. Indeed, BELBUCA® is described as a "bi-layer" film, thereby suggesting that it may not feature a substantially uniform distribution of its active component within its matrix. *Id*. at Exh. C at 20:2. Thus, MonoSol presents no factual allegations from which one may reasonably infer that BELBUCA® film features "a substantially uniform distribution…of said active component within said polymer matrix."

> **c.** **MonoSol Has Not Pleaded That BELBUCA® Film Involves "A Controlled Drying Process Which Rapidly Forms A Viscoelastic Matrix To Lock-In Said Active In Place Within Said Matrix" As Required By The Asserted Claims Of The '167 Patent**

Both asserted independent claims only encompass film formed by "a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said

16

ME1 24319430v.1

active in place within said matrix." *Id.* at ¶ 17; Exh. A at 41:62-64. MonoSol touts its alleged improvements in the film-making process as "set forth in the claims of the '167 patent." *Id.* at ¶ 17. And according to the '167 Patent, during the film-making process, the active component can aggregate, conglomerate, or settle. *Id.* at ¶ 17; Exh. A at 2:21-3:31, 7:11-9:4.

But MonoSol does not assert that the BELBUCA®'s drying process prevents undesired aggregation, conglomeration, or settling. In fact, MonoSol presents no factual assertions at all regarding BELBUCA®'s drying process. Thus, even if one were to assume that the BELBUCA® matrix began with a substantially uniform distribution of active, MonoSol presents no pleadings from which one may reasonably infer that BELBUCA® film is formed by "a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said active in place within said matrix."

> ### d. MonoSol Has Not Adequately Pleaded That, For BELBUCA® Film, "Substantially Equal Sized Individual Unit Doses…Do Not Vary By More Than 10% Of Said Desired Amount Of Said Active Component," As Required By The Asserted Claims Of The '167 Patent

Both asserted independent claims require "substantially equally sized individual unit doses which do not vary by more than 10% of said desired amount of said active component." *Id.* at ¶ 17; Exh. A at 42:5-8 (claim 13 reciting the

17

ME1 24319430v.1

same requirement for substantially "equal" sized individual unit doses). MonoSol touts the 10% uniformity requirement as a distinguishing feature of its patented film. For example, in the *inter partes* reviews of the '167 Patent, MonoSol argued the patented film has "a superior uniform distribution of active components demonstrating a non-self-aggregating uniform heterogeneity so as to provide a vehicle with substantially evenly distributed components, including the active components, such that individual unit doses cut therefrom vary no more than +/- 10% from the labeled dosage amount (desired amount) for the particular individual unit doses for the drug." *See* Christie Decl. at ¶ 13, Exh. 11. But MonoSol does not assert that substantially equally sized individual unit doses of BELBUCA® do not vary by more than 10% of said desired amount of said active component.

MonoSol may argue that one might infer the 10% uniformity requirement is met from its factual assertions that BELBUCA® products feature different dosage strengths and surface areas. Dkt. 1 at ¶¶ 20, 22 (Table 6 listing film with surface areas). But film products with different surface areas are not "substantially equally sized." One may not reasonably infer satisfaction of a requirement applicable to unit doses that are "substantially equal sized" from MonoSol's assertions as to BELBUCA® products featuring different surface areas.

18

ME1 24319430v.1

Moreover, Table 6 in ¶ 22 of the Complaint indicates that a higher strength dosage unit may be smaller than a lower strength dosage unit. For example, the surface area of a 300 mcg BELBUCA® dosage is less than half the surface area of a 150 mg dosage. *Id.* at ¶ 22 (Table 6 indicating the surface area of a 300 mcg dosage is 0.934 cm$^2$ whereas that of a 150 mcg dosage is 2.431 cm$^2$). Thus, Table 6 in ¶ 22 of the Complaint indicates that, in BELBUCA® dosage units, buprenorphine concentrations may differ.

MonoSol further may argue that one can infer the 10% uniformity requirement is met from its assertion that "[t]he strength of each BELBUCA film is dependent on the buprenorphine concentration in the formulation and the surface area of the film." *Id.* However, that assertion does not suggest how the strength of a BELBUCA® film[2] may compare to a desired amount of buprenorphine. Nor does it indicate how the buprenorphine strength of individual dosage units of a BELBUCA® film may compare to a desired amount of buprenorphine. It furthermore does not address the fact that individual dosage units having the same surface area, but different buprenorphine concentrations, may vary by more than 10% of the desired amount of buprenorphine. Thus, one may not reasonably infer satisfaction of the requirement that "substantially equally sized individual unit

[2] Each of the asserted independent claims recites both "film" and "individual unit doses" thereof.

19

doses…do not vary by more than 10% of said desired amount of said active component" from the assertion that the buprenorphine strength of each BELBUCA® film is a function of concentration and surface area.

Again, MonoSol does not assert that the buprenorphine in substantially equal sized individual unit doses of BELBUCA® has any particular relationship to a desired amount of buprenorphine. MonoSol simply has failed to present any factual allegations from which one may infer that substantially equal sized individual unit doses of BELBUCA satisfy the requirement, in both asserted independent claims, that active not vary by more than 10% of the desired amount.

While the foregoing is merely exemplary, it is clear that the Complaint fundamentally fails to present the requisite degree of factual specificity to allow one to draw the inference that BELBUCA® satisfies all the elements required by each asserted independent claim. MonoSol has failed to allege any facts that would make its infringement allegation plausible, as opposed to merely possible. See *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (requiring pleadings to present a plausible claim for relief to survive a motion to dismiss). In other words, MonoSol fails to satisfy the pleading standard as to alleged infringement by BELBUCA®. Therefore, the Court must dismiss the Complaint with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

20

## IV. CONCLUSION

For the reasons detailed above, BDSI respectfully requests that the Court dismiss the Complaint with prejudice because (1) MonoSol failed to establish patent law jurisdiction and standing by endorsing Indivior's right to enforce the '167 Patent yet failing to join Indivior as a necessary party; and (2) MonoSol failed to meet its burden to adequately plead facts in support of its allegations that BELBUCA® infringes any asserted claim of the '167 Patent.

Dated: March 1, 2017

McCARTER & ENGLISH, LLP


By: s/ Scott S. Christie
        Scott S. Christie

Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
973-622-4444

Danielle Herritt
Kia Freeman
265 Franklin Street
Boston, Massachusetts 02110
617-449-6538

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

21