# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MONOSOL RX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:17-cv-00246 BRM-DEA |
| | ) | |
| v. | ) | |
| | ) | Motion Date: April 3, 2017 |
| BIODELIVERY SCIENCES INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF NORTH CAROLINA PURSUANT TO 28 U.S.C. §1404(a)

Scott S. Christie
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Danielle L. Herritt
Kia L. Freeman
**McCARTER & ENGLISH, LLP**
265 Franklin Street
Boston, Massachusetts 02110
(617) 449-6538

*Attorneys for Defendant*
*BioDelivery Sciences International,*
*Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION ·································································· 1

II. BACKGROUND ·································································· 4

    A. This Action Arises Out Of The Alleged Infringement Of Plaintiff's Related Patents By BDSI's BUNAVAIL® And BELBUCA® Products ···································· 4

    B. MonoSol And Indivior Initially Chose To Litigate Their Infringement Claims In The Eastern District of North Carolina And Related Litigation Alleging Infringement of the '167 Patent Is Pending In That District ···································· 4

        1. MonoSol and Indivior Filed Their First Lawsuit For Patent Infringement Against BDSI In The Eastern District Of North Carolina ···································· 4

        2. MonoSol and Indivior Promised To Sue BDSI Again, So BDSI Filed A Declaratory Judgment Action In The Eastern District of North Carolina, Plaintiff's Chosen Forum ············ 5

        3. MonoSol Has A Lawsuit Pending Against BDSI In The Eastern District of North Carolina Alleging Infringement of the '167 Patent ···································· 7

    C. There Are Significant Common Elements Between And Among The Declaratory Judgment Action, The First '167 Patent Infringement Action And This Case ···································· 7

    D. North Carolina Has A Greater Nexus Than New Jersey To This Litigation ···································· 8

        1. Defendant BDSI Is Based In North Carolina And Relevant Employees And Documents Are Located in North Carolina ····· 8

        2. New Jersey Has A *De Minimis* Nexus To This Dispute ·········· 9

ME1 24204685v.1

III. ARGUMENT ································································· 10

    **A.** Standard Of Review On A Motion To Transfer ···························· 10

    **B.** This Action Could Have Been Brought – And Should Have Been Brought – In The Eastern District of North Carolina ·············· 12

    **C.** The *Jumara* "Private Interest" Factors Heavily Favor Transfer to North Carolina ···························································· 13

        **1.** Plaintiff's *First* Choice of Forum Is Entitled To Weight, But Forum Shopping Must Be Discouraged ······················· 13

        **2.** The Defendant's Forum Preference Warrants Transfer ··········· 16

        **3.** Plaintiff's Claims Arose in North Carolina ······················· 17

        **4.** The Convenience Of Witnesses Weighs In Favor Of Transfer ··· 18

        **5.** The Location Of Documents Weighs In Favor Of Transfer ······ 20

    **D.** The "Public Interest" Factors Favor Transfer to North Carolina ········ 20

        **1.** Practical Considerations – Including The First E.D.N.C. Action, The Pending Declaratory Judgment Action, And The First '167 Patent Infringement Action – Favor Transfer ····· 20

        **2.** Judicial Efficiency Favors Transfer ······························· 24

        **3.** The Eastern District Of North Carolina Has A Local Interest In The Resolution Of This Dispute ······························· 25

        **4.** The Remaining *Jumara* Factors Are Neutral ····················· 26

IV. CONCLUSION ····························································· 26

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*AB Coaster Holdings, Inc. v. Icon Health & Fitness, Inc.,*
    No. 2:10-cv-06760 ES-CLW, 2011 WL 6887724 (D.N.J. Dec. 29, 2011) ........19

*Bayer Pharma AG v. Watson Laboratories,*
    CA No. 14-1804, 2014 WL 2516412 (D.N.J. Jun. 2, 2014).................11, 14, 22

*Cont'l Grain Co. v. The Barge FBL–585,*
    364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)...........................................21

*D2L Ltd. v. Blackboard, Inc.,*
    671 F. Supp. 2d 768 (D. Md. 2009)...................................................................25

*Estate of Antonious v. Yonex Corp. USA,*
    C.A. No. 08-cv-3501 DMC, 2009 WL 1346617 (D.N.J. May 13, 2009) ....11, 18

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.,*
    C.A. No.. 2:13-05805 JL, 2014 WL 1555133 (D.N.J. Apr. 14, 2014)
    *aff'd,* C.A. No. 13-5805 ILL, 2014 WL 3748214 (D.N.J. July 29, 2014) ..........16

*In re Genentech, Inc.,*
    566 F.3d 1338 (Fed. Cir. 2009) ...................................................................18, 20

*In re Hoffman-La Roche, Inc.,*
    587 F.3d 1333 (Fed. Cir. 2009) ........................................................................25

*Intendis, Inc. v. River's Edge Pharm., LLC,*
    C.A. No. 11-2838 FSH PS, 2011 WL 5513195 (D.N.J. Nov. 10, 2011) ...........17

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995) ........................................................11, 13, 16, 18, 26

*Levinson v. Regal Ware, Inc.,*
    No. CIV. A. 89-1298 MTB, 1989 WL 205724 (D.N.J. Oct. 6, 1989) ...............18

*Liggett Group Inc. v. R.J. Reynolds Tobacco Co.,*
    102 F.Supp.2d 518 (2000) ................................................................................14

ME1 24204685v.1

*Medidata Solutions, Inc. v. DATATRAK Int'l, Inc.*,
No. CIV. 12-4748 WJM, 2013 WL 1989854 (D.N.J. May 13, 2013) .........22, 23

*Melone v. Boeing Co.*,
CA No. 2:07-cv-1192, 2008 WL 877974 (D.N.J. Mar. 28, 2008) ....................15

*Rayco Mfg. Co. v. Chicopee Mfg. Corp.*,
148 F. Supp. 588 (S.D.N.Y. 1957) ..............................................................15, 16

*Regents of the Univ. of California v. Eli Lilly and Co.*,
119 F.3d 1559 (Fed. Cir. 1997) ..........................................................................25

*Ricoh Co. v. Honeywell, Inc.*,
817 F. Supp. 473 (D.N.J. 1993) ....................................................................17, 22

*Telcordia Technologies, Inc. v. Tellabs, Inc.*,
No. CIV.A. 09-2089 (JAG), 2009 WL 5064787 (D.N.J. Dec. 16, 2009) ..........24

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) ..........................................................................10

*Virgin Wireless, Inc. v, Virgin Enters. Ltd.*,
201 F. Supp. 2d 294 (D. Del. 2002)....................................................................10

*In re Volkswagen AG*,
371 F.3d 201 (Fed. Cir. 2004) ............................................................................25

## FEDERAL STATUTES

28 U.S.C. § 1391 ................................................................................................12

28 U.S.C. § 1404(a) ..........................................................................1, 10, 21, 26

28 U.S.C. § 1400(b) ...........................................................................................13

35 U.S.C. § 271(e)(2)............................................................................................5

iv

Defendant BioDelivery Sciences International, Inc. ("BDSI") respectfully submits this memorandum of law in support of its motion to transfer venue to the United States District Court for the Eastern District of North Carolina ("E.D.N.C.") pursuant to 28 U.S.C. §1404(a).

## I.  INTRODUCTION

This patent infringement case belongs in the Eastern District of North Carolina, where three previously-filed patent cases involving BDSI's innovative buprenorphine film product BUNAVAIL® have proceeded and two are still pending, and where Defendant BDSI maintains its headquarters.  These cases ought not be separated as they are inextricably intertwined, involving substantially the same parties, U.S. Patent No. 8,765,167 (the "'167 Patent") and other patents in the same family, and BDSI's buprenorphine pharmaceutical film products BUNAVAIL® and BELBUCA®.  Indeed, the action before this Court is the fourth battle in a larger intellectual property war between these parties concerning BDSI's BUNAVAIL® and BELBUCA® film products.

In October 2013, Plaintiffs Reckitt Benckiser Pharmaceuticals, Inc. (n/k/a Indivior PLC) ("Indivior") and MonoSol Rx, LLC ("MonoSol") first filed suit against Defendant BDSI in the Eastern District of North Carolina alleging infringement of U.S. Patent No. 8,475,832 (the "'832 Patent").  In May 2014, the Eastern District of North Carolina court dismissed that action as premature.

1

Undeterred, Indivior promised its stockholders on July 28, 2014 that it would sue BDSI immediately upon BDSI's launch of its BUNAVAIL® product.

On September 20, 2014, as BDSI prepared for the launch of BUNAVAIL®, it took the affirmative step of filing an action in Plaintiff's chosen forum – the Eastern District of North Carolina – seeking a declaratory judgment of non-infringement and patent invalidity as to the originally asserted '832 Patent as well as U.S. Patent No. 7,897,080 (the "'080 Patent") and U.S. Patent No. 8,652,378 (the "'378 Patent") with regard to BUNAVAIL®.

In a mad dash to re-claim their offensive position, and obtain what they viewed as a more favorable forum with the effect of creating additional expense for BDSI, Indivior and MonoSol *two days later* filed a new patent infringement lawsuit in this Court rather than pursue their claims in the Eastern District of North Carolina.  This new case alleged that BDSI's buprenorphine pharmaceutical film product BUNAVAIL® infringes a new and different patent, U.S. Patent No. 8,765,167 (the "'167 Patent").  However, Judge Shipp appreciated the substantial similarity between the '167 Patent and the patents-in-suit in the declaratory judgment action as well as the commonality of the parties and accused products in the two cases, and granted BDSI's motion to transfer this case to the Eastern District of North Carolina on July 21, 2015.

ME1 24204685v.1

Despite the entirety of the patent infringement dispute between MonoSol and BDSI now pending in the Eastern District of North Carolina – including infringement and invalidity of the '167 Patent – MonoSol yet again has improvidently seen fit to file this action in this Court alleging infringement of the very same '167 Patent by BDSI's buprenorphine pharmaceutical film product BELBUCA®. It is evident that this action is the latest in a string of attempts by MonoSol to impose unnecessary and additional burden and expense on BDSI while avoiding a comprehensive resolution of patent infringement claims in the Eastern District of North Carolina.

In light of the pending litigation in the Eastern District of North Carolina centered on the '167 Patent and other patents in the same family, implicating substantially the same parties, and involving BDSI's buprenorphine pharmaceutical film products BUNAVAIL® and BELBUCA®, it is logical as a matter of judicial efficiency and convenience of the parties that this dispute be resolved in that venue as well, where related issues are already under consideration. That venue is Plaintiff's originally chosen forum and BDSI's preferred forum. BDSI has its principal place of business in North Carolina which is where it maintains relevant documents and relevant employees are located. Having originally chosen to litigate in the Eastern District of North Carolina, Plaintiff can now hardly complain of the transfer of this action to that forum. For the reasons set forth herein, BDSI

3

respectfully requests that this action be transferred to the Eastern District of North Carolina.

## II.    BACKGROUND

### A.    This Action Arises Out Of The Alleged Infringement Of Plaintiff's Related Patents By BDSI's BUNAVAIL® And BELBUCA® Products

This action for patent infringement arises out of BDSI's development of new and innovative buprenorphine pharmaceutical film products, BUNAVAIL® and BELBUCA®, which have been approved by the Food and Drug Administration ("FDA") for the treatment of opioid addiction.  Plaintiff MonoSol and its business partner Indivior market a competing product, Suboxone® sublingual film.  Plaintiff alleges in the Complaint that BELBUCA® infringes the '167 Patent, which MonoSol owns and Indivior exclusively licenses.  Declaration of Scott S. Christie in support of Defendants' Motion to Transfer ("Christie Decl.") at ¶ 15, Exh. 6 at ¶¶ 15-16.  As described below, this action is substantially related to two actions already pending in the United States District Court for the Eastern District of North Carolina.

### B.    MonoSol And Indivior Initially Chose To Litigate Their Infringement Claims In The Eastern District of North Carolina And Related Litigation Alleging Infringement of the '167 Patent Is Pending In That District

#### 1.    MonoSol and Indivior Filed Their First Lawsuit For Patent Infringement Against BDSI In The Eastern District Of North Carolina

ME1 24204685v.1

On October 29, 2013, Indivior and MonoSol filed a related complaint for patent infringement in the Eastern District of North Carolina, Civil Action Number 5:13-760-BO, alleging that BDSI's buprenorphine pharmaceutical film product BUNAVAIL® – a product that, at the time, had neither received FDA approval nor been marketed by BDSI – would, if marketed, infringe the '832 Patent. (the "First E.D.N.C. Action"). *Id*. at ¶ 3, Exh. 1 at ¶¶ 1, 4.

On December 13, 2013, BDSI moved to dismiss the First E.D.N.C. Complaint for several reasons, including the fact that (i) the plaintiffs failed to state a claim for patent infringement pursuant to 35 U.S.C. § 271(e)(2), and (ii) the plaintiffs' claim for declaratory judgment was not ripe and therefore failed to invoke the Court's subject matter jurisdiction. *Id*. at ¶ 4, Exh. 2. After filing a petition for *inter partes* review ("IPR") of the '832 Patent in the United States Patent and Trademark Office ("USPTO"), BDSI filed a motion on January 31, 2014 to stay the case pending conclusion of the IPR. *Id*. at ¶ 5, Exh. 3. On May 21, 2014, the court dismissed the First E.D.N.C. Action, concluding that the plaintiffs' claims were premature, and that the plaintiffs had failed to state a Hatch-Waxman claim for patent infringement. *Id*. at ¶ 6, Exh. 4.

> **2.    MonoSol and Indivior Promised To Sue BDSI Again, So BDSI Filed A Declaratory Judgment Action In The Eastern District of North Carolina, Plaintiff's Chosen Forum**

Following the dismissal of the First E.D.N.C. Action, during Indivior's investor presentation on July 28, 2014, Indivior's Chief Executive Officer stated in reference to BDSI that "of course the minute they launch [the BUNAVAIL® product], we will sue them for patent infringement...we are going to be aggressive about that and uncompromising." *Id*. at ¶ 7, Exh. 5 at ¶ 32.

As BDSI finalized its preparations for its commercial launch of BUNAVAIL®, on September 20, 2014, it filed a declaratory judgment action against Indivior and MonoSol in the Eastern District of North Carolina, Civil Action No. 5:14-cv-00529-H (the "Declaratory Judgment Action"). BDSI's Declaratory Judgment Action seeks a declaration that BDSI does not infringe any valid claim of the '832 Patent, the '080 Patent, or the '378 Patent.[1] *Id*. at ¶ 7, Exh. 5. BDSI chose the Eastern District of North Carolina as the venue for the Declaratory Judgment Action in part because that is the forum where the parties had previously litigated the dispute based upon the '832 Patent and BDSI's BUNAVAIL® product, and because the Eastern District of North Carolina court had prior familiarity with the issues. On December 23, 2014, the court granted the parties' joint motion to stay pending *inter partes* review of the '832 Patent and the '080 Patent in the USPTO. *Id*. at ¶ 9, Exh. 7.

---

[1] On December 12, 2014, BDSI filed a Notice of Partial Voluntary Dismissal Without Prejudice of Count III of its Declaratory Judgment Action complaint which pertains to the '378 Patent. Thus, the Declaratory Judgment Action no longer asserts any claims based upon the '378 Patent.

6

ME1 24204685v.1

### 3. MonoSol Has A Lawsuit Pending Against BDSI In The Eastern District of North Carolina Alleging Infringement of the '167 Patent

In response to the filing of the Declaratory Judgment Action two days earlier in the Eastern District of North Carolina, Indivior and MonoSol filed a related complaint for patent infringement in this District, Civil Action No. 3:14-cv-05892-MAS-TJB, on September 22, 2014 against BDSI and its contract marketing organization, Quintiles, alleging that BDSI's BUNAVAIL® product infringed MonoSol's '167 patent (the "First '167 Patent Infringement Action"). *Id*. at ¶ 8, Exh. 6 at ¶¶ 1, 24. Recognizing the close relationship between the '167 Patent and the patents-in-suit in the Declaratory Judgment Action as well as the commonality of the parties and the accused BUNAVAIL® product in the two cases, Judge Shipp granted BDSI's motion to transfer the First '167 Patent Infringement Action to the Eastern District of North Carolina on July 21, 2015. *Id*. at ¶ 10, Exh. 8 at 11. On May 6, 2016, the Eastern District of North Carolina court granted the parties' joint motion to stay pending reexamination of the '167 Patent in the USPTO. *Id*. at ¶ 11, Exh. 9.

### C. There Are Significant Common Elements Between And Among The Declaratory Judgment Action, The First '167 Patent Infringement Action And This Case

The earlier-filed Declaratory Judgment Action and the First '167 Patent Infringement Action substantially overlap with this action in that they involve

7

substantially the same parties, technologically similar accused products owned by BDSI, and patents owned and/or licensed by Plaintiff. Moreover, the First '167 Patent Infringement Action and this case both involve allegations by Plaintiff of infringement of the '167 Patent against BDSI's buprenorphine pharmaceutical film products. Furthermore, the patents-in-suit in the Declaratory Judgment Action substantially overlap with the '167 Patent asserted in this action. All of the patents-in-suit are directed to pharmaceutical films and processes of making films, and the '378 Patent and the '080 Patent share common ancestry with the '167 Patent, and thus those three patents have common claim terms, figures, and language in the specifications. *Id*. at ¶¶ 13-15. Finally, all four patents list one common inventor, Gary L. Myers, and the '832 Patent and the '167 Patent additionally share Pradeep Sanghvi as an inventor. *Id*. at ¶¶ 12-15.

### D. North Carolina Has A Greater Nexus Than New Jersey To This Litigation

#### 1. Defendant BDSI Is Based In North Carolina And Relevant Employees And Documents Are Located in North Carolina

BDSI's headquarters and principal operations are located in North Carolina. The company is incorporated in Delaware and has a principal place of business at 4131 ParkLake Avenue, Suite 225, Raleigh, North Carolina 27612. Dkt. 1 at ¶ 7. Almost all of BDSI's internal operations, pharmaceutical development, and commercialization activities are based in North Carolina. Declaration of Mark A.

Sirgo, Pharm. D., in support of Defendants' Motion to Transfer ("Sirgo Decl.") at ¶ 3. BDSI has no connections to New Jersey. It does not have any offices in New Jersey, and none of its employees reside in or work in New Jersey. *Id*. at ¶¶ 4, 6. BELBUCA® was not and is not researched, tested, developed, or manufactured in New Jersey. *Id*. at ¶ 3. While some sales of BELBUCA® may take place in New Jersey, those sales are documented and processed at BDSI headquarters in Raleigh, North Carolina. *Id*. at ¶ 5.

Given the legal and factual nature of Plaintiff's claim that Defendant has infringed the '167 Patent, BDSI likely will have to produce witnesses and provide documents regarding the research, testing, development, manufacture, sale and/or marketing of BELBUCA®. All of this information is located in or accessible from North Carolina. *Id*. at ¶¶ 4, 5. Most of BDSI's employees, including its management team, reside in North Carolina and work at BDSI's headquarters in Raleigh. *Id*. at ¶ 4. The management team directs, controls, and coordinates BDSI's activities from Raleigh. *Id*. at ¶¶ 3, 5.

## 2. New Jersey Has A *De Minimis* Nexus To This Dispute

Plaintiff maintains little if any relevant activity in New Jersey. MonoSol's corporate headquarters are located at 30 Technology Dr., Warren, New Jersey 07059. Dkt. 1 at ¶ 6. MonoSol is incorporated in Delaware, and its research, development, and manufacturing facilities are located in Portage, Indiana. Christie

ME1 24204685v.1

Decl. at ¶ 16, Exh. 10. The assignment of the '167 Patent to MonoSol specifically identifies the Portage, Indiana location as the one most relevant to this patent. Dkt. 1, Exh. A. Indeed, the five inventors of the '167 Patent – the individuals who will be the key witnesses for Plaintiff in this case – are located at least 600 miles away in Kingsport, Tennessee; Schererville, Indiana; Crown Point, Indiana; and Fremont, California. *Id*. at ¶ 15, Dkt. 1 at Exh. A. Thus, upon information and belief, it is likely that most relevant witnesses and documents required for production by Plaintiff will not be located in New Jersey.

## III. ARGUMENT

### A. Standard Of Review On A Motion To Transfer

Transfer is proper here under 28 U.S.C. §1404(a) which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[A] motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff." *See In re TS Tech USA Corp.,* 551 F.3d 1315, 1319 (Fed. Cir. 2008) (quoting *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*)). The purpose of transfer is to protect litigants, witnesses and the public from waste of time, energy and money. *See Virgin Wireless, Inc. v, Virgin Enters. Ltd.,* 201 F. Supp. 2d 294, 299 (D. Del. 2002) (*citing Van Dusen v.*

10

*Barrack*, 376 U.S. 612, 616 (1964)).  As such, a transfer should be granted where, as here, in light of the relevant factors, the case would better off in another district.  *See Estate of Antonious v. Yonex Corp. USA,* C.A. No. 08-cv-3501 DMC, 2009 WL 1346617, at *2 (D.N.J. May 13, 2009) ("transfer to the Central District of California is appropriate because the public and private interest factors weigh 'strongly in favor' of transfer, and…California is the 'center of gravity' for the accused activity").

The first and preliminary determination on a motion to transfer is whether the case could initially have been brought in the transferee forum.  Once that is established, the courts within the Third Circuit engage in an "individualized, case-by-case consideration of convenience and fairness to determine the most appropriate forum."  *See Bayer Pharma AG v. Watson Laboratories,* CA No. 14-1804, 2014 WL 2516412 *3 (D.N.J. Jun. 2, 2014) (internal quotation omitted).  This includes various "private and public interests" relating to the convenience of the parties and witnesses as well as the interests of justice.  *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995) (setting forth the "*Jumara* factors").   The private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose outside of the transferee forum; (4) the convenience of the parties indicated by their relative physical and financial condition; and (5) the location of books and records.  *See id.*

11

The public interest factors to consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the consideration of any relative administrative difficulty in either of the two competing fora; (4) the local interest in deciding local controversies at home; (5) the public policies of the two fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Id.*

> **B.    This Action Could Have Been Brought – And Should Have Been Brought – In The Eastern District of North Carolina**

This action could have been brought in the Eastern District of North Carolina, and indeed, should have been brought there given its relationship to the First E.D.N.C. Action filed by Plaintiff in the Eastern District of North Carolina, to the Declaratory Judgment Action that was already filed and pending in the Eastern District of North Carolina when Plaintiff raced to file the First '167 Patent Infringement Action, and to the First '167 Patent Infringement Action now pending in the Eastern District of North Carolina.

In federal question jurisdiction cases such as this one, venue is proper in any judicial district where any defendant "resides" or where a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391.  Under § 1391, a corporate defendant "resides" in any judicial district in which it is subject to personal jurisdiction at the time an action is commenced.  28 U.S.C. §1391(c).  A patent infringement action, in particular, may be brought where the defendant

12

has committed acts of infringement and has a regular and established place of business.  28 U.S.C. § 1400(b).

BDSI initially could have been sued in the Eastern District of North Carolina.  BDSI's headquarters are located in Raleigh, North Carolina, which is where BDSI employees developed the BELBUCA® product, and where the documents and witnesses with information on the subject matter of this litigation are located.  Sirgo Decl. ¶¶ 2-5. Moreover, Plaintiff brought its first set of claims for patent infringement against BDSI in the Eastern District of North Carolina. Christie Decl. at ¶ 3, Exh. 1.  Having previously chosen that forum, Plaintiff cannot credibly argue that it was unavailable or inconvenient to them for this case.

### C.    The *Jumara* "Private Interest" Factors Heavily Favor Transfer to North Carolina

#### 1.    Plaintiff's *First* Choice of Forum Is Entitled To Weight, But Forum Shopping Must Be Discouraged

Under the particular facts of this case, Plaintiff chose two fora to litigate their patent infringement disputes with BDSI.  It first chose the Eastern District of North Carolina, which has a substantial nexus to the dispute given BDSI's presence there.  It was only *after* the Eastern District of North Carolina dismissed Plaintiffs' premature First E.D.N.C. Action, and *after* BDSI filed the Declaratory Judgment Action in the Eastern District of North Carolina, that Plaintiffs elected to try their luck in another forum and filed the First '167 Patent Infringement Action

13

this Court. And despite the First '167 Patent Infringement Action having been transferred to the Eastern District of North Carolina, Plaintiff again chose this Court for this case, refusing to accept that the parties' patent infringement disputes, including those involving the '167 Patent, concerning BDSI's innovative buprenorphine film products should all be resolved in the Eastern District of North Carolina.

Importantly, a plaintiff's choice of forum "is simply a preference; it is not a right." *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F.Supp.2d 518, 530 (2000). While generally a plaintiff's choice of forum is entitled to weight in the consideration of the private interest factors, that is not the case when the plaintiff's choice has little or no connection to the central facts of the lawsuit. *See Bayer Pharma AG,* 2014 WL 2516412 *5 ("when the central facts of a lawsuit occur outside the chosen forum, plaintiff's choice of forum is accorded less weight") (quoting *NCR Credit Corp. v. Ye Seekers Horizon,* 17 F.Supp.2d 317, 321 (D.N.J. 1998)).

Here, none of the central facts of this lawsuit occurred in New Jersey. As previously stated, BDSI's headquarters are located in North Carolina, and BDSI conducted all of the research and development of the BELBUCA® product in North Carolina. North Carolina has the "closest connection to the alleged culpable conduct." Accordingly, Plaintiffs' initially chosen venue of North Carolina is

14

entitled to substantial weight, but Plaintiffs' subsequently chosen venue is not entitled to any weight, especially in view of the absence of a nexus between this dispute and the District of New Jersey. *See, e.g., Melone v. Boeing Co.*, CA No. 2:07-cv-1192, 2008 WL 877974, at *3 (D.N.J. Mar. 28, 2008) ("Deference to the plaintiff's selected forum is also diminished where the central facts of a lawsuit occur outside the chosen forum or the plaintiff's choice of forum has little connection with the operative facts of the lawsuit") (internal quotation omitted).

Moreover, there is a strong judicial policy against forum shopping. "[A] litigant, whether a swift first or as a prompt retaliator, is open to the charge of forum shopping whenever he chooses a forum with slight connection to the factual circumstances surrounding his suit." *See Rayco Mfg. Co. v. Chicopee Mfg. Corp.*, 148 F. Supp. 588, 592-93 (S.D.N.Y. 1957). As previously mentioned, this lawsuit is the fourth iteration of the patent dispute between Plaintiff and BDSI concerning BDSI's buprenorphine pharmaceutical film products BUNAVAIL® and BELBUCA®. Plaintiff filed this action in this District *after* their first action – filed in the Eastern District of North Carolina – was dismissed, *after* Defendant BDSI filed its Declaratory Judgment Action in the Eastern District of North Carolina, and *after* the First '167 Patent Infringement Action was transferred to the Eastern District of North Carolina. "Litigants should be encouraged to attempt to settle their differences without imposing undue expense and vexatious situations

ME1 24204685v.1

on the courts." *Id; see also Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.,* C.A. No. 2:13-05805 JL, 2014 WL 1555133, at *6 (D.N.J. Apr. 14, 2014) *aff'd*, C.A. No. 13-5805 ILL, 2014 WL 3748214 (D.N.J. July 29, 2014) ("While Plaintiffs' hesitation to file this case in the SDNY following the Second Circuit's *IndyMac* decision is understandable, the Court cannot condone forum shopping at the expense of judicial resources, efficiency, and in disregard of the *Jumara* factors."). Given the prior and pending litigation in the Eastern District of North Carolina (Plaintiff's initial forum of choice), there simply is no reason for Plaintiff to have filed this action in this District other than inappropriate forum shopping.

Accordingly, BDSI respectfully submits that Plaintiff's ***first*** chosen forum – the Eastern District of North Carolina – be honored, both as Plaintiff's chosen venue and because of its nexus to this dispute, and that Plaintiff's serial subsequent filings in this Court be afforded no weight because it constitutes impermissible forum shopping.

### 2. The Defendant's Forum Preference Warrants Transfer

The Defendants' preference is that the court transfer this dispute to the forum that Plaintiff chose in the first instance, which has some experience with BDSI's buprenorphine film products, and where related litigation (the Declaratory Judgment Action and the First '167 Patent Infringement Action) will proceed. Of course, Defendants' preferred forum is also the location of the majority of the

relevant witnesses and documents: the Eastern District of North Carolina. *See*, *supra*, Section II.D.1.

Accordingly, this factor weighs in favor of transfer.

### 3. Plaintiff's Claims Arose in North Carolina

As Plaintiff tacitly acknowledged when it filed the First E.D.N.C. Action, and as Judge Shipp recognized when transferring the First '167 Patent Infringement Action, MonoSol's purported claims of patent infringement arose in the Eastern District of North Carolina, and not in New Jersey.

Here the Eastern District of North Carolina is the forum constituting "the center of gravity of the dispute." *Intendis, Inc. v. River's Edge Pharm., LLC,* C.A. No. 11-2838 FSH PS, 2011 WL 5513195, at *3 (D.N.J. Nov. 10, 2011); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 (D.N.J. 1993) (To determine the "center of gravity" the court considers "the location of a product's development, testing, research and production. Also relevant is the place where marketing and sales decisions were made, rather than where limited sales activity has occurred"). BDSI's operations, pharmaceutical development, and commercialization efforts are conducted from Raleigh, North Carolina, and BELBUCA®-related activities are no exception. Sirgo Decl. ¶¶ 3-5. Testing, research, and development for the BELBUCA® drug occurred at BDSI's headquarters. *Id.* at ¶ 3. Marketing and promotional efforts for the BELBUCA® product are directed by BDSI from its

17

offices in North Carolina. *Id.* Furthermore, BDSI does not have any facilities in New Jersey. *Id.* at ¶ 6. To the extent there is any activity in New Jersey, it can be considered at most "limited marketing activity;" the "center of gravity" is clearly in North Carolina. *Id.* at ¶¶ 3-8.

Accordingly, this factor weighs in favor of transfer. *See Levinson v. Regal Ware, Inc.*, No. CIV. A. 89-1298 MTB, 1989 WL 205724, at *1 (D.N.J. Oct. 6, 1989) (transferring case where "all of the marketing and design decisions relating to the products at issue" as well as "the defendant's employees and production designers with knowledge of same" were located in transferee venue or outside of New Jersey); *Estate of Antonious,* 2009 WL 1346617, at *2 (D.N.J. May 13, 2009) ("transfer to the Central District of California is appropriate because the public and private interest factors weigh 'strongly in favor' of transfer, and…California is the 'center of gravity' for the accused activity").

### 4. The Convenience Of Witnesses Weighs In Favor Of Transfer

The "convenience of the parties as indicated by their relative physical and financial condition," *see Jumara,* 55 F. 3d at 879, weighs heavily in favor of transfer to the Eastern District of North Carolina. As the accused infringer, BDSI will be the source of most relevant witnesses and information relating to Plaintiff's claims. *See In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the

18

accused infringer"); *AB Coaster Holdings, Inc. v. Icon Health & Fitness, Inc.,* No. 2:10-cv-06760 ES-CL W, 2011 WL 6887724 at *5 (D.N.J. Dec. 29, 2011) ("bulk of evidence that must be produced in a patent infringement case will be produced by the accused product's maker, the Defendant"). The parties' relative physical locations weigh in favor of transfer. The principal place of business for BDSI is in North Carolina. Sirgo Decl. at ¶ 2. Most, if not all, of the BDSI employees who may have information relevant to the case are located in North Carolina. *Id.* at ¶4.

Plaintiff cannot claim the same quality of ties to New Jersey. While MonoSol is headquartered in New Jersey, it is clear on the face of the '167 Patent as well as the assignment of the '167 Patent to MonoSol that the bulk of the evidence regarding the development of the inventions claimed in the '167 Patent will be located in MonoSol's Indiana facilities. Indeed, none of the '167 Patent inventors reside in New Jersey; the face of the '167 Patent reflects that the inventors are located at least 600 miles away in Tennessee, Indiana, and California.

Finally, the parties' relative financial conditions weigh in favor of transfer. BDSI is still focused largely on the research and development of its small pharmaceutical portfolio. Since most of BDSI's products are still in development, BDSI has not yet generated profits. *See* Christie Decl. ¶ 17, Exh. 11, at pp. 1-4. In contrast, Suboxone® sales have topped $1 billion since 2009, providing a significant source of revenue for MonoSol. *See. id.* ¶¶ 18-19, Exh. 12 at p. 1, Exh.

ME1 24204685v.1

13 at ¶¶ 2, 7. Plaintiff is thus in a better financial position to incur the slight additional cost of witness travel. This is especially true given that Plaintiff's witnesses are likely to have to travel regardless of the ultimate venue.

For all of the above reasons, this factor weighs in favor of transfer.

### 5. The Location Of Documents Weighs In Favor Of Transfer

Most of the relevant books and records in this litigation are located in the Eastern District of North Carolina. *See In re Genentech,* 566 F.3d at 1345 ("[T]he place where [the accused infringer's] documents are kept weighs in favor of transfer to that location"); *see also AB Coaster Holdings,* 2011 WL 6887724 at *5. As discussed above, BDSI's documents will be the primary sources of documentary evidence relevant to Plaintiffs' claims of infringement against the BELBUCA® product, and its documents are primarily located, managed, and maintained in the Eastern District of North Carolina. Finn Decl. at ¶¶ 3-5. The same is true for nearly all of the information related to BDSI's general operations, marketing, and financials. *Id.*

Accordingly, this factor weighs heavily in favor of transfer.

### D. The "Public Interest" Factors Favor Transfer to North Carolina

### 1. Practical Considerations – Including The First E.D.N.C. Action, The Pending Declaratory Judgment Action, And The First '167 Patent Infringement Action – Favor Transfer

Given that the Declaratory Judgment Action and the First '167 Patent Infringement Action are currently pending in the Eastern District of North Carolina and that the court in that forum previously adjudicated Plaintiff's First E.D.N.C. Action, practical considerations of judicial efficiency support transfer in this case, and transfer will make adjudication and ultimate trial easier, quicker and less expensive by, *inter alia*, eliminating the need for multiple trials involving the same patent and technologically-similar accused products.

A transfer would allow for the resolution of all related claims involving the patents-in-suit, including the '167 Patent, and the accused buprenorphine film products BUNAVAIL® and BELBUCA® in one forum. Resolution of claims in one forum will mean no duplication of discovery, and would do away with the possibility of inconsistent results due to similar litigation proceeding in parallel in two separate jurisdictions. *See Cont'l Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

Courts find that this factor weighs strongly in favor of transfer when there is a previously filed action in another forum, and the cases are sufficiently similar. It is not necessary for the matters to be identical for this Court to favor transfer.

*Bayer Pharma AG v. Watson Labs., Inc.*, No. CIV.A. 14-1804 JLL, 2014 WL 2516412, at *8 (D.N.J. June 2, 2014). Transferring a related action to another district where a similar case is already pending not only conserves judicial and party resources, but also serves the interests of justice because it eliminates the possibility of inconsistent results. *COA Network, Inc. v. J2 Global Commc'ns*, Inc., No. CIV.A.09-6505 (WJM), 2010 WL 2539692, at *5-6 (D.N.J. June 17, 2010).

Here, the currently pending Declaratory Judgment Action and the First '167 Patent Infringement Action overlap substantially with the claims asserted in this action. Both cases involve similar facts and legal issues, similar accused products embodying similar technology (*i.e.*, buprenorphine pharmaceutical films), and at least one identical but otherwise related and overlapping patents. Indeed, three out of the four patents-in-suit arise from the same patent family, sharing common fields of prior art, ancestors, claim terms, figures, and portions of the specifications. *See Medidata Solutions, Inc. v. DATATRAK Int'l, Inc.*, No. CIV. 12-4748 WJM, 2013 WL 1989854, at *6 (D.N.J. May 13, 2013) (granting transfer because same patent family involved). Preparing the three cases for trial will require discovery of similar evidence and ultimate reliance on evidence from the same or similar witnesses, experts, and documents. *See Bayer Pharma AG*, 2014 WL 2516412, at *8 (cases with same parties, product, ANDA, witnesses, and documents sufficiently similar); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473,

487 (D.N.J. 1993) (cases with same parties, products, legal issues, and offers of proof sufficiently similar). Transfer to the Eastern District of North Carolina would thus avoid duplicative efforts in addition to eliminating the potential for inconsistent claim constructions and judgments. *See COA Network, Inc.*, 2010 WL 2539692, at *5-6; *Medidata Solutions, Inc.*, 2013 WL 1989854, at *6.

In summary, transfer of this action to the Eastern District of North Carolina will "promote efficiency and justice by avoiding inconsistent claim constructions, inconsistent judgments, and duplication of efforts, particularly in light of this action's otherwise limited connections to New Jersey." *Medidata Solutions, Inc.*, 2013 WL 1989854, at *6.

An additional practical consideration favoring transfer is the above-mentioned judicial policy of discouraging forum shopping. Plaintiffs picked their battleground by initially filing suit in the Eastern District of North Carolina. BDSI honored that (admittedly, logical) choice, and filed the Declaratory Judgment Action in Plaintiffs' chosen forum. Judge Shipp understood the wisdom of consolidating the parties' patent infringement disputes in the Eastern District of North Carolina when he transferred the First '167 Patent Infringement Action. In practical terms, BDSI and Judge Shipp appreciated that the Eastern District of North Carolina is an agreeable and appropriate forum for these cases; allowing Plaintiff to maintain a fourth-filed action in a second forum is not practical.

Accordingly, logic and commonsense overwhelmingly favor transfer to the Eastern District of North Carolina.

### 2. Judicial Efficiency Favors Transfer

Again, because the First E.D.N.C. Action and the currently pending Declaratory Judgment Action were both filed in the Eastern District of North Carolina, and the First '167 Patent Infringement Action is now venued in the Eastern District of North Carolina, the administrative burdens imposed on the judiciary favor transfer. The Eastern District of North Carolina has prior familiarity with the parties and technology from its adjudication of the dispute involving the '832 Patent. Moreover, transfer will present a single Court with the opportunity to resolve all issues surrounding the alleged infringement of Plaintiff's patents, including the '167 Patent, by BDSI's accused buprenorphine pharmaceutical film products. *See Telcordia Technologies, Inc. v. Tellabs, Inc.*, No. CIV.A. 09-2089 (JAG), 2009 WL 5064787, at *3 (D.N.J. Dec. 16, 2009) ("the Federal Circuit has observed that 'in a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues'") (quoting *Regents of the Univ. of California v. Eli Lilly and Co.,* 119 F.3d 1559, 1565 (Fed. Cir. 1997)). This is especially true where the Eastern District of North Carolina will be investing substantial effort in

24

this dispute. Accordingly, a transfer would "[avoid] duplicative litigation when one court has already invested substantial time and energy in the related case." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 784 (D. Md. 2009); *Regents of the Univ. of California,* 119 F.3d at 1565.

### 3. The Eastern District Of North Carolina Has A Local Interest In The Resolution Of This Dispute.

North Carolina has a significant interest in the resolution of this dispute. As noted above, Defendant BDSI has its headquarters there. Sirgo Decl. at ¶ 2. The majority of the documents and witnesses are located in that district. *Id.* at ¶¶ 3-5. The allegedly infringing activities including research and development of the BELBUCA® product, as well as the development and drafting of the promotion, marketing, studies, and financials all occurred in North Carolina. *See*, *e.g. In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighted in that venue's favor"). On the other hand, Plaintiff cannot demonstrate equally strong ties to this venue. *See In re Volkswagen AG,* 371 F.3d 201, 206 (Fed. Cir. 2004) (where plaintiffs cannot demonstrate a connection between their chosen venue and the facts of the case the local interest factor favors transfer). MonoSol is headquartered in this District, but the patent assignment shows that the majority of the information regarding the '167 Patent is in Indiana, and that the inventors are located in Indiana, Tennessee,

and California.  The local interest in this dispute clearly is stronger in North Carolina than in New Jersey.

### 4. The Remaining *Jumara* Factors Are Neutral

The remaining public interest factors are neutral in the transfer analysis. Both the District of New Jersey and the Eastern District of North Carolina are experienced in adjudicating patent litigation disputes, and there are no state law issues in this case.

## IV. CONCLUSION

In light of the foregoing, BDSI respectfully requests that this case be transferred pursuant to 28 U.S.C. § 1404(a) to the Eastern District of North Carolina.

Dated:  March 1, 2017          **McCarter & English, LLP**

                                    s/Scott S. Christie
                                    Scott S. Christie
                                    Four Gateway Center
                                    100 Mulberry Street
                                    Newark, New Jersey 07102
                                    973-622-4444

                                    Danielle L. Herritt
                                    Kia L. Freeman
                                    265 Franklin Street
                                    Boston, Massachusetts 02110
                                    617-449-6538

                                    *Attorneys for Defendant*
                                    *BioDelivery Sciences International, Inc.*

ME1 24204685v.1