# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MONOSOL RX, LLC, | |
| Plaintiff, | Civil Action No. 17-01307-MSG-CJB |
| v. | |
| BIODELIVERY SCIENCES INTERNATIONAL, INC., | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF NORTH CAROLINA PURSUANT TO 28 U.S.C. §1404(a)

Brian R. Lemon (DE Bar #4730)
MCCARTER & ENGLISH LLP
405 N. King Street
8th Floor
Wilmington, Delaware 19801
Tel: (302) 984-6374
Fax: (302) 691-2911
blemon@mccarter.com

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

Dated: October 31, 2017

Scott S. Christie
Ravin R. Patel
MCCARTER & ENGLISH LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
schristie@mccarter.com
rpatel@mccarter.com

Kia L. Freeman
MCCARTER & ENGLISH LLP
265 Franklin Street
Boston, Massachusetts 02110
kfreeman@mccarter.com

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

**TABLE OF CONTENTS**

PAGE

I.   NATURE AND STAGE OF PROCEEDINGS ...................................................1

II.  SUMMARY OF THE ARGUMENT ...............................................................1

III. BACKGROUND ................................................................................................3

   A.   This Action Arises Out of BioDelivery's Development of New and Innovative Buprenorphine Pharmaceutical Film Products ....................................................3

   B.   MonoSol And Indivior Initially Chose To Litigate Their Infringement Claims In The Eastern District of North Carolina And Related Litigation Alleging Infringement of the '167 Patent Is Pending In That District ..............................4

      1.   MonoSol and Indivior Filed Their First Lawsuit Alleging Patent Infringement by BioDelivery's Buprenorphine Pharmaceutical Film Products In The Eastern District Of North Carolina...................................4

      2.   MonoSol and Indivior Promised To Sue BioDelivery Again, So BioDelivery Filed A Declaratory Judgment Action In The Eastern District of North Carolina, Their Chosen Forum.......................................5

      3.   MonoSol Has A Lawsuit Pending Against BioDelivery In The Eastern District of North Carolina Alleging Infringement of the '167 Patent..........6

   C.   There Are Significant Common Elements Between And Among The Declaratory Judgment Action, The First '167 Patent Infringement Action, And This Case................................................................................................................6

   D.   North Carolina Has A Greater Nexus Than Delaware To This Litigation ..........7

      1.   Defendant BioDelivery Is Based In North Carolina And Relevant Employees And Documents Are Located in North Carolina......................7

      2.   Delaware Has A *De Minimis* Nexus To This Dispute ................................8

IV.  ARGUMENT.....................................................................................................8

   A.   Standard Of Review On A Motion To Transfer .................................................8

   B.   This Action Could Have Been Brought – And Should Have Been Brought – In The Eastern District of North Carolina................................................................9

   C.   The *Jumara* "Private Interest" Factors Heavily Favor Transfer to North Carolina..............................................................................................................10

i

1.     Plaintiff's *First* Choice of Forum Is Entitled To Weight, But Forum Shopping Must Be Discouraged ................................................................10

2.     The Defendant's Forum Preference Warrants Transfer............................12

3.     Plaintiff's Claims Arose in North Carolina ...............................................13

4.     The Convenience Of Witnesses Weighs In Favor Of Transfer ................14

5.     The Location Of Documents Weighs In Favor Of Transfer .....................15

D.     The "Public Interest" Factors Favor Transfer to North Carolina......................15

1.     Practical Considerations – Including The First E.D.N.C. Action, The Pending Declaratory Judgment Action, And The First '167 Patent Infringement Action – Favor Transfer .......................................................15

2.     Judicial Efficiency Favors Transfer ..........................................................17

3.     The Eastern District Of North Carolina Has A Local Interest In The Resolution Of This Dispute. ....................................................................18

4.     The Remaining *Jumara* Factors Are Neutral ...........................................19

V.     CONCLUSION.............................................................................................................19

ME1 25940084v.3

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Blackbird Tech LLC v. Cloudflare, Inc.*,
No. 17-283-MSG, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ..........................8, 9, 11, 15, 18

*Cont'l Grain Co. v. The Barge FBL–585*,
364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) ................................................................16

*Cruise Control Techs. LLC v. Chrysler Grp. LLC*,
No. 12-1755-GMS, 2014 WL 1304820 (D. Del. Mar. 31, 2014) ...........................................18

*D2L Ltd. v. Blackboard, Inc.*,
671 F. Supp. 2d 768 (D. Md. 2009) ........................................................................................18

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)................................................................................................15

*In re Hoffman-La Roche, Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)................................................................................................18

*Job Haines Home for the Aged v. Young*,
936 F. Supp. 223, 227 (D.N.J. 1996) ........................................................................................9

*Intellectual Ventures I LLC v. Altera Corp.*,
842 F. Supp. 2d 744, 755 (D. Del. 2012) ...............................................................................13

*Jumara v. State Farm Inc. Co.*,
55 F.3d 873, 879 (3d Cir. 1995)............................................................................................9, 14

*Linex Techs., Inc. v. Hewlett–Packard Co.*,
No. 11–400, 2013 WL 105323 (D. Del. Jan. 7, 2013).............................................................11

*In re Link–A–Media Devices Corp.*,
662 F.3d 1221 (Fed. Cir. 2011)................................................................................................11

*In re Nintendo Co., Ltd.*,
589 F.3d 1194, 1199-200 (Fed. Cir. 2009) .............................................................................15

*Rayco Mfg. Co. v. Chicopee Mfg. Corp.*,
148 F. Supp. 588 (S.D.N.Y. 1957) ..........................................................................................11

*Regents of the Univ. of California v. Eli Lilly and Co.*,
119 F.3d 1559 (Fed. Cir. 1997).........................................................................................17, 18

iii

*Ross v. Institutional Longevity Assets LLC,*
   No. 12-102, 2013 WL 5299171, at \*13 (D.Del Sept. 20, 2013)...............................................16

*Plum Tree, Inc. v. Stockment,*
   488 F,2d 754, 756 (3d Cir. 1973)....................................................................................9

*Smart Audio Techs., LLC v. Apple, Inc.,*
   910 F. Supp. 2d 718 (D. Del. 2012)...............................................................................13

*Telcordia Technologies, Inc. v. Tellabs, Inc.,*
   No. CIV.A. 09-2089 (JAG), 2009 WL 5064787 (D.N.J. Dec. 16, 2009)................................17

*Tessera, Inc. v. Broadcom Corp.,*
   No. 16-CV-379, 2017 WL 1065865 (D. Del. Mar. 21, 2017)................................................9

*In re TS Tech USA Corp.,*
   551 F.3d 1315 (Fed. Cir. 2008)....................................................................................8, 9

*In re Volkswagen AG,*
   371 F.3d 201 (Fed. Cir. 2004).......................................................................................18

*In re Volkswagen of Am., Inc.,*
   545 F.3d 304, 315 (5th Cir. 2008) ..................................................................................8

*Van Dusen v. Barrack,*
   376 U.S.612, 616 (1964)...............................................................................................8

*Wacoh Co. v. Kionix, Inc.,*
   845 F.Supp.2d 597 (D.Del. 2012)...................................................................................13

**FEDERAL STATUTES**

28 U.S.C. § 1404(a) ............................................................................................1, 8, 9, 16, 19

35 U.S.C. § 271(e)(2), and (ii)..........................................................................................4

ME1 25940084v.3

Defendant BioDelivery Sciences International, Inc. ("BioDelivery") respectfully submits this memorandum of law in support of its motion to transfer venue to the United States District Court for the Eastern District of North Carolina ("E.D.N.C.") pursuant to 28 U.S.C. §1404(a).

## I.    NATURE AND STAGE OF PROCEEDINGS

On January 13, 2017, Plaintiff MonoSol Rx, LLC ("MonoSol") filed this patent infringement action in the United States District Court for the District of New Jersey ("D.N.J.") alleging that BioDelivery infringes U.S. Patent No. 8,765,167 (the "'167 Patent").  *See* D.I. 1. On March 1, 2017, BioDelivery filed a Motion to Dismiss Plaintiff's Complaint and a Motion to Transfer Venue to the E.D.N.C.  *See* D.I. 7 and 8.  On September 14, 2017, Judge Martinotti entered a Stipulated Order transferring the action to the United States District Court for the District of Delaware ("D.Del.").  *See* D.I. 37.  On October 11, 2017, Judge Burke granted the parties leave to submit revised briefing as to BioDelivery's two pending motions.

## II.   SUMMARY OF THE ARGUMENT

1.    This case belongs in the E.D.N.C., where BioDelivery maintains its headquarters.  There are two cases currently pending in that district that involve substantially the same parties, the same '167 Patent (and related patents), and a substantially similar product.  This case ought not be separated from the E.D.N.C. actions because they are inextricably intertwined.  Indeed, the action before this Court is the fourth battle in a larger intellectual property war between these parties concerning BioDelivery's buprenorphine pharmaceutical film products.

2.    In October 2013, Plaintiffs Reckitt Benckiser Pharmaceuticals, Inc. (n/k/a Indivior PLC) ("Indivior") and MonoSol first filed suit against BioDelivery in the E.D.N.C. alleging infringement of U.S. Patent No. 8,475,832 (the "'832 Patent").  In May 2014, the E.D.N.C. court dismissed that action as premature.  Undeterred, Indivior promised its stockholders on July 28,

1

2014 that it would sue BioDelivery immediately upon BioDelivery's launch of its first buprenorphine pharmaceutical film product, known as BUNAVAIL®.

3.     On September 20, 2014, as BioDelivery prepared for the launch of BUNAVAIL®, it took the affirmative step of filing an action in MonoSol's chosen forum – the E.D.N.C. – seeking a declaratory judgment that BUNAVAIL® does not infringe the originally asserted '832 Patent as well as U.S. Patent No. 7,897,080 (the "'080 Patent") and U.S. Patent No. 8,652,378 (the "'378 Patent"), and that each of these patents are invalid.

4.     In a mad dash to re-claim their offensive position, and obtain what they viewed as a more favorable forum, with the effect of creating additional expense for BioDelivery, Indivior and MonoSol *two days later* filed a new patent infringement lawsuit in the D.N.J. rather than pursue their claims in the E.D.N.C.  This new action alleged that BioDelivery's first buprenorphine pharmaceutical film product BUNAVAIL® infringes a new and different patent, U.S. Patent No. 8,765,167 (the "'167 Patent").  However, the D.N.J. court appreciated that MonoSol and Indivior were accusing the same product of infringing a patent substantially similar to the patents-in-suit in the declaratory judgment action, and that the two actions involved nearly the same parties, and granted BioDelivery's motion to transfer the first D.N.J. action to the E.D.N.C. on July 21, 2015.

5.     Despite the transfer and the E.D.N.C. venue of the pending action by MonoSol alleging that BioDelivery infringes the '167 Patent, MonoSol chose to file a second action in the D.N.J. alleging infringement of the '167 Patent.  MonoSol's second action alleges infringement by another BioDelivery buprenorphine pharmaceutical film product named BELBUCA®.  It is evident that this action is MonoSol's latest attempt to impose unnecessary burden and expense on BioDelivery while avoiding a comprehensive resolution of its patent infringement claims in the E.D.N.C.

2

6.      In light of the pending litigation in the E.D.N.C. based on the '167 Patent and other closely-related patents in the same family, implicating most of the same parties, and involving BioDelivery's buprenorphine pharmaceutical film products, judicial efficiency dictates that this action also be resolved in the E.D.N.C. where many of the same issues are already under consideration.  This action also should be resolved in the E.D.N.C. based upon the convenience of the parties.  The E.D.N.C. is the forum that MonoSol originally chose and BioDelivery's preferred forum.  BioDelivery has its principal place of business in North Carolina, where it maintains relevant documents and employs most of its personnel.  Having originally chosen to litigate in the E.D.N.C., MonoSol should not now complain of the transfer of this action to that forum.  For the reasons set forth herein, BioDelivery respectfully requests that this action be transferred to the E.D.N.C.

## III.      BACKGROUND

### A.      This Action Arises Out of BioDelivery's Development of New and Innovative Buprenorphine Pharmaceutical Film Products

This action relates to BioDelivery's development of new and innovative buprenorphine pharmaceutical film products that have been approved by the Food and Drug Administration ("FDA").  The FDA approved BioDelivery's first buprenorphine pharmaceutical film product BUNAVAIL® for the treatment of opioid addiction.  MonoSol makes, and its business partner Indivior markets, a competing buprenorphine pharmaceutical film product named SUBOXONE®.   Although it contains the same active ingredient as BioDelivery's BUNAVAIL® product and MonoSol's SUBOXONE® product (*i.e.*, buprenorphine), BioDelivery's second buprenorphine pharmaceutical film product BELBUCA® lacks their abuse-resistance ingredient.   Thus, the FDA approved BioDelivery's second buprenorphine pharmaceutical film product BELBUCA® for the management of pain severe enough to require

3

daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. MonoSol alleges in the Complaint that BioDelivery's second buprenorphine pharmaceutical film product BELBUCA® infringes the '167 Patent, which MonoSol owns and Indivior exclusively licenses. Declaration of Scott S. Christie in support of Defendants' Motion to Transfer ("Christie Decl.") at ¶ 15, Exh. 6 at ¶¶ 15-16. As described below, this action is substantially related to two actions already pending in the E.D.N.C.

### B. MonoSol And Indivior Initially Chose To Litigate Their Infringement Claims In The Eastern District of North Carolina And Related Litigation Alleging Infringement of the '167 Patent Is Pending In That District

#### 1. MonoSol and Indivior Filed Their First Lawsuit Alleging Patent Infringement by BioDelivery's Buprenorphine Pharmaceutical Film Products In The Eastern District Of North Carolina

On October 29, 2013, Indivior and MonoSol filed a complaint for patent infringement in the E.D.N.C., alleging that BioDelivery's first buprenorphine pharmaceutical film product BUNAVAIL® – a product that, at the time, had neither received FDA approval nor been marketed by BioDelivery – would, if marketed, infringe the '832 Patent. (the "First E.D.N.C. Action"). *Id.* at ¶ 3, Exh. 1 at ¶¶ 1, 4.

On December 13, 2013, BioDelivery moved to dismiss the First E.D.N.C. Action for several reasons, including the fact that (i) the plaintiffs failed to state a claim for patent infringement pursuant to 35 U.S.C. § 271(e)(2), and (ii) the plaintiffs' claim for declaratory judgment was not ripe and therefore failed to invoke the Court's subject matter jurisdiction. *Id.* at ¶ 4, Exh. 2. After filing a petition for *inter partes* review ("IPR") against the '832 Patent in the United States Patent and Trademark Office ("USPTO"), BioDelivery filed a motion on January 31, 2014 to stay the case pending conclusion of the IPR. *Id.* at ¶ 5, Exh. 3. On May 21, 2014, the court dismissed the First E.D.N.C. Action, concluding that the plaintiffs' claims were

4

premature, and that the plaintiffs had failed to state a Hatch-Waxman claim for patent infringement. *Id*. at ¶ 6, Exh. 4.

### 2. MonoSol and Indivior Promised To Sue BioDelivery Again, So BioDelivery Filed A Declaratory Judgment Action In The Eastern District of North Carolina, Their Chosen Forum

Following the dismissal of the First E.D.N.C. Action, during Indivior's investor presentation on July 28, 2014, Indivior's Chief Executive Officer stated in reference to BioDelivery that "of course the minute they launch [the BUNAVAIL® product], we will sue them for patent infringement ... we are going to be aggressive about that and uncompromising." *Id*. at ¶ 7, Exh. 5 at ¶ 32.

As BioDelivery finalized its preparations for its commercial launch of BUNAVAIL®, on September 20, 2014, it filed a declaratory judgment action against Indivior and MonoSol in the Eastern District of North Carolina, Civil Action No. 5:14-cv-00529-H (the "Declaratory Judgment Action"). BioDelivery's Declaratory Judgment Action seeks a declaration that BioDelivery does not infringe any valid claim of the '832 Patent, the '080 Patent, or the '378 Patent.[1] *Id*. at ¶ 7, Exh. 5. BioDelivery chose the E.D.N.C. as the venue for its Declaratory Judgment Action in part because that is the forum where the parties had previously litigated the dispute based upon the '832 Patent and BioDelivery's BUNAVAIL® product. On December 23, 2014, the court granted the parties' joint motion to stay pending the outcome of the USPTO's *inter partes* review of the '832 Patent and *inter partes* reexamination of the '080 Patent. *Id*. at ¶ 9, Exh. 7.

---

[1] On December 12, 2014, BioDelivery filed a Notice of Partial Voluntary Dismissal Without Prejudice of Count III of its Declaratory Judgment Action complaint which pertains to the '378 Patent. Thus, the Declaratory Judgment Action no longer asserts any claims based upon the '378 Patent.

5

ME1 25940084v.3

### 3. MonoSol Has A Lawsuit Pending Against BioDelivery In The Eastern District of North Carolina Alleging Infringement of the '167 Patent

In response to BioDelivery's filing of the Declaratory Judgment Action in the E.D.N.C., Indivior and MonoSol filed a complaint for patent infringement in the D.N.J., on September 22, 2014 against BioDelivery and its contract marketing organization, Quintiles, alleging that BioDelivery's BUNAVAIL® product infringed MonoSol's '167 patent (the "First '167 Patent Infringement Action"). *Id*. at ¶ 8, Exh. 6 at ¶¶ 1, 24. Recognizing that MonoSol and Indivior were accusing the same product of infringing a patent closely related to the patents-in-suit in the Declaratory Judgment Action, and that the two actions involved nearly the same parties, the court granted BioDelivery's motion to transfer the First '167 Patent Infringement Action to the E.D.N.C. on July 21, 2015. *Id*. at ¶ 10, Exh. 8 at 11. On May 6, 2016, the E.D.N.C. court granted the parties' joint motion to stay pending the outcome of the USPTO's *inter partes* review of the '167 Patent. *Id*. at ¶ 11, Exh. 9.

### C. There Are Significant Common Elements Between And Among The Declaratory Judgment Action, The First '167 Patent Infringement Action, And This Case

The earlier-filed Declaratory Judgment Action and the First '167 Patent Infringement Action substantially overlap with this action in that they involve nearly the same parties, and patents owned and/or licensed by Monosol. All three actions seek judgement on whether BioDelivery's buprenorphine pharmaceutical film products infringe a patent owned and/or licensed by Monosol. The Declaratory Judgment Action involves a patent closely related to the '167 Patent asserted in this action. The '080 Patent in the Declaratory Judgement Action shares common ancestry, common figures, common disclosure language, and common claim terms with the '167 Patent. *Id*. at ¶¶ 13-15. Finally, all involved patents list one common inventor, Gary L.

Myers, and the '832 Patent and the '167 Patent additionally share Pradeep Sanghvi as an inventor. *Id*. at ¶¶ 12-15.

### D. North Carolina Has A Greater Nexus Than Delaware To This Litigation

#### 1. Defendant BioDelivery Is Based In North Carolina And Relevant Employees And Documents Are Located in North Carolina

BioDelivery's headquarters and principal operations are located in North Carolina. The company is incorporated in Delaware and has a principal place of business at 4131 ParkLake Avenue, Suite 225, Raleigh, North Carolina 27612. D.I. 1 at ¶ 7. Almost all of BioDelivery's internal operations, pharmaceutical development, and commercialization activities are based in North Carolina. Declaration of Mark A. Sirgo, Pharm. D., in support of Defendants' Motion to Transfer ("Sirgo Decl.") at ¶ 3. Other than its incorporation, BioDelivery has no connections to Delaware. It has no offices in Delaware, and none of its employees reside in or work in Delaware. *Id*. at ¶¶ 4, 6. BELBUCA® was not and is not researched, tested, developed, or manufactured in Delaware. *Id*. at ¶ 3. While some sales of BELBUCA® may take place in Delaware, those sales are documented and processed at BioDelivery headquarters in Raleigh, North Carolina. *Id*. at ¶ 5.

Given the legal and factual nature of MonoSol's claim that BioDelivery has infringed the '167 Patent, BioDelivery likely will have to produce witnesses and provide documents regarding the research, testing, development, manufacture, sale and/or marketing of BELBUCA®. All of this information is located in or accessible from North Carolina. *Id*. at ¶¶ 4, 5. Most of BioDelivery's employees, including its management team, reside in North Carolina and work at BioDelivery's headquarters in Raleigh. *Id*. at ¶ 4. The management team directs, controls, and coordinates BioDelivery's activities from Raleigh. *Id*. at ¶¶ 3, 5.

ME1 25940084v.3

### 2. Delaware Has A *De Minimis* Nexus To This Dispute

Monosol maintains little, if any, relevant activity in Delaware. MonoSol's corporate headquarters are located at 30 Technology Dr., Warren, New Jersey 07059. D.I. 1 at ¶ 6. While MonoSol is incorporated in Delaware, its research, development, and manufacturing facilities are located in Portage, Indiana. Christie Decl. at ¶ 16, Exh. 10. The assignment of the '167 Patent to MonoSol specifically identifies the Portage, Indiana location as the one most relevant to this patent. D.I. 1, Exh. A. Indeed, the five inventors identified on the '167 Patent – the individuals who will be key witnesses in this case – are located at least 600 miles away in Kingsport, Tennessee; Schererville, Indiana; Crown Point, Indiana; and Fremont, California. *Id.* at ¶ 15, D.I. 1 at Exh. A. Thus, upon information and belief, it is likely that most relevant witnesses and documents required for production by Monosol will not be located in Delaware.

## IV. ARGUMENT

### A. Standard Of Review On A Motion To Transfer

Transfer is proper here under 28 U.S.C. §1404(a) which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See also Blackbird Tech LLC v. Cloudflare, Inc.*, No. 17-283-MSG, 2017 WL 4543783, at *2 (D. Del. Oct. 11, 2017) (Goldberg, D.J.). "[A] motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff." *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*)).

The purpose of a transfer is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). Accordingly, the court should undertake a

ME1 25940084v.3

balancing test comprised of various public and private interest factors relating to the convenience of the parties and witnesses as well as the interests of justice. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (setting forth the "*Jumara* factors"). The private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose outside of the transferee forum; (4) the convenience of the parties indicated by their relative physical and financial condition; and (5) the location of books and records. *See id.* The public interest factors to consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the consideration of any relative administrative difficulty in either of the two competing fora; (4) the local interest in deciding local controversies at home; (5) the public policies of the two fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

Analyses of transfers under § 1404(a) are "flexible and must be made on the unique facts of each case." *Blackbird*, 2017 WL 4543783, at *3. (*citing Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 (D.N.J. 1996)) (internal quotations omitted). The "court's discretion is broad in deciding whether to transfer." *Id. (citing Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973)).

**B.  This Action Could Have Been Brought – And Should Have Been Brought – In The Eastern District of North Carolina**

"The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue." *Tessera, Inc. v. Broadcom Corp.*, No. 16-379, 2017 WL 1065865, at *4 (D. Del. Mar. 21, 2017) (citation omitted). This action could have been brought in the E.D.N.C., and indeed, should have been brought there given its relationship to the First E.D.N.C. Action, to the Declaratory Judgment Action pending in the E.D.N.C., and to the First '167 Patent Infringement Action now pending in the E.D.N.C.

9

A patent infringement action may be brought where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). BioDelivery initially could have been sued in the E.D.N.C. because its headquarters are located in Raleigh, North Carolina, which is where BioDelivery employees developed the BELBUCA® product, and where the documents and witnesses with information on the subject matter of this litigation are located. Sirgo Decl. ¶¶ 2-5. Moreover, MonoSol has already chosen to bring claims for patent infringement against BioDelivery in the E.D.N.C. Christie Decl. at ¶ 3, Exh. 1. Having previously chosen that forum, MonoSol cannot credibly argue that E.D.N.C is inconvenient to them for this case.

C. **The *Jumara* "Private Interest" Factors Heavily Favor Transfer to North Carolina**

1. **Plaintiff's *First* Choice of Forum Is Entitled To Weight, But Forum Shopping Must Be Discouraged**

Under the particular facts of this case, Plaintiff chose *two* fora to litigate their patent infringement disputes with BioDelivery. It first chose the E.D.N.C. for litigation about BioDelivery's buprenorphine pharmaceutical film products, which forum has a substantial nexus to the dispute given BioDelivery's presence there. It was only *after* the E.D.N.C. dismissed Plaintiffs' premature First E.D.N.C. Action, and *after* BioDelivery filed the Declaratory Judgment Action in the E.D.N.C., that Plaintiffs elected to try their luck in another forum and filed the First '167 Patent Infringement Action in the D.N.J. And despite the First '167 Patent Infringement Action having been transferred to the E.D.N.C., and despite the First '167 Patent Infringement Action remaining pending in the E.D.N.C., MonoSol chose the D.N.J. and then the D.Del.—refusing to accept that the parties' disputes, including those concerning BioDelivery's buprenorphine film products and the '167 Patent, should all be resolved in the E.D.N.C.

As "the rule of deference to a plaintiff's choice assumes that a home forum is inherently more convenient when the chosen forum is actually not inherently more convenient for the plaintiff, the plaintiff's preference is accorded less weight." *Blackbird*, 2017 WL 4543783, at *5 (citations omitted); *see also Linex Techs., Inc. v. Hewlett–Packard Co.*, No. 11–400, 2013 WL 105323, at *3 (D.Del. Jan. 7, 2013) ("[W]hen a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than the paramount consideration")."

Monosol maintains little, if any, relevant activity in Delaware. Although MonoSol is incorporated in Delaware, its corporate headquarters is in New Jersey. D.I. 1 at ¶ 6; *see Blackbird*, 2017 WL 4543783, at *7 ("The Federal Circuit, however, has explicitly held that the mere fact of a defendant's incorporation in Delaware is not a dispositive factor in the venue transfer analysis.) (citing *In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011)). Its research, development, and manufacturing facilities are located in Portage, Indiana. Christie Decl. at ¶ 16, Exh. 10. The assignment of the '167 Patent to MonoSol specifically identifies the Portage, Indiana location as the one most relevant to this patent. D.I. 1, Exh. A. Thus, upon information and belief, it is likely that most relevant witnesses and documents required for production by Monosol will not be located in Delaware.

Furthermore, there is a strong judicial policy against forum shopping. "[A] litigant, whether a swift first or as a prompt retaliator, is open to the charge of forum shopping whenever he chooses a forum with slight connection to the factual circumstances surrounding his suit." *See Rayco Mfg. Co. v. Chicopee Mfg. Corp.*, 148 F. Supp. 588, 592-93 (S.D.N.Y. 1957). As previously mentioned, this lawsuit is the fourth iteration of the patent dispute between MonoSol and BioDelivery concerning BioDelivery's buprenorphine pharmaceutical film products.

MonoSol filed this action in this District *after* its first action – filed in the E.D.N.C. – was dismissed, *after* BioDelivery filed its Declaratory Judgment Action in the E.D.N.C., and *after* the First '167 Patent Infringement Action was transferred to the E.D.N.C. Given the prior and pending litigation in the E.D.N.C. (MonoSol's initial forum of choice), there simply is no reason for MonoSol to have filed this action in the D.N.J., and then sought a transfer to the D.Del., other than inappropriate forum shopping.

Accordingly, BioDelivery respectfully submits that MonoSol's *first* chosen forum for litigation about BioDelivery's buprenorphine pharmaceutical film products – the E.D.N.C. – be honored, because of its nexus to this dispute and because MonoSol's chose to bring related litigation in that venue. MonoSol's subsequent filings in other venues should be afforded no weight because they constitute impermissible forum shopping.

### 2.     The Defendant's Forum Preference Warrants Transfer

BioDelivery's preference is that the Court transfer this dispute to the forum that MonoSol first chose for litigation about BioDelivery's buprenorphine pharmaceutical film products, which is where related litigation (the Declaratory Judgment Action and the First '167 Patent Infringement Action) remains pending. Furthermore, Defendants' preferred forum is also the location of the majority of the relevant witnesses and documents. *See*, *supra*, Section III.D.1. Accordingly, this factor weighs in favor of transfer.

12

### 3. Plaintiff's Claims Arose in North Carolina

As MonoSol tacitly acknowledged by filing the First E.D.N.C. Action in the E.D.N.C., and as the D.N.J. court recognized when transferring the First '167 Patent Infringement Action to the E.D.N.C, BioDelivery's activities that give rise to MonoSol's purported claims of patent infringement are based in the E.D.N.C.

Here the E.D.N.C. is the forum constituting the "location of operative events." *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012). "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *See id.* (*citing Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012)); *see also Wacoh Co. v. Kionix, Inc.*, 845 F.Supp.2d 597, 602 (D.Del. 2012) ("[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured").

BioDelivery's operations, pharmaceutical development, and commercialization efforts are conducted from Raleigh, North Carolina, and BELBUCA®-related activities are no exception. Sirgo Decl. ¶¶ 3-5. Testing, research, and development for the BELBUCA® drug occurred at BioDelivery's headquarters. *Id.* at ¶ 3. Marketing and promotional efforts for the BELBUCA® product are directed by BioDelivery from its offices in North Carolina. *Id.* Furthermore, BioDelivery does not have any facilities in Delaware. *Id.* at ¶ 6. To the extent there is any activity in Delaware, it can be considered at most "limited marketing activity;" the "location of operative events" is clearly in North Carolina. *Id.* at ¶¶ 3-8.

Accordingly, this factor weighs in favor of transfer.

13

### 4. The Convenience Of Witnesses Weighs In Favor Of Transfer

The "convenience of the parties as indicated by their relative physical and financial condition," *see Jumara,* 55 F. 3d at 879, weighs heavily in favor of transfer to the E.D.N.C. As the accused infringer, BioDelivery will be the source of most relevant witnesses and information relating to MonoSol's claims. *See In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quotation omitted) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). The parties' relative physical locations weigh in favor of transfer. The principal place of business for BioDelivery is in North Carolina. Sirgo Decl. at ¶ 2. Most, if not all, of the BioDelivery employees who may have information relevant to the case are located in North Carolina. *Id.* at ¶4.

MonoSol cannot claim the same quality of ties to Delaware. While MonoSol is incorporated in Delaware, it is clear on the face of the '167 Patent as well as the assignment of the '167 Patent to MonoSol that the bulk of the evidence regarding the development of the inventions claimed in the '167 Patent will be located in MonoSol's Indiana facilities. Indeed, none of the '167 Patent inventors reside in Delaware; the face of the '167 Patent reflects that the inventors are located at least 600 miles away in Tennessee, Indiana, and California.

Finally, the parties' relative financial conditions weigh in favor of transfer. BioDelivery is still focused largely on the research and development of its small pharmaceutical portfolio. BioDelivery also has not yet generated profits. *See* Christie Decl. ¶ 17, Exh. 11, at pp. 1-4. In contrast, Suboxone® sales have topped $1 billion since 2009, providing a significant source of revenue for MonoSol as its manufacturer. *See. id.* ¶¶ 18-19, Exh. 12 at p. 1, Exh. 13 at ¶¶ 2, 7. Plaintiff MonoSol is thus in a better financial position to incur the slight additional cost of

witness travel. This is especially true given that MonoSol's witnesses are likely to have to travel regardless of the ultimate venue.

For all of the above reasons, this factor weighs in favor of transfer.

### 5. The Location Of Documents Weighs In Favor Of Transfer

Most of the relevant books and records in this litigation are located in the E.D.N.C. *See Blackbird*, 2017 WL 4543783, at *10 (citing *In re Genentech,* 566 F.3d at 1345 ("[T]he place where [the accused infringer's] documents are kept weighs in favor of transfer to that location")). As discussed above, BioDelivery's documents will be the primary sources of documentary evidence relevant to MonoSol's claims of infringement against the BELBUCA® product, and its documents are primarily located, managed, and maintained in the Eastern District of North Carolina. Sirgo Decl. at ¶¶ 3-5. The same is true for nearly all of the information related to BioDelivery's general operations, marketing, and financials. *Id.* This factor weighs heavily in favor of transfer because "most of the evidence resides in the proposed transferee forum and none resides in the transferor forum." *Blackbird*, 2017 WL 4543783, *10 (citing *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199-200 (Fed. Cir. 2009)).

### D. The "Public Interest" Factors Favor Transfer to North Carolina

### 1. Practical Considerations – Including The First E.D.N.C. Action, The Pending Declaratory Judgment Action, And The First '167 Patent Infringement Action – Favor Transfer

Given that the Declaratory Judgment Action and the First '167 Patent Infringement Action are currently pending in the E.D.N.C., and that the court in that forum previously adjudicated Plaintiff's First E.D.N.C. Action, practical considerations of judicial efficiency support transfer in this case. Transfer will make adjudication and ultimate trial easier, quicker, and less expensive by offering the possibility of consolidation of actions involving BioDelivery's buprenorphine pharmaceutical film products and the '167 Patent. *See Blackbird*, 2017 WL

15

4543783, at *11 (citing *See Ross v. Institutional Longevity Assets LLC*, No. 12–102, 2013 WL 5299171, at *13 (D. Del. Sept. 20, 2013) ("In examining this *Jumara* factor, our Court has often cited the existence of related lawsuits in one of the fora at issue as being an important practical consideration to be taken into account.")) (internal quotation marks and citation omitted). Transferring an action to another district where a similar action is already pending not only conserves judicial and party resources, but also serves the interests of justice because it eliminates duplication of discovery and the possibility of inconsistent results. *See Cont'l Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

Additionally, the currently pending Declaratory Judgment Action overlaps substantially with the claims asserted in this action. Both cases involve similar facts and legal issues, BioDelivery's buprenorphine pharmaceutical film products, and at least one closely related patent within the same patent family. Indeed, two of the three patents-in-suit involved in the Declaratory Judgment Action share common ancestors, common figures, common written disclosure, and common claim terms with the '167 Patent. Transfer to the E.D.N.C. would thus avoid duplicative efforts in addition to eliminating the potential for inconsistent claim constructions and judgments.

A final practical consideration favoring transfer is the above-mentioned judicial policy of discouraging forum shopping. MonoSol picked its battleground by filing suit against BioDelivery's buprenorphine pharmaceutical film products in the E.D.N.C. BioDelivery honored that (admittedly, logical) choice, and filed the Declaratory Judgment Action in

16

MonoSol's chosen forum. The D.N.J. court understood the wisdom of consolidating the parties'
patent infringement disputes involving BioDelivery's buprenorphine pharmaceutical film
products when it transferred the First '167 Patent Infringement Action to the E.D.N.C. In
practical terms, BioDelivery and the D.N.J. court appreciated that the E.D.N.C. is an agreeable
and appropriate forum for these cases. Allowing MonoSol to maintain a second action against
BioDelivery based on the '167 patent in a second forum is not practical. Accordingly, logic an
commonsense overwhelmingly favor transfer to the E.D.N.C.

### 2. Judicial Efficiency Favors Transfer

Again, because the First E.D.N.C. Action and the currently pending Declaratory
Judgment Action were both filed in the E.D.N.C., and the First '167 Patent Infringement Action
is now venued in the E.D.N.C., the administrative burdens imposed on the judiciary favor
transfer. The E.D.N.C. has prior familiarity with the parties and technology from its adjudication
of the dispute involving the '832 Patent. Moreover, transfer will present a single court with the
opportunity to resolve all issues surrounding BioDelivery's alleged infringement of MonoSol's
patents by its buprenorphine pharmaceutical film products. *See Telcordia Techs, Inc. v. Tellabs,
Inc.*, No. 09-2089 (JAG), 2009 WL 5064787, at *3 (D.N.J. Dec. 16, 2009) ("the Federal Circuit
has observed that 'in a case such as this in which several highly technical factual issues are
presented and the other relevant factors are in equipoise, the interest of judicial economy may
favor transfer to a court that has become familiar with the issues'") (quoting *Regents of the Univ.
of California v. Eli Lilly and Co.,* 119 F.3d 1559, 1565 (Fed. Cir. 1997)). This is especially true
where the E.D.N.C. will be investing substantial effort in this dispute. Accordingly, a transfer
would "[avoid] duplicative litigation when one court has already invested substantial time and

energy in the related case." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 784 (D. Md. 2009); *Regents of the Univ. of California,* 119 F.3d at 1565.

Furthermore, "Delaware is one of the busiest patent jurisdictions in the nation . . . [which] weigh[s] in favor of transfer." *Cruise Control Techs. LLC v. Chrysler Grp. LLC*, No. 12-1755-GMS, 2014 WL 1304820, at *5 (D. Del. Mar. 31, 2014). "[T]he influx of new patent cases in the District of Delaware and corresponding decrease in judges available to handle these matters cannot be ignored." *Blackbird*, 2017 WL 4543783, at *13. Indeed, in order to alleviate the significant burden on the District of Delaware, a number of "visiting" judges from the Eastern District of Pennsylvania, including Your Honor, have agreed to handle many of these cases. *See id.,* 2017 WL 4543783, at *12. Where the E.D.N.C. is an available and convenient forum for this case, and where court congestion will significantly slow the progress of the case here, this factor weighs in favor of transfer. *See id.*

### 3. The Eastern District Of North Carolina Has A Local Interest In The Resolution Of This Dispute

North Carolina has a significant interest in the resolution of this dispute. As noted above, Defendant BioDelivery has its headquarters there. Sirgo Decl. at ¶ 2. The majority of the documents and witnesses are located in that district. *Id.* at ¶¶ 3-5. The allegedly infringing activities including research and development of the BELBUCA® product, as well as the development and drafting of the promotion, marketing, studies, and financials all occurred in North Carolina. *See*, *e.g. In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighted in that venue's favor"). On the other hand, Plaintiff cannot demonstrate equally strong ties to this venue. *See In re Volkswagen AG,* 371 F.3d 201, 206 (Fed. Cir. 2004) (where plaintiffs cannot demonstrate a connection between their chosen venue and the

18

facts of the case the local interest factor favors transfer). MonoSol is headquartered in the D.N.J., and the patent assignment shows that the majority of the information regarding the '167 Patent is in Indiana, and that the inventors are located in Indiana, Tennessee, and California. North Carolina's local interest in this dispute clearly is stronger than Delaware's.

**4.** **The Remaining *Jumara* Factors Are Neutral**

The remaining public interest factors are neutral in the transfer analysis. Both the D.Del. and the E.D.N.C. are experienced in adjudicating patent litigation disputes, and there are no state law issues in this case.

## V. CONCLUSION

In light of the foregoing, BioDelivery respectfully requests that this case be transferred pursuant to 28 U.S.C. § 1404(a) to the Eastern District of North Carolina.

Dated: October 31, 2017                    Respectfully submitted,

                                           **McCarter & English, LLP**


                                           */s/ Brian R. Lemon*
                                           Brian R. Lemon (DE Bar #4730)
                                           MCCARTER & ENGLISH LLP
                                           405 N. King Street
                                           8th Floor
                                           Wilmington, Delaware 19801
                                           Tel: (302) 984-6374
                                           Fax: (302) 691-2911
                                           blemon@mccarter.com

                                           Scott S. Christie
                                           Ravin R. Patel
                                           MCCARTER & ENGLISH LLP
                                           Four Gateway Center
                                           100 Mulberry Street
                                           Newark, NJ 07102
                                           schristie@mccarter.com
                                           rpatel@mccarter.com

                                           Kia L. Freeman

19

McCARTER & ENGLISH LLP
265 Franklin Street
Boston, Massachusetts 02110
kfreeman@mccarter.com

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

20