# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONOSOL RX, LLC, | |
| Plaintiff, | |
| | Civil Action No. 17-01307-MSG-CJB |
| v. | |
| BIODELIVERY SCIENCES INTERNATIONAL, INC., | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL:

Kia L. Freeman
MCCARTER & ENGLISH LLP
265 Franklin Street
Boston, Massachusetts 02110
kfreeman@mccarter.com

Scott S. Christie
Ravin R. Patel
MCCARTER & ENGLISH LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
schristie@mccarter.com
rpatel@mccarter.com

DATED: October 31, 2017

Brian R. Lemon (DE Bar #4730)
MCCARTER & ENGLISH LLP
405 N. King Street
8th Floor
Wilmington, Delaware 19801
Tel: (302) 984-6374
Fax: (302) 691-2911
blemon@mccarter.com

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF PROCEEDINGS .................................................1

II.    INTRODUCTION ..................................................................................1

III.   BACKGROUND .....................................................................................2

       A.     The Parties ...............................................................................2

       B.     This Action Is The Latest In A Series Of Patent Infringement
              Actions Between MonoSol And Its Business Partner Indivior
              Against BioDelivery. ..................................................................3

IV.    ARGUMENT ..........................................................................................5

       A.     General Standard Of Review On A Motion To Dismiss......................5

       B.     MonoSol Has Not Adequately Pleaded Patent Law Jurisdiction
              And Standing To Enforce The '167 Patent. ...................................6

              1.     Requirements For Jurisdiction And Standing In
                     A Patent Infringement Action.............................................6

              2.     The Complaint Does Not Establish Patent
                     Jurisdiction Or That MonoSol Has Standing to
                     Enforce The '167 Patent Without Indivior As A
                     Co-Plaintiff .....................................................................8

       C.     MonoSol Has Not Adequately Pleaded Facts To Demonstrate
              Infringement of The '167 Patent..................................................10

              1.     Requirements For Pleading Direct Patent
                     Infringement ..................................................................10

              2.     MonoSol's Pleadings Concerning Direct Patent
                     Infringement Are Woefully Deficient..................................11

                     a.     MonoSol Has Not Pleaded That
                            BELBUCA® "Film Is Self-Supporting"
                            As Required By The Asserted Claims Of
                            The '167 Patent ............................................12

                     b.     MonoSol Has Not Pleaded That
                            BELBUCA® Film Features "A
                            Substantially Uniform Distribution ... Of
                            Said Active Component Within Said
                            Polymer Matrix" As Required By The
                            Asserted Claims Of The '167 Patent...............13

c.    MonoSol Has Not Pleaded That
BELBUCA® Film Involves "A
Controlled Drying Process Which
Rapidly Forms A Viscoelastic Matrix To
Lock-In Said Active In Place Within Said
Matrix and Maintain Said Substantially
Uniform Distribution" As Required By
The Asserted Claims Of The '167 Patent .......................14

d.    MonoSol Has Not Adequately Pleaded
That, For BELBUCA® Film,
"Substantially Equal Sized Individual
Unit Doses…Do Not Vary By More
Than 10% Of Said Desired Amount Of
Said Active Component," As Required
By The Asserted Claims Of The '167
Patent ........................................................................15

3.    MonoSol's Indirect Infringement Pleadings Rely
on the Direct Infringement Pleadings, and
Exacerbate the Underlying Deficiencies ...................................16

a.    Monosol Has Not Adequately Pled
Induced Infringement Under 35 U.S.C. §
271(b) ..........................................................................17

b.    MonoSol Has Not Adequately Pleaded
Contributory Infringement Under 35
U.S.C. § 271(c) ...........................................................18

V.    CONCLUSION ........................................................................................19

ME1 25978930v.1

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................5, 6, 10, 16, 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................ 5, 6, 10, 17

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
    681 F.3d 1323 (Fed. Cir. 2012)............................................................... 17, 18

*Continental Circuits LLC v. Intel Corp.,*
    No. 16-2026, 2017 WL 679116 (D. Ariz. Feb. 21, 2017) ...................................10

*Drone Technologies, Inc. v. Parrot S.A.,*
    838 F.3d 1283 (Fed.Cir. 2016)..................................................................7

*DSU Med. Corp. v. JMS Co.,*
    471 F.3d 1293 (Fed. Cir. 2006)................................................................17

*e.Digital Corp. v. iBaby Labs, Inc.,*
    No. 15-5790, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ..............................10

*Ethicon, Inc. v. United States Surgical Corp.,*
    135 F.3d 1456, 1468 (Fed. Cir. 1998) .........................................................7

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009) ...............................................................9, 18

*Independent Wireless Telegraph Co. v. Radio Corp. of America,*
    269 U.S. 459 (1926) ..............................................................................7

*Investpic, LLC v. FactSet Research Sys., Inc.,*
    2011 WL 4591078 (D.Del. 2011) .............................................................18

*Isr. Bio–Eng'g Project v. Amgen, Inc.,*
    475 F.3d 1256 (Fed. Cir. 2007)..................................................................7

*Laitram Corp v. Rexnord, Inc.*
    939 F.2d 1533, 1535 (Fed. Cir. 1991) .......................................................10

*Lifetime Induss., Inc. v. Trim-Lok, Inc.,*
    869 F.3d 1372 (Fed. Cir. Sept. 7, 2017).....................................................10

Case 5:18-cv-00514-D    Document 51    Filed 10/31/17    Page 4 of 26

*Lyda v. CBS Corp.,*
    838 F.3d 1331 (Fed. Cir. 2016) ......................................................................... 10

*Oil-Dri Corp. of America v. Nestle Purina Petcare Co.,*
    No. 15-1067, 2017 WL 1197096 (N.D. Ill. Mar. 31, 2017) ................................. 10

*Pittsburgh v. W. Penn Power Co.,*
    147 F.3d 256 (3d Cir. 1998) ................................................................................ 6

*Pragmatus AV, LLC v. Yahoo! Inc.,*
    2012 WL 6044793 (D.Del. 2012) ................................................................. 18, 19

*PTT, LLC v. Gimme Games,*
    2014 WL 5798148 (D.N.J. 2014) ...................................................................... 18

*Raindance Techs., Inc. v. 10x Genomics, Inc.,*
    No. 15-152, 2016 WL 927143 (D. Del. Mar. 4, 2016) ....................................... 11

*Schering Corp. v. Roussel–UCLAF SA,*
    104 F.3d 341 (Fed. Cir. 1997) ............................................................................. 7

*Scripps Res. Inst. v. Illumina, Inc.,*
    No. 16-661, 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016) ................................ 10

*STC. UNM v. Intel Corp.,*
    754 F.3d 940 (Fed. Cir. 2014) ............................................................................. 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ............................................................................................. 6

*W. Penn Allegheny Health Svs. v. UPMC,*
    627 F.3d 85 (3d Cir. 2010) ............................................................................ 6, 10

*Waterman v. Mackenzie,*
    138 U.S. 252 (1891) ......................................................................................... 6, 7

**FEDERAL STATUTES**

35 U.S.C. § 100(d) ....................................................................................................... 7

35 U.S.C. § 271(a) ..................................................................................................... 11

35 U.S.C. § 271(b) ................................................................................................ 17, 18

35 U.S.C. § 271(c) ................................................................................................ 18, 19

35 U.S.C. § 281 ............................................................................................................ 7

ME1 25978930v.1

## OTHER AUTHORITIES

5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007) ...........................................................................................................6

ME1 25978930v.1

Defendant BioDelivery Sciences International, Inc. ("BioDelivery") hereby moves, pursuant to Fed. R. Civ. P. 12(b), to dismiss patent infringement claims asserted by Plaintiff MonoSol Rx, LLC ("MonoSol") for failure to join a necessary party and for failure to state a claim upon which relief may be granted.

## I. NATURE AND STAGE OF PROCEEDINGS

On January 13, 2017, MonoSol filed this patent infringement action in the United States District Court for the District of New Jersey ("D.N.J."). *See* D.I. 1, Compl. On March 1, 2017, BioDelivery filed a Motion to Transfer venue to the Eastern District of North Carolina ("E.D.N.C.") and a Motion to Dismiss the Complaint. *See* D.I. 8 and 7. On July 25, 2017, the Honorable Brian R. Martinotti held an in-person status conference with the parties. *See* D.I. 32. On September 14, 2017, Judge Martinotti entered a Stipulated Order transferring the action to the United States District Court for the District of Delaware ("D.Del."). *See* D.I. 37. On October 11, 2017, the Honorable Christopher J. Burke granted the parties leave to submit revised briefing as to BioDelivery's two pending motions. *See* D.I. 41, *et seq*.

## II. INTRODUCTION

1.   MonoSol failed to state a claim upon which relief may be granted. MonoSol's allegations that BioDelivery's BELBUCA® buprenorphine pharmaceutical film products infringe U.S. Patent No. 8,765,167 (the "'167 Patent") form the sole basis for this action. Nonetheless, MonoSol failed to meet its burden to plead patent infringement with the requisite specificity. Except for a general conclusory allegation, the Complaint fails to allege that all of the elements of the asserted claim are met by the BELBUCA® products. MonoSol simply does not allege sufficient facts for a reasonable inference to be drawn that the BELBUCA® products infringe. MonoSol's indirect infringement allegations are built upon the BELBUCA® direct infringement allegations, and thus are likewise deficient. Accordingly, the instant Complaint

should be dismissed for failure to meet the pleading standard.

2.　　MonoSol also failed to join a necessary party. Indivior PLC (f/k/a Reckitt Benckiser Pharmaceuticals, Inc.) is the lead plaintiff in a pending E.D.N.C. action asserting that BioDelivery's BUNAVAIL® buprenorphine pharmaceutical film products infringe the '167 Patent. As the exclusive licensee, Indivior brought that action jointly with MonoSol, the named assignee of the '167 Patent. Public records indicate that MonoSol granted Indivior exclusive rights to buprenorphine products. Indeed, as a co-plaintiff in the pending E.D.N.C. action, MonoSol endorsed Indivior's right to bring an action asserting that buprenorphine pharmaceutical film products infringe the '167 Patent. MonoSol here seeks to enforce the same patent against another BioDelivery buprenorphine pharmaceutical film product—but without Indivior. By failing to join its exclusive licensee Indivior, MonoSol has neglected to join a party with an incontrovertible right to bring action against buprenorphine pharmaceutical film products based on the '167 Patent. MonoSol's Complaint also should be dismissed for failure to join a necessary party.

## III.　BACKGROUND

### A.　The Parties

This action relates to BioDelivery's development of new and innovative buprenorphine pharmaceutical film products that have been approved by the Food and Drug Administration ("FDA"). The FDA approved BioDelivery's first buprenorphine pharmaceutical film product BUNAVAIL® for the treatment of opioid addiction. MonoSol makes, and its business partner Indivior markets, a competing buprenorphine pharmaceutical film product named SUBOXONE®. Although it contains the same active ingredient as BioDelivery's BUNAVAIL® product and MonoSol's SUBOXONE® product (i.e., buprenorphine), BioDelivery's second buprenorphine pharmaceutical film product BELBUCA® lacks their

abuse-resistance ingredient. Thus, the FDA approved BioDelivery's second buprenorphine pharmaceutical film product BELBUCA® for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. MonoSol alleges in the Complaint that BioDelivery's second buprenorphine pharmaceutical film product BELBUCA® infringes the '167 Patent, which MonoSol owns and Indivior exclusively licenses. *See* D.I. 1 at ¶ 2; Exh. 1, Complaint, *Reckitt Benckiser Pharmaceuticals, Inc. et. al. v. BioDelivery Sciences International, Inc. et. al.*, No. 3:14-cv-05892-MAS-TJB (D.N.J. Sept. 22, 2014), at ¶¶ 15-16. As described below, this action is substantially related to two actions already pending in the E.D.N.C.

**B.      This Action Is The Latest In A Series Of Patent Infringement Actions Between MonoSol And Its Business Partner Indivior Against BioDelivery.**

This litigation represents the latest attempt by MonoSol to gain a competitive advantage over BioDelivery through litigation. On October 29, 2013, Indivior and MonoSol jointly filed a complaint for patent infringement in the E.D.N.C., alleging that BioDelivery's first buprenorphine pharmaceutical film product BUNAVAIL® – a product that, at the time, had neither received FDA approval nor been marketed by BioDelivery – would, if marketed, infringe the '832 Patent. (the "First E.D.N.C. Action"). *See* Exh. 2, Complaint, *Reckitt Benckiser Pharmaceuticals, Inc. et. al. v. BioDelivery Sciences International, Inc.*, No. 5:13-cv-00760-BO (E.D.N.C. Oct. 29, 2013), at ¶¶ 1, 4. On May 21, 2014, the court dismissed the First E.D.N.C. Action, concluding that the plaintiffs' claims were premature, and that the plaintiffs had failed to state a Hatch-Waxman claim for patent infringement. *See* Exh. 3, Order, *Reckitt Benckiser Pharmaceuticals, Inc.et al. v. BioDelivery Sciences International, Inc.*, No. 5:13-cv-00760-BO (E.D.N.C. May 21, 2014) .

Following the dismissal of the First E.D.N.C. Action, during Indivior's investor

presentation on July 28, 2014, Indivior's Chief Executive Officer stated in reference to BioDelivery that "of course the minute they launch [the BUNAVAIL® product], we will sue them for patent infringement ... we are going to be aggressive about that and uncompromising." Exh. 4, Complaint, *BioDelivery Sciences International, Inc. v. Reckitt Benckiser Pharmaceuticals, Inc. et al.*, No. 5:14-cv-00529-H (E.D.N.C. Sept. 20, 2014) at ¶ 32. Accordingly, as BioDelivery finalized its preparations for its commercial launch of BUNAVAIL®, on September 20, 2014, it filed a declaratory judgment action against both Indivior and MonoSol in the Eastern District of North Carolina (the "Declaratory Judgment Action"). *See id.* BioDelivery's Declaratory Judgment Action seeks a declaration that BioDelivery does not infringe any valid claim of the '832 Patent, the '080 Patent, or the '378 Patent.[1] *See id.* at ¶ 1. On December 23, 2014, the court granted the parties' joint motion to stay pending the outcome of the USPTO's *inter partes* review of the '832 Patent and *inter partes* reexamination of the '080 Patent. *See* Exh. 5, Order, *BioDelivery Sciences International, Inc. v. Reckitt Benckiser Pharmaceuticals, Inc. (n/k/a Indivior, PLC) et al.*, No. 5:14-cv-00529-H (E.D.N.C. Dec. 23, 2014).

Two days after BioDelivery's filing its Declaratory Judgment Action in the E.D.N.C., Indivior and MonoSol jointly filed a complaint for patent infringement in the D.N.J. against BioDelivery and its contract marketing organization alleging that BioDelivery's BUNAVAIL® buprenorphine film product infringes the '167 patent. *See* Exh. 1 at ¶¶ 1, 3, 24-26. Recognizing that MonoSol and Indivior were accusing the same product of infringing a patent closely related to the patents-in-suit in the Declaratory Judgment Action, and that the two actions involved

---

[1] On December 12, 2014, BioDelivery filed a Notice of Partial Voluntary Dismissal Without Prejudice of Count III of its Declaratory Judgment Action complaint which pertains to the '378 Patent. Thus, the Declaratory Judgment Action no longer asserts any claims based upon the '378 Patent.

ME1 25978930v.1

nearly the same parties, on July 21, 2015, the D.N.J. court granted BioDelivery's motion to transfer that action to the E.D.N.C.  Exh. 6, Order, *Reckitt Benckiser Pharmaceuticals, Inc. et al. v. BioDelivery Sciences International, Inc. et al.*, No. 3:14-cv-05892-MAS-TJB (D.N.J. July 21, 2015), at 11.  On May 6, 2016, the E.D.N.C. court granted the parties' joint motion to stay pending the outcome of the USPTO's *inter partes* review of the '167 Patent.  Exh. 7, Order, *Reckitt Benckiser Pharmaceuticals, Inc. et al. v. BioDelivery Sciences International, Inc. et al.*, No. 5:15-cv-00350-D (E.D.N.C. May 6, 2016).  The first action asserting that a BioDelivery buprenorphine film product infringes the '167 Patent, filed jointly by MonoSol and Indivior, remains pending in the E.D.N.C.

While BioDelivery also is moving, in the alternative, to transfer this case to the Eastern District of North Carolina because, among other reasons, all of MonoSol's allegations that BioDelivery's buprenorphine pharmaceutical film products infringe the '167 Patent and related patents should be addressed and resolved in one forum, the Court nevertheless should dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b).

## IV.    ARGUMENT

### A.    General Standard Of Review On A Motion To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  To meet this standard, the plaintiff must "plead[] factual content that

ME1 25978930v.1

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted).

The Supreme Court has held that the *Iqbal/Twombly* pleading standard applies in all civil cases. See *id.* at 684 (pleading standard applies in "all civil actions"). The Third Circuit has held that "Rule 8's pleading standard applies with the same level of rigor in all civil actions." *W. Penn Allegheny Health Svs. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (internal quotation marks omitted).

Moreover, in deciding a motion to dismiss, a court may consider not only the allegations in the complaint, but also documents attached to or specifically referenced in the complaint and matters of public record. *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).

### B. MonoSol Has Not Adequately Pleaded Patent Law Jurisdiction And Standing To Enforce The '167 Patent.

#### 1. Requirements For Jurisdiction And Standing In A Patent Infringement Action.

It is well settled that all entities with the right of enforcement must join in a patent infringement suit. *See, e.g.*, *Waterman v. Mackenzie*, 138 U.S. 252 (1891). "The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1) the whole patent...; or

(2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. A transfer of any of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers." *Id.* at 255. The presence of all parties with the right of enforcement is necessary "to give jurisdiction under the patent laws." *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 468 (1926); 35 U.S.C. § 281 ("A *patentee* shall have remedy by civil action for infringement of his patent.") (emphasis added); 35 U.S.C. § 100(d) (defining *patentee* to include the entity to whom the patent issued and any "successors in title").

The Federal Circuit has long applied the rule that a patent infringement suit may only be maintained if all entities with an enforcement interest in the patent are joined as plaintiffs. *See, e.g.*, *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed.Cir. 1998) ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit."). One entity having an enforcement interest in a patent may prevent another such entity from enforcing the patent by refusing to join a suit to enforce the patent. *See, e.g.*, *Schering Corp. v. Roussel–UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997) ("[O]ne co-owner has the right to impede the co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."). Absent joinder of all entities with a right to enforce a patent, a single such entity seeking to enforce the patent alone lacks standing. *See, e.g.*, *Isr. Bio–Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007); *Drone Technologies, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed.Cir. 2016) (standing derives from the alleged injury of violation of the entity's exclusionary rights).

## 2. The Complaint Does Not Establish Patent Jurisdiction Or That MonoSol Has Standing to Enforce The '167 Patent Without Indivior As A Co-Plaintiff

Here, MonoSol contends that it owns "all rights … and interest to the '167 Patent, including the right to sue and to recover for any current or past infringement of that patent." D.I. 1 at ¶ 18. But in the other action asserting the '167 Patent against another BioDelivery buprenorphine pharmaceutical film product, now pending in E.D.N.C., MonoSol admits that Indivior (f/k/a Reckitt Benckiser Pharmaceuticals, Inc.) is an exclusive licensee of the '167 Patent. *See* Exh. 1 at ¶¶ 15-16; Exh. 8, Patent Owner's 2d Amended Mandatory Notice Information, *BioDelivery Sciences International, Inc. v. MonoSol Rx, LLC*, PTAB Cases IPR2015-00165, IPR2015-00168, and IPR2015-00169 re: U.S. Patent No. 8.765,167 (Aug. 5, 2015). at p. 1 (explaining that Indivior "is an exclusive licensee of the '167 Patent for Suboxone® sublingual film and other products."). And here, MonoSol admits that it sued BioDelivery for infringement of the '167 Patent jointly with Indivior. *See* D.I. 1 at ¶ 4; *see also* Exh. 1

If MonoSol were the owner of all rights and interest to the '167 Patent, as it contends here, then Indivior would have no interest in the pending E.D.N.C. action asserting the '167 Patent. Indivior's participation, as an exclusive licensee, in the E.D.N.C. action asserting the '167 Patent demonstrates that Indivior believes it has an interest in the '167 Patent. Furthermore, Indivior's agreement with MonoSol, which it filed with the SEC, indicates that it indeed has exclusive rights to buprenorphine products, including to the exclusion of MonoSol. *See* Exh. 9, Exhibit 4.11 to Indivior PLC's Registration of Securities [Section 12(b)], filed with the SEC in July/August of 2016, downloaded from https://www.sec.gov/Archives/edgar/data/1625297/000110465916135485/a16-14310_2ex4d11.htm, at § 15.2 (MonoSol granting Indivior rights to "the Products[] in the Field throughout the Territory"),

8

Schedule Three (defining Indivior's "Products" to include doses with a buprenorphine active ingredient), § 1.1 (defining Indivior's "Field" to include buprenorphine), and § 1.1 (defining Indivior's "Territory" as the world). Indivior's exclusive rights even encompass the right to sub-license. *See id.* at § 15.2.

Contradictory and conclusory statements are not sufficient to satisfy the pleading standard. *See, e.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Here, MonoSol's contention that is owns all rights to the '167 Patent is not only conclusory, but also is contradicted by its own identification of Indivior as an exclusive licensee. MonoSol's ownership contention is further contradicted by its endorsement of Indivior's right to enforce the '167 Patent by joining Indivior in the pending E.D.N.C. action asserting the '167 Patent. Thus, MonoSol has failed to meet its burden to adequately plead patent jurisdiction and standing.

The joinder rule safeguards against the possibility that "an accused infringer [would be subject] to a different infringement suit on the same patent." See *STC. UNM v. Intel Corp.*, 754 F.3d 940, 947 (Fed. Cir. 2014). According to the public agreement between Indivior and MonoSol, Indivior has the right to take steps it reasonably considers appropriate in the event it suspects infringement of the '167 Patent. *See* Exh. 9 at § 15.14. Because of Indivior's interest in the '167 Patent and involvement in the pending E.D.N.C. action asserting the '167 Patent, allowing this case to proceed in the absence of Indivior would unfairly subject BioDelivery to the possibility of prejudicial inconsistencies arising from two parallel suits asserting the '167 Patent – including as to claim construction, infringement and invalidity. Even assuming *arguendo* that the pleading standards were satisfied as to patent law jurisdiction and MonoSol's standing, MonoSol should not be allowed to proceed without Indivior as a co-plaintiff as a matter of public policy. Because MonoSol has failed to join Indivior as a necessary party, the

Complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) and 19.

### C. MonoSol Has Not Adequately Pleaded Facts To Demonstrate Infringement of The '167 Patent

#### 1. Requirements For Pleading Direct Patent Infringement

Since the abrogation of Rule 84 and Form 18 effective December 2015, compliance with abrogated Form 18 offers no immunity from challenges to the adequacy of pleadings. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1377 (Fed. Cir. Sept. 7, 2017). Instead, the general *Iqbal/Twombly* pleading standard clearly applies to patent infringement pleadings. *See Ashcroft,* 556 U.S. at 684 (pleading standard applies in "all civil actions"). Decisions on motions to dismiss for failure to state a patent infringement claim are reviewed under the law of the regional circuit. *See Lifetime Indus., Inc.*, 869 F.3d at 1376. The Third Circuit applies the "pleading standard … with the same level of rigor in all civil actions." *W. Penn Allegheny Health Svs.*, 627 F.3d 85 at 98.

"[T]he failure to meet a single limitation is sufficient to negate infringement of [a patent] claim." *Laitram Corp v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). Thus, "[c]ourts applying the *Twombly-Iqbal* standard to patent infringement claims have required plaintiffs to set forth sufficient facts to plausibly allege that the accused product embodies every limitation in a particular asserted claim." *Oil-Dri Corp. of America v. Nestle Purina Petcare Co.*, No. 15-1067, 2017 WL 1197096, *3 (N.D. Ill. Mar. 31, 2017); *see also Continental Circuits LLC v. Intel Corp.*, No. 16-2026, 2017 WL 679116, at *5 (D. Ariz. Feb. 21, 2017) (The *Iqbal* and *Twombly* "pleading standard requires Plaintiff to address every limitation of at least one claim of the each of the [asserted] patents."); *Scripps Res. Inst. v. Illumina, Inc.*, No. 16-661, 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016) ("[T]he Court joins several other courts in holding that in order to properly plead direct infringement under *Twombly* and *Iqbal*, a plaintiff must plausibly allege

ME1 25978930v.1

that a defendant directly infringes each limitation in at least one asserted claim."); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (holding the *Twombly-Iqbal* standard was not met because "[t]here are … no allegations in the Amended Complaint that can form the basis of a reasonable inference that *each claim step* was performed by or should be attributed to Defendants.") (emphasis added); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (not reported).

### 2. MonoSol's Pleadings Concerning Direct Patent Infringement Are Woefully Deficient

MonoSol alleges that BioDelivery (directly) infringes by making, offering to sell, and/or selling BELBUCA® film. D.I. 1 at ¶¶ 2-3, 11, 19-20, 25, 27-28, 33. In other words, MonoSol's allegations that BioDelivery infringes the '167 Patent are all based solely on its activities related to BELBUCA® film. *Id.* Because establishing patent infringement requires activities directed to the "patented invention," 35 U.S.C. § 271(a), MonoSol cannot meet the *Iqbal/Twombly* standard unless its allegations are sufficiently detailed as to BELBUCA® film.

MonoSol identifies only two independent claims of the '167 Patent purportedly infringed by BELBUCA® film: claim 13 and claim 95. *See* D.I. 1 at ¶¶ 2, 4, 5, 28, 32, 36, 37 (each identifying the same list of claims allegedly infringed) and D.I. 1-1 (claims 13 and 95 are the only independent claims among the asserted claims of the '167 Patent). Each of the two asserted independent claims is directed to "[a]n oral film for delivery of a desired amount of an active component." D.I. 1-1 at 41:50-51 and at 46:58-59. Both of the asserted independent claims recite many of the same features.

MonoSol's factual assertions relating to how BELBUCA® film may satisfy elements of the '167 Patent claims are remarkably limited. MonoSol characterizes BELBUCA® as a "buccal film" and "a pharmaceutical drug product." D.I. 1 at ¶¶ 2, 21. MonoSol identifies

BELBUCA®'s alleged ingredients and various alleged dosage strengths. *Id.* at ¶¶ 20-23. And finally, MonoSol asserts that "[t]he strength of each BELBUCA® film is dependent on the buprenorphine concentration in the formulation and the surface area of the film." *Id.* at ¶ 22.

However, like asserted independent claim 13, asserted independent claim 95 requires much more. Claim 95 of the '167 Patent recites:

> An oral film for delivery of a desired amount of an active component comprising:
>
> an ingestible, water-soluble polymer matrix comprising a polymer selected from the group consisting of hydroxyethylcellulose, hydroxypropylcellulose and carboxymethyl cellulose and combinations thereof;
>
> at least one anti-tacking agent comprising sodium benzoate;
>
> a substantially uniform distribution of said desired amount of said active component within said polymer matrix, wherein said active component is selected from the group consisting of cosmetic agents, pharmaceutical agents, vitamins, bioactive agents and combinations thereof, said film being formed by a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said active in place within said matrix and maintain said substantially uniform distribution;
>
> wherein said film is self-supporting and the active component is substantially uniformly distributed, whereby said substantially uniform distribution is measured by substantially equally sized individual unit doses which do not vary by more than 10% of said desired amount of said active component.

MonoSol simply ignores most of the elements required by the two asserted independent claims.

The Complaint demonstrates that MonoSol made no effort to relate its factual allegations regarding BELBUCA® film to any asserted '167 Patent claim. MonoSol simply fails to present factual allegations from which one might reasonably infer that BELBUCA® film satisfies all the elements of either asserted independent claim, much less any of the asserted dependent claims. The following are representative examples of MonoSol's pleading deficiencies, which are by no means comprehensive of the scope of the problem.

> **a.** **MonoSol Has Not Pleaded That BELBUCA® "Film Is Self-Supporting" As Required By The Asserted Claims Of The '167 Patent**

According to MonoSol, "[t]he invention claimed in the '167 Patent is a *self-supporting*

oral film ….."  Exh. 10, Patent Owner's Response to Petition for *Inter Partes* Review of US Patent No. 8,765,167, *BioDelivery Sciences International, Inc. v. MonoSol Rx, LLC*, PTAB Cases IPR2015-00165, IPR2015-00168, and IPR2015-00169 (Aug. 21, 2015), at 1 (emphasis added).  Both asserted independent claims only encompass "film [that] is self-supporting."  D.I. 1 at ¶ 17, D.I. 1-1 at 42:3 (claim 13 reciting "wherein said film is self-supporting").  But film is not necessarily self-supporting.  According to the '167 Patent, film that requires a separate support to maintain its integrity and structure is not self-supporting.  *See id.* at 23:37-39 ("Desirably, the films will also be self-supporting or in other words able to maintain their integrity and structure in the absence of a separate support.").  MonoSol presents no factual allegations from which one might reasonably infer that BELBUCA® buprenorphine pharmaceutical film is self-supporting.

> **b.  MonoSol Has Not Pleaded That BELBUCA® Film Features "A Substantially Uniform Distribution … Of Said Active Component Within Said Polymer Matrix" As Required By The Asserted Claims Of The '167 Patent**

MonoSol asserts that the '167 Patent generally relates to films "that contain an active component—such as a drug—that is evenly distributed throughout the film."  D.I. 1 at ¶ 16. Claims 13 and 95 each recite uniformity, in some respect, at least four times.  But MonoSol nonetheless presents no assertions from which one might reasonably infer that BELBUCA® buprenorphine pharmaceutical film features the required uniformity.

Both asserted independent claims only encompass film that features "a substantially uniform distribution … of said active component within said polymer matrix."  *Id.* at ¶ 17; D.I. 1-1 at 41:57-58.  The '167 Patent discloses that, after a matrix is cast into a film, active particles may be "placed on" its surface.  *Id.* at 11:9-30.  When the active component is placed on its surface before drying, a film would not have a substantially uniform distribution of the active

component *within* the polymer matrix, as required by the asserted claims.

MonoSol presents no allegations about how the buprenorphine active is part of BELBUCA® film. Moreover, MonoSol presents no facts at all concerning the distribution of the buprenorphine active within the BELBUCA® pharmaceutical film matrix. Indeed, BELBUCA® is described as a "bi-layer" film, thereby suggesting that it may not feature a substantially uniform distribution of its active component within its matrix. D.I. 1-3 at 20:2. Thus, MonoSol presents no factual allegations from which one may reasonably infer that BELBUCA® film features "a substantially uniform distribution ... of said active component within said polymer matrix," as required by the asserted claims.

        **c.**      **MonoSol Has Not Pleaded That BELBUCA® Film Involves "A Controlled Drying Process Which Rapidly Forms A Viscoelastic Matrix To Lock-In Said Active In Place Within Said Matrix and Maintain Said Substantially Uniform Distribution" As Required By The Asserted Claims Of The '167 Patent**

MonoSol touts its alleged improvements in the film-making process as "set forth in the claims of the '167 patent." D.I. 1 at ¶ 17. Both asserted independent claims encompass only film formed by "a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said active in place within said matrix and maintain said substantially uniform distribution." D.I. 1-1 at 41:62-64; *see also* D.I. 1 at ¶ 17. According to the '167 Patent, during the film-making process, the active component can aggregate, conglomerate, or settle. *See* D.I. 1-1 at 2:21-3:31, 7:11-9:4; *see also* D.I. 1 at ¶ 17.

But MonoSol does not assert that BELBUCA®'s drying process prevents undesired aggregation, conglomeration, or settling. In fact, MonoSol presents no factual assertions at all regarding BELBUCA®'s drying process. Thus, even if one were to improperly assume that, before drying began, the BELBUCA® mixture of ingredients had a substantially uniform

distribution of active, MonoSol presents no pleadings from which one may reasonably infer that BELBUCA® buprenorphine film is formed by "a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said active in place within said matrix and maintain said substantially uniform distribution."

> **d.** **MonoSol Has Not Adequately Pleaded That, For BELBUCA® Film, "Substantially Equal Sized Individual Unit Doses…Do Not Vary By More Than 10% Of Said Desired Amount Of Said Active Component," As Required By The Asserted Claims Of The '167 Patent**

Both asserted independent claims require "substantially equally sized individual unit doses which do not vary by more than 10% of said desired amount of said active component." D.I. 1-1 at 42:5-8 (claim 13 reciting the same requirement for substantially "equal" sized individual unit doses); *see also* D.I. 1 at ¶ 17. MonoSol touts the 10% uniformity requirement as a distinguishing feature of its patented film. For example, in the *inter partes* reviews of the '167 Patent, MonoSol argued the patented film has "a superior uniform distribution of active components demonstrating a non-self-aggregating uniform heterogeneity so as to provide a vehicle with substantially evenly distributed components, including the active components, such that individual unit doses cut therefrom vary no more than +/- 10% from the labeled dosage amount (desired amount) for the particular individual unit doses for the drug." Exh. 10 at 14. But MonoSol does not assert that substantially equally-sized individual unit doses of BELBUCA® do not vary by more than 10% of said desired amount of said active component.

MonoSol's assertion that "[t]he strength of each BELBUCA film is dependent on the buprenorphine concentration in the formulation and the surface area of the film" (D.I. 1 at ¶ 22) does not satisfy the 10% uniformity requirement because it does not address distribution of buprenorphine throughout the film. Nor does it address the requirement that the "substantially uniform distribution [of active in the film be] measured by substantially equally sized unit

doses."[2]  Likewise, it fails to indicate how the buprenorphine strength of individual dosage units of BELBUCA® may compare to a desired amount of buprenorphine.  Thus, it cannot reasonably be inferred that "substantially equally sized individual unit doses … do not vary by more than 10% of said desired amount of said active component" from the assertion that the buprenorphine strength of each BELBUCA® film is a function of concentration and surface area.

Again, MonoSol does not assert that the buprenorphine in substantially equal-sized individual unit doses of BELBUCA® has any particular relationship to a desired amount of buprenorphine.  MonoSol simply failed to present any factual allegations from which one may infer that substantially equal-sized individual unit doses of BELBUCA satisfy the requirement, in both asserted independent claims, that active not vary by more than 10% of the desired amount.

While the foregoing is merely exemplary, the Complaint fundamentally fails to present the requisite degree of factual specificity to allow one to draw the inference that BELBUCA® satisfies all the elements required by each asserted independent claim.  MonoSol has failed to allege any facts that would make its infringement allegation plausible.  *See Ashcroft,* 556 U.S. at 679 (requiring pleadings to present a plausible claim for relief to survive a motion to dismiss).  In other words, MonoSol fails to satisfy the pleading standard as to alleged infringement by BELBUCA®, and the Court should dismiss the Complaint with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

> ### 3. MonoSol's Indirect Infringement Pleadings Are Based Upon The Direct Infringement Pleadings, and Exacerbate the Underlying Deficiencies

The Complaint's indirect infringement allegations compound and exacerbate the

---

[2] Each of the asserted independent claims recites both "film" and "individual unit doses" thereof. The '167 patent explains that "sheets of film are usually cut into unit doses."  D.I. 1-1 at 2:7-8.

underlying deficiencies in its direct infringement allegations.

### a. MonoSol Has Not Adequately Pleaded Induced Infringement Under 35 U.S.C. § 271(b)

A claim for induced infringement pursuant to 35 U.S.C. § 271(b) must contain facts plausibly showing that the defendant knew of the patent-in-suit, specifically intended that a third party infringe the patent-in-suit, and knew that the third party's acts constituted infringement. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). Accordingly, inducement requires evidence supporting a specific intent to encourage another's infringement, not merely that the inducer had knowledge of the direct infringer's activities. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006).

The sole mention of induced infringement in the Complaint reads:

> BDSI has induced the direct infringement of the '167 patent in violation of at least 35 U.S.C. § 271(b) by, among other things, knowingly and with intent, actively encouraging others to make, use, sell, and/or offer for sale BELBUCA in a manner that constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claims 13, …, 95, … of the '167 patent. This inducing activity occurred at least since the time that BDSI received actual notice of the '167 patent.

D.I. 1 at ¶ 36. The Complaint's allegation of induced infringement is a mere legal conclusion cast as factual allegations which does not satisfy the *Iqbal/Twombly* pleading standard. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Complaint lacks any factual assertions that may elevate the allegation of induced infringement from hypothetical to plausible. For example, the Complaint fails to identify any of the "others" who allegedly directly infringe. Similarly, the Complaint fails to identify how BioDelivery allegedly "actively encourage[ed]" others to directly infringe. Rather than address the deficiencies in the direct infringement allegations against the BELBUCA® pharmaceutical film products, the Complaint's inducement allegation serves only to compound and intensify the

17

underlying deficiencies. The Complaint simply does not contain sufficient factual assertions to constitute a viable allegation of induced infringement. *See Fowler,* 578 F.3d at 210-11 (explaining a court must determine whether the facts alleged are sufficient to show that the plaintiff has a plausible claim for relief); *Investpic, LLC v. FactSet Research Sys., Inc.,* 2011 WL 4591078, at *1 (D.Del. 2011) (noting that a plaintiff pleading an indirect infringement claim must state facts in support of that claim, not just legal conclusions); *Pragmatus AV, LLC v. Yahoo! Inc.*, 2012 WL 6044793, at *15-16 (D.Del. 2012) (not reported) (recommending dismissal of induced infringement allegation due to insufficient factual allegations); *PTT, LLC v. Gimme Games,*, 2014 WL 5798148, at *10 (D.N.J. 2014) (dismissing claims because plaintiffs failed to allege sufficient facts).

The Complaint's incomplete allegations regarding the elements of induced infringement, notably lacking in supporting facts, are wholly insufficient to state a plausible claim for induced infringement under 35 U.S.C. § 271(b). Therefore, BioDelivery respectfully requests that the Court dismiss the allegations of induced infringement with prejudice.

### b. MonoSol Has Not Adequately Pleaded Contributory Infringement Under 35 U.S.C. § 271(c)

Contributory infringement requires "a component of a patented machine, manufacture, combination or composition, … constituting a material part of the invention, [that is] not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). To state a claim for contributory infringement, a plaintiff must plead facts that allow a plausible inference that the component sold or offered for sale is material to practicing the invention and has no substantial noninfringing uses, that defendants knew the accused component is especially made or especially adapted to infringe the asserted patents, and that a third party used the accused component to directly infringe the asserted patents. *See In re Bill of*

*Lading*, 681 F.3d at 1337; *Pragmatus AV, LLC*, 2012 WL 6044793, at *16.

Here again, MonoSol fails to meet the pleading burden. The only allegations of contributory infringement are:

> BDSI, in violation of 35 U.S.C. § 271(c), has contributed to the direct infringement, either literally or under the doctrine of equivalents, of at least claims 13, …, 95, … of the '167 patent by having BELBUCA made, used, sold, and/or offered for sale by others in the United States, knowing that such products infringe and are not staple articles or commodities in commerce suitable for a substantial noninfringing use.

D.I. 1 at ¶ 37. While the Complaint references BELBUCA, it fails to identify an accused component of BELBUCA that could potentially satisfy the statutory requirements. The Complaint simply does not pinpoint any component of a film, embodied within by either of the asserted independent claims of the '167 Patent, that constitutes a material part of the invention.

The Complaint references "products" apparently with respect to BELBUCA. But with no accused component, the Complaint necessarily fails to allege that any accused component is not a staple article or commodity of commerce suitable for substantial noninfringing use. With no alleged accused component, the Complaint necessarily fails to assert that BioDelivery knew the accused component is especially made or especially adapted to infringe the '167 Patent. Similarly, with no alleged accused component, the Complaint necessarily fails to contend that any third party used an accused component to directly infringe the '167 Patent.

The Complaint simply does not allege all elements of a claim for contributory infringement under 35 U.S.C. § 271(c). The allegations of contributory infringement likewise should be dismissed because the Complaint fails to satisfy the *Twombly-Iqbal* standard.

## V. CONCLUSION

For the reasons detailed above, BioDelivery respectfully requests that the Court dismiss the Complaint with prejudice because (1) MonoSol failed to establish patent law jurisdiction and

standing by endorsing Indivior's right to enforce the '167 Patent yet failing to join Indivior as a necessary party; and (2) MonoSol failed to meet its burden to adequately plead facts in support of its allegations that BELBUCA® buprenorphine film products, directly or indirectly, infringe any asserted claim of the '167 Patent.

October 31, 2017

OF COUNSEL:

Kia L. Freeman
MCCARTER & ENGLISH LLP
265 Franklin Street
Boston, Massachusetts 02110
kfreeman@mccarter.com

Scott S. Christie
Ravin R. Patel
MCCARTER & ENGLISH LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
schristie@mccarter.com
rpatel@mccarter.com

MCCARTER & ENGLISH, LLP

/s/ Brian R. Lemon
Brian R. Lemon (DE Bar #4730)
MCCARTER & ENGLISH LLP
405 N. King Street
8th Floor
Wilmington, Delaware 19801
Tel: (302) 984-6374
Fax: (302) 691-2911
blemon@mccarter.com

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

20