**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| AQUESTIVE THERAPEUTICS, INC. | |
| Plaintiff, | Civil Action No. 5:18-CV-514-D |
| v. | |
| BIODELIVERY SCIENCES INTERNATIONAL, INC., | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

OF COUNSEL:

Kia L. Freeman
Wyley S. Proctor
Thomas F. Foley
MCCARTER & ENGLISH LLP
265 Franklin Street
Boston, Massachusetts 02110
Telephone: (617) 449-6500
kfreeman@mccarter.com
wproctor@mccarter.com
tfoley@mccarter.com

Lynne A. Borchers
NC State Bar No. 32386
Peter D. Siddoway
NC State Bar No. 45647
SAGE PATENT GROUP, PLLC
4120 Main at North Hills St., Suite 230
Raleigh, North Carolina 27609
Telephone: (984) 219-3358
Facsimile: (984) 538-0416
Email: lborchers@sagepat.com
Email: psiddoway@sagepat.com

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

**TABLE OF CONTENTS**

I.  NATURE AND STAGE OF PROCEEDINGS ...................................................................1

II.  INTRODUCTION .....................................................................................................1

III.  BACKGROUND .....................................................................................................3

    A.  The Parties .................................................................................................3

    B.  This Action Is The Latest In A Series Of Patent Infringement Actions Against BioDelivery By Aquestive And Its Business Partner Indivior. .........................................................................................4

IV.  ARGUMENT .....................................................................................................6

    A.  General Standard Of Review On A Motion To Dismiss ......................................6

    B.  Aquestive Has Not Adequately Pleaded Patent Law Jurisdiction And Standing To Enforce The '167 Patent.........................................................7

        1.  Requirements For Jurisdiction And Standing In A Patent Infringement Action.......................................................7

        2.  The Complaint Does Not Establish Patent Jurisdiction Or That Aquestive Has Standing to Enforce The '167 Patent Without Indivior As A Co-Plaintiff ..................................................8

    C.  Aquestive Has Not Adequately Pleaded Facts To Demonstrate Infringement of The '167 Patent.......................................................11

        1.  Requirements For Pleading Direct Patent Infringement.......................................................11

        2.  Aquestive's Pleadings Concerning Direct Patent Infringement Are Woefully Deficient.......................................................12

            a.  Aquestive Has Not Pleaded That BELBUCA® "Film Is Self-Supporting" As Required By The Asserted Claims Of The '167 Patent .....................................................14

            b.  Aquestive Has Not Pleaded That BELBUCA® Film Features "A Substantially Uniform Distribution ... Of Said Active Component Within Said Polymer Matrix," As Required By The Asserted Claims Of The '167 Patent .....................................................15

c.  Aquestive Has Not Pleaded That
BELBUCA® Film Involves "A
Controlled Drying Process Which
Rapidly Forms A Viscoelastic Matrix To
Lock-In Said Active In Place Within Said
Matrix and Maintain Said Substantially
Uniform Distribution," As Required By
The Asserted Claims Of The '167 Patent ........................16

d.  Aquestive Has Not Adequately Pleaded
That, For BELBUCA® Film,
"Substantially Equal Sized Individual
Unit Doses … Do Not Vary By More
Than 10% Of Said Desired Amount Of
Said Active Component," As Required
By The Asserted Claims Of The '167
Patent..................................................................................16

3.  Aquestive's Indirect Infringement Pleadings Are
Based Upon The Direct Infringement Pleadings,
and Exacerbate the Underlying Deficiencies..............................18

a.  Aquestive Has Not Adequately Pleaded
Induced Infringement Under 35 U.S.C. §
271(b).................................................................................18

b.  Aquestive Has Not Adequately Pleaded
Contributory Infringement Under 35
U.S.C. § 271(c) .................................................................20

V.  CONCLUSION.............................................................................................22

ME1 28572990v.2

**TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*Artrip v. Ball Corp.*,
No. 1:14-14, 2017 WL 3669518 (W.D. Va. Aug. 24, 2017) ............................................19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................6, 7, 11, 12, 18, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................6, 12, 19

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ........................................................................18, 19, 20

*Continental Circuits LLC v. Intel Corp.*,
No. 16-2026, 2017 WL 679116 (D. Ariz. Feb. 21, 2017) .......................................12

*Doe v. Virginia Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) .............................................................................9

*Drone Technologies, Inc. v. Parrot S.A.*,
838 F.3d 1283 (Fed.Cir. 2016) ........................................................................8, 10

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) .......................................................................18

*Ethicon, Inc. v. United States Surgical Corp.*,
135 F.3d 1456 (Fed.Cir. 1998) .........................................................................8

*Independent Wireless Telegraph Co. v. Radio Corp. of America*,
269 U.S. 459 (1926) ...........................................................................................7

*Intellectual Ventures I LLC v. Bank of Am., Corp.*,
No. 3:13-358, 2014 WL 868713 (W.D.N.C. Mar. 5, 2014) ....................................19

*Isr. Bio-Eng'g Project v. Amgen, Inc.*,
475 F.3d 1256 (Fed. Cir. 2007) .........................................................................8

*Laitram Corp v. Rexnord, Inc.*,
939 F.2d 1533 (Fed. Cir. 1991) .......................................................................11

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. Sept. 7, 2017) .........................................................11

iii

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016)..................................................................12

*Oil-Dri Corp. of America v. Nestle Purina Petcare Co.*,
   No. 15-1067, 2017 WL 1197096 (N.D. Ill. Mar. 31, 2017) ......................12

*Philips v. Pitt Cty. Mem'l Hosp.*,
   572 F.3d 176 (4th Cir. 2009) .......................................................................7

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
   No. 15-152, 2016 WL 927143 (D. Del. Mar. 4, 2016) ............................12

*Schering Corp. v. Roussel-UCLAF SA*,
   104 F.3d 341 (Fed. Cir. 1997).......................................................................8

*Scripps Res. Inst. v. Illumina, Inc.*,
   No. 16-661, 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016)........................12

*STC. UNM v. Intel Corp.*,
   754 F.3d 940 (Fed. Cir. 2014).....................................................................10

*TC Heartland LLC v. Kraft Foods Group Brands, LLC*,
   137 S.Ct. 1514 (2017)...................................................................................1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).......................................................................................7

*Waterman v. Mackenzie*,
   138 U.S. 252 (1891).......................................................................................7

*WiAV Sol'ns. LLC v. Motorola, Inc.*,
   631 F.3d 1257 (Fed. Cir. 2010)...................................................................10

*Woods v. City of Greensboro*,
   855 F.3d 639 (4th Cir. 2017) ..................................................................6, 11

**FEDERAL STATUTES**

35 U.S.C. § 100(d) ................................................................................................8

35 U.S.C. § 271(a) ..............................................................................................12

35 U.S.C. § 271(b) .........................................................................................18, 20

35 U.S.C. § 271(c) .........................................................................................20, 21

35 U.S.C. § 281 .....................................................................................................7

ME1 28572990v.2

**OTHER AUTHORITIES**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d §
1357 (3d ed. 2007) ...................................................................................................................7

Defendant BioDelivery Sciences International, Inc. ("BioDelivery") hereby moves, pursuant to Fed. R. Civ. P. 12(b), to dismiss patent infringement claims asserted by Plaintiff Aquestive Therapeutics, Inc. (("Aquestive") formerly known as MonoSol Rx, LLC) for failure to join a party necessary for standing and for failure to state a claim upon which relief may be granted.

## I.      NATURE AND STAGE OF PROCEEDINGS

On January 13, 2017, Aquestive filed this patent infringement action in the United States District Court for the District of New Jersey. *See* D.I. 1, Compl. Since it was filed, the action has been transferred twice. On March 1, 2017, BioDelivery filed a Motion to Transfer venue from New Jersey to the Eastern District of North Carolina and a Motion to Dismiss the Complaint. *See* D.I. 8 and 7. On September 14, 2017, in view of *TC Heartland LLC v. Kraft Foods Group Brands, LLC*, 137 S.Ct. 1514 (2017), Judge Brian R. Martinotti entered a Stipulated Order transferring the action to the United States District Court for the District of Delaware. *See* D.I. 37. On October 31, 2017, with permission of the Court and Aquestive, BioDelivery filed its second Motion to Transfer venue to the Eastern District of North Carolina and Motion to Dismiss the Complaint. *See* D.I. 50 and 47. On October 16, 2018, denying the Motion to Dismiss as moot, Judge Mitchell S. Goldberg entered an Order transferring the action to the United States District Court for the Eastern District of North Carolina. *See* D.I. 69.

## II.     INTRODUCTION

1.      Aquestive failed to join a necessary party and so failed to establish standing. Indivior PLC (formerly known as Reckitt Benckiser Pharmaceuticals, Inc.) is the lead plaintiff in a pending action in this Court asserting that BioDelivery infringes the '167 Patent (hereinafter the "First '167 Patent Action"). See Exh. 1, Complaint, *Reckitt Benckiser Pharmaceuticals, Inc. et al. v. BioDelivery Sciences International, Inc. et al.*, E.D.N.C. No. 5:15-cv-00350-D (originally

1

filed in D.N.J. on Sept. 22, 2014). In the First '167 Patent Action, BioDelivery's BUNAVAIL®
buprenorphine pharmaceutical film products stand accused of infringing the '167 Patent.
Indivior brought the First '167 Patent Action jointly with Aquestive, the named assignee of the
'167 Patent. As a co-plaintiff in the First '167 Patent Action, Aquestive endorsed Indivior's
right to bring an action asserting that buprenorphine pharmaceutical film products infringe the
'167 Patent. Public records indicate that Aquestive granted Indivior the exclusive patent rights
as to buprenorphine products asserted here. Aquestive improperly seeks to enforce the same
patent against other BioDelivery buprenorphine pharmaceutical film products—but without
Indivior. By failing to join Indivior, Aquestive has neglected to join a party with an
incontrovertible right to bring action against buprenorphine pharmaceutical film products based
on the '167 Patent. Aquestive's Complaint should be dismissed for failure to join a necessary
party and for failure to establish standing.

2.     Aquestive also failed to state a claim upon which relief may be granted. Aquestive's
allegations that BioDelivery's BELBUCA® buprenorphine pharmaceutical film products
infringe U.S. Patent No. 8,765,167 (the "'167 Patent") form the sole basis for this action.
Nonetheless, Aquestive failed to meet its burden to plead patent infringement with the requisite
specificity. Except for a general conclusory allegation, the Complaint fails to allege that all of
the elements of the asserted claim are met by the BELBUCA® products. Aquestive simply does
not allege sufficient facts for a reasonable inference to be drawn that the BELBUCA® products
infringe. Aquestive's indirect infringement allegations are built upon the BELBUCA® direct
infringement allegations, and are likewise deficient—adding nothing to support the additional
elements of indirect infringement. Accordingly, Aquestive's Complaint should be dismissed for
failure to meet the pleading standard.

ME1 28572990v.2

## III.    BACKGROUND

### A.    The Parties

Plaintiff Aquestive is a specialty pharmaceutical film company. Non-party Indivior PLC (formerly known as Reckitt Benckiser Pharmaceuticals, Inc.) and its predecessors-at-interest have marketed various forms of buprenorphine pharmaceutical products for over two decades. Aquestive makes, and Indivior markets, the **film** form of the SUBOXONE® buprenorphine products.

Defendant BioDelivery is a specialty pharmaceutical film company that competes in the marketplace for buprenorphine pharmaceutical products. In 2014, the Food and Drug Administration ("FDA") approved a New Drug Application (NDA) for BioDelivery's first buprenorphine pharmaceutical film products, branded BUNAVAIL®. The FDA approved the BUNAVAIL® NDA for the treatment of opioid addiction. The BUNAVAIL® buprenorphine film products compete with the SUBOXONE® buprenorphine film products. In the First '167 Patent Action, now pending in this Court, Indivior and Aquestive alleged that BioDelivery's BUNAVAIL® buprenorphine film products infringe the '167 Patent. *See* Exh. 1, Complaint at ¶¶ 2-3.

In 2015, the FDA approved a NDA for BioDelivery's second buprenorphine pharmaceutical film products, branded BELBUCA®. The BELBUCA® buprenorphine film products contains the same active ingredient as the BUNAVAIL® and the SUBOXONE® film products, but lack the abuse-resistance ingredient used in those products. Accordingly, the FDA approved the BELBUCA® NDA for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. In the Complaint, Aquestive alone alleges that BioDelivery's BELBUCA® buprenorphine film products infringe the '167 Patent.

3

**B.     This Action Is The Latest In A Series Of Patent Infringement Actions Against BioDelivery By Aquestive And Its Business Partner Indivior.**

This litigation represents the latest attempt by Aquestive to gain a competitive advantage over BioDelivery through litigation.  On October 29, 2013, Indivior and Aquestive jointly filed a complaint for patent infringement in the E.D.N.C., alleging that BioDelivery's first buprenorphine pharmaceutical film product BUNAVAIL®—a product that, at the time, had neither received FDA approval nor been marketed by BioDelivery—would, if marketed, infringe the '832 Patent.  (the "First E.D.N.C. Action").  *See* Exh. 2, Complaint, *Reckitt Benckiser Pharmaceuticals, Inc. et al. v. BioDelivery Sciences International, Inc.*, No. 5:13-cv-00760-BO (E.D.N.C. Oct. 29, 2013), at ¶¶ 1, 4.  On May 21, 2014, the court dismissed the First E.D.N.C. Action, concluding that the plaintiffs' claims were premature, and that the plaintiffs had failed to state a Hatch-Waxman claim for patent infringement.  *See* Exh. 3, Order, *Reckitt Benckiser Pharmaceuticals, Inc.et al. v. BioDelivery Sciences International, Inc.*, No. 5:13-cv-00760-BO (E.D.N.C. May 21, 2014) .

Following the dismissal of the First E.D.N.C. Action, during Indivior's investor presentation on July 28, 2014, Indivior's Chief Executive Officer stated in reference to BioDelivery that "of course the minute they launch [the BUNAVAIL® product], we will sue them for patent infringement ... we are going to be aggressive about that and uncompromising." Exh. 4, Complaint, *BioDelivery Sciences International, Inc. v. Reckitt Benckiser Pharmaceuticals, Inc. et al.*, No. 5:14-cv-00529-H (E.D.N.C. Sept. 20, 2014) at ¶ 32.  Accordingly, as BioDelivery finalized its commercial launch of BUNAVAIL®, on September 20, 2014, it filed a declaratory judgment action against both Indivior and Aquestive in the Eastern District of North Carolina (the "Declaratory Judgment Action").  *See id.*  BioDelivery's Declaratory Judgment Action seeks a declaration that BioDelivery does not infringe any valid

4

claim of the '832 Patent, the '080 Patent, or the '378 Patent.[1]  *See id.* at ¶ 1.  On December 23, 2014, the court granted the parties' joint motion to stay pending the outcome of the USPTO's *inter partes* review of the '832 Patent and *inter partes* reexamination of the '080 Patent.  *See* Exh. 5, Order, *BioDelivery Sciences International, Inc. v. Reckitt Benckiser Pharmaceuticals, Inc. (n/k/a Indivior, PLC) et al.*, No. 5:14-cv-00529-H (E.D.N.C. Dec. 23, 2014).

Two days after BioDelivery filed the Declaratory Judgment Action in North Carolina, Indivior and Aquestive jointly filed the First '167 Patent Action in the US District Court for the District of New Jersey against BioDelivery and its contract marketing organization.  The complaint in the First '167 Patent Action alleged that BioDelivery's BUNAVAIL® buprenorphine film products infringe the '167 patent.  *See* Exh. 1 at ¶¶ 1, 3, 24-26.  Recognizing that Aquestive and Indivior were accusing the same product of infringing a patent closely related to the patents-in-suit in the Declaratory Judgment Action, and that the two actions involved nearly the same parties, on July 21, 2015, the New Jersey court granted BioDelivery's motion to transfer the First '167 Patent Action to the US District Court for the Eastern District of North Carolina.  Exh. 6, Order, *Reckitt Benckiser Pharmaceuticals, Inc. et al. v. BioDelivery Sciences International, Inc. et al.*, No. 3:14-cv-05892-MAS-TJB (D.N.J. July 21, 2015), at 11.  On May 6, 2016, the Court granted the parties' joint motion to stay the First '167 Patent Action pending the outcome of the USPTO's *inter partes* review of the '167 Patent.  Exh. 7, Order, *Reckitt Benckiser Pharmaceuticals, Inc. et al. v. BioDelivery Sciences International, Inc. et al.*, No. 5:15-cv-00350-D (E.D.N.C. May 6, 2016).  On October 23, 2018, the parties jointly asked the Court to maintain that stay.  The First '167 Patent Action asserting that a BioDelivery

---

[1] On December 12, 2014, BioDelivery filed a Notice of Partial Voluntary Dismissal Without Prejudice of Count III of its Declaratory Judgment Action complaint which pertains to the '378 Patent.  Thus, the Declaratory Judgment Action no longer asserts any claims based upon the '378 Patent.

buprenorphine film product infringes the '167 Patent, filed jointly by Aquestive and Indivior, remains pending before the Court.

The Court should dismiss the Complaint at issue pursuant to Fed.R.Civ.P. 12(b) for failure to establish constitutional and prudential standing without Indivior and for failure to state a claim upon which relief may be granted. To the extent that this action nonetheless proceeds, it should do so on the same schedule as the First '167 Patent Action.

## IV.    ARGUMENT

### A.    General Standard Of Review On A Motion To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted).

The Supreme Court has held that the *Iqbal/Twombly* pleading standard applies in all civil cases. See *id.* at 684 (pleading standard applies in "all civil actions"); *see also Woods v. City of*

*Greensboro,* 855 F.3d 639, 647 (4th Cir. 2017) ("In *Iqbal,* the Court made clear that this heightened standard applied to all civil actions.").

Moreover, in deciding a motion to dismiss, a court may consider not only the allegations in the complaint, but also documents attached to or specifically referenced in the complaint and matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).

**B.     Aquestive Has Not Adequately Pleaded Patent Law Jurisdiction And Standing To Enforce The '167 Patent.**

**1.     Requirements For Jurisdiction And Standing In A Patent Infringement Action.**

It is well settled that all entities with the right of enforcement must join in a patent infringement suit. *See, e.g.*, *Waterman v. Mackenzie*, 138 U.S. 252 (1891). "The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1) the whole patent...; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States.  A transfer of any of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers." *Id.* at 255.  The presence of all parties with the right of enforcement is necessary "to give jurisdiction under the patent laws." *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 468 (1926); 35 U.S.C. § 281 ("A *patentee* shall have remedy by civil action for infringement of his patent.") (emphasis

7

added); 35 U.S.C. § 100(d) (defining *patentee* to include the entity to whom the patent issued and any "successors in title").

The Federal Circuit has long applied the rule that a patent infringement suit may only be maintained if all entities with an enforcement interest in the patent are joined as plaintiffs. *See, e.g.*, *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed.Cir. 1998) ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit."). One entity having an enforcement interest in a patent may prevent another such entity from enforcing the patent by refusing to join a suit to enforce the patent. *See, e.g.*, *Schering Corp. v. Roussel–UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997) ("[O]ne co-owner has the right to impede the co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."). Absent joinder of all entities with a right to enforce a patent, a single such entity seeking to enforce the patent alone lacks standing. *See, e.g.*, *Isr. Bio–Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007); *Drone Technologies, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed.Cir. 2016) (standing derives from the alleged injury of violation of the entity's exclusionary rights).

2.     **The Complaint Does Not Establish Paten**

3.     **t Jurisdiction Or That Aquestive Has Standing to Enforce The '167 Patent Without Indivior As A Co-Plaintiff**

Here, Aquestive contends that it owns "all rights … and interest to the '167 Patent, including the right to sue and to recover for any current or past infringement of that patent." D.I. 1 at ¶ 18. But in the First '167 Patent Action, now pending before the Court, Aquestive admits that Indivior (f/k/a Reckitt Benckiser Pharmaceuticals, Inc.) is an exclusive licensee of the '167 Patent. *See* Exh. 1 at ¶¶ 15-16; Exh. 8, Patent Owner's 2d Amended Mandatory Notice Information, *BioDelivery Sciences International, Inc. v. Aquestive Rx, LLC*, PTAB Cases

IPR2015-00165, IPR2015-00168, and IPR2015-00169 re: U.S. Patent No. 8.765,167 (Aug. 5, 2015). at p. 1 (explaining that Indivior "is an exclusive licensee under the '167 Patent for Suboxone® sublingual film and other products."). And here, Aquestive admits that it sued BioDelivery for infringement of the '167 Patent jointly with Indivior. *See* D.I. 1 at ¶ 4; *see also* Exh. 1

Contradictory and conclusory statements are not sufficient to satisfy the pleading standard. *See, e.g.*, *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 754 (4th Cir. 2013). Here, Aquestive's contention that is owns all rights to the '167 Patent is not only conclusory, but also contradicted by its own identification of Indivior as an exclusive licensee. If Aquestive were the owner of all rights and interest to the '167 Patent, as it contends here, then Indivior would have no interest in the First '167 Patent Action. Indivior's participation in the First '167 Patent Action demonstrates that Indivior has an interest in the '167 Patent. And Aquestive's endorsement of Indivior's effort to enforce the '167 Patent—by joining Indivior in the First '167 Patent Action—further contradicts Aquestive's contention here that it is the owner of all rights and interest in the '167 Patent. Thus, Aquestive has failed to meet its burden to adequately plead patent jurisdiction and standing.

Indivior's agreement with Aquestive, which was filed with the SEC, confirms that Indivior possesses relevant exclusive rights in the '167 Patent. *See* Exh. 9, Exhibit 4.11 to Indivior PLC's Registration of Securities [Section 12(b)], filed with the SEC in July/August of 2016, downloaded from https://www.sec.gov/Archives/edgar/data/1625297/000110465916135485/a16-14310_2ex4d11.htm. For example, the agreement grants Indivior "a royalty-free worldwide exclusive … license … within the Field under the registered protection …, which shall last for the duration of the registered protection …, to carry out all acts which

9

would otherwise be prohibited due to [Aquestive's] patent protection within the Field." *Id.* at § 15.8; *see also id.* at §§ 15.5, 18.1.4. The agreement further grants Indivior exclusive "rights to sub-license." *Id.* at §§ 15.8, 15.2. Under the agreement, Aquestive retains no right to exclude within Indivior's Field. *See id.* at §§ 15.8, 15.1, 15.3, 15.11. And Indivior's Field includes the subject of this litigation—buprenorphine products. *See id.* at § 15.2 (Aquestive granting Indivior rights to "the Products[] in the Field throughout the Territory"), Schedule Three (defining Indivior's "Products" to include doses with a buprenorphine active ingredient), § 1.1 (defining Indivior's "Field" to include buprenorphine), and § 1.1 (defining Indivior's "Territory" as the world). Thus, Indivior—not Aquestive—holds the exclusive patent rights with respect to the subject of this litigation—buprenorphine products. In other words, Aquestive is asserting exclusive rights granted to Indivior in this action.

"[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sol'ns. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265-67 (Fed. Cir. 2010); *see also Drone Techs.,* 838 F.3d at 1292 (standing derives from the accused infringer's alleged invasion of the plaintiff's exclusionary patent rights). Aquestive failed to meet its burden of showing that it—not Indivior—has the exclusive rights asserted in the '167 Patent. On the contrary, Aquestive lacks constitution standing because it does not hold the exclusive patent rights asserted in this action.

Moreover, the joinder rule safeguards against the possibility that "an accused infringer [would be subject] to a different infringement suit on the same patent." *See STC. UNM v. Intel Corp.*, 754 F.3d 940, 947 (Fed. Cir. 2014). According to the public agreement between Indivior and Aquestive, Indivior has the right to take steps it reasonably considers appropriate in the event

10

it suspects infringement of the '167 Patent.  *See* Exh. 9 at § 15.14.  Because of Indivior's interest in the '167 Patent and involvement in the First '167 Patent Action, allowing this case to proceed in the absence of Indivior would unfairly subject BioDelivery to the possibility of prejudicial inconsistencies arising from two parallel suits asserting the '167 Patent—including as to claim construction, infringement and invalidity.  Even assuming *arguendo* that the pleading standards were satisfied as to patent law jurisdiction and Aquestive's standing, Aquestive should not be allowed to proceed without Indivior as a co-plaintiff as a matter of public policy.  Because Aquestive has failed to join Indivior as a necessary party, despite BioDelivery's two previous motions to dismiss for failure to join Indivior, the Complaint must be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(7) and 19.

### C. Aquestive Has Not Adequately Pleaded Facts To Demonstrate Infringement of The '167 Patent

#### 1. Requirements For Pleading Direct Patent Infringement

Since the abrogation of Rule 84 and Form 18 effective December 2015, compliance with abrogated Form 18 offers no immunity from challenges to the adequacy of pleadings.  *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1377 (Fed. Cir. Sept. 7, 2017).  Instead, the general *Iqbal/Twombly* pleading standard clearly applies to patent infringement pleadings.  *See Ashcroft,* 556 U.S. at 684 (pleading standard applies in "all civil actions").  Decisions on motions to dismiss for failure to state a patent infringement claim are reviewed under the law of the regional circuit.  *See Lifetime Indus., Inc.*, 869 F.3d at 1376.  The Fourth Circuit applies the *Twombly/Iqbal* "heightened standard . . . to all civil actions."  *Woods*, 855 F.3d at 647.

"[T]he failure to meet a single limitation is sufficient to negate infringement of [a patent] claim."  *Laitram Corp v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  Thus, "[c]ourts applying the *Twombly-Iqbal* standard to patent infringement claims have required plaintiffs to set

forth sufficient facts to plausibly allege that the accused product embodies every limitation in a particular asserted claim." *Oil-Dri Corp. of America v. Nestle Purina Petcare Co.*, No. 15-1067, 2017 WL 1197096, *3 (N.D. Ill. Mar. 31, 2017); *see also Continental Circuits LLC v. Intel Corp.*, No. 16-2026, 2017 WL 679116, at *5 (D. Ariz. Feb. 21, 2017) (The *Iqbal* and *Twombly* "pleading standard requires Plaintiff to address every limitation of at least one claim of the each of the [asserted] patents."); *Scripps Res. Inst. v. Illumina, Inc.*, No. 16-661, 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016) ("[T]he Court joins several other courts in holding that in order to properly plead direct infringement under *Twombly* and *Iqbal*, a plaintiff must plausibly allege that a defendant directly infringes each limitation in at least one asserted claim."); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (holding the *Twombly-Iqbal* standard was not met because "[t]here are … no allegations in the Amended Complaint that can form the basis of a reasonable inference that *each claim step* was performed by or should be attributed to Defendants.") (emphasis added); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016).

### 2. Aquestive's Pleadings Concerning Direct Patent Infringement Are Woefully Deficient

Aquestive alleges that BioDelivery (directly) infringes by making, offering to sell, and/or selling BELBUCA® film. D.I. 1 at ¶¶ 2-3, 11, 19-20, 25, 27-28, 33. In other words, Aquestive's allegations that BioDelivery infringes the '167 Patent are all based solely on its activities related to BELBUCA® film. *Id.* Because establishing patent infringement requires activities directed to the "patented invention," 35 U.S.C. § 271(a), Aquestive cannot meet the *Iqbal/Twombly* standard unless its allegations are sufficiently detailed as to BELBUCA® film.

Aquestive identifies only two independent claims of the '167 Patent purportedly infringed by BELBUCA® film: claim 13 and claim 95. *See* D.I. 1 at ¶¶ 2, 4, 5, 28, 32, 36, 37

(each identifying the same list of claims allegedly infringed) and D.I. 1-1 (claims 13 and 95 are the only independent claims among the claims of the '167 Patent asserted in the Complaint). Each of the two asserted independent claims is directed to "[a]n oral film for delivery of a desired amount of an active component." D.I. 1-1 at 41:50-51 and at 46:58-59. Both of the asserted independent claims recite many of the same features.

Aquestive's factual assertions relating to how BELBUCA® film may satisfy elements of the '167 Patent claims are remarkably limited. Aquestive characterizes BELBUCA® as a "buccal film" and "a pharmaceutical drug product." D.I. 1 at ¶¶ 2, 21. Aquestive identifies BELBUCA®'s alleged ingredients and various alleged dosage strengths. *Id*. at ¶¶ 20-23. And finally, Aquestive asserts that "[t]he strength of each BELBUCA® film is dependent on the buprenorphine concentration in the formulation and the surface area of the film." *Id*. at ¶ 22.

However, like asserted independent claim 13, asserted independent claim 95 requires much more. Claim 95 of the '167 Patent recites:

> An oral film for delivery of a desired amount of an active component comprising:
>
> an ingestible, water-soluble polymer matrix comprising a polymer selected from the group consisting of hydroxyethylcellulose, hydroxypropylcellulose and carboxymethyl cellulose and combinations thereof;
>
> at least one anti-tacking agent comprising sodium benzoate;
>
> a substantially uniform distribution of said desired amount of said active component within said polymer matrix, wherein said active component is selected from the group consisting of cosmetic agents, pharmaceutical agents, vitamins, bioactive agents and combinations thereof, said film being formed by a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said active in place within said matrix and maintain said substantially uniform distribution;
>
> wherein said film is self-supporting and the active component is substantially uniformly distributed, whereby said substantially uniform distribution is measured by substantially equally sized individual unit doses which do not vary by more than 10% of said desired amount of said active component.

Aquestive simply ignores most of the elements required by the two asserted independent claims.

What is more, Aquestive does not suggest that the asserted '167 is directed to simple technology. On the contrary, Aquestive contends that "non-uniformity is inherent in conventional film forming techniques." D.I. 1-1 at 2:35-36. Aquestive contends that "[t]he inventors of the '167 [P]atent conceived of pioneering improvements in the making of film … that enable uniform distribution …." D.I. 1 at ¶ 17. Aquestive asserts that the '167 Patent generally relates to films "that contain an active component—such as a drug—that is evenly distributed throughout the film." D.I. 1 at ¶ 16. Claims 13 and 95 each recite active uniformity, in some respect, at least four times. But Aquestive nonetheless presents no assertions from which one might reasonably infer that the BELBUCA® products feature the required active uniformity. Indeed, it is not even clear that Aquestive is alleging that buprenorphine, in particular, has the required uniformity because the asserted claims encompass **non-pharmaceutical** actives, such as cosmetic agents and vitamins. BioDelivery is left without fair notice of the grounds upon which Aquestive rests its infringement allegations.

The Complaint demonstrates that Aquestive made no effort to relate its factual allegations regarding BELBUCA® film to any '167 Patent claim. Aquestive simply fails to present factual allegations from which one might reasonably infer that BELBUCA® film satisfies all the elements of either asserted independent claim, much less any of the asserted dependent claims. The following are representative examples of Aquestive's pleading deficiencies, which are by no means comprehensive of the scope of the problem.

      **a.    Aquestive Has Not Pleaded That BELBUCA® "Film Is Self-Supporting" As Required By The Asserted Claims Of The '167 Patent**

According to Aquestive, "[t]he invention claimed in the '167 Patent is a **self-supporting** oral film …." Exh. 10, Patent Owner's Response to Petition for *Inter Partes* Review of US Patent No. 8,765,167, *BioDelivery Sciences International, Inc. v. MonoSol Rx, LLC*, PTAB

Cases IPR2015-00165, IPR2015-00168, and IPR2015-00169 (Aug. 21, 2015), at 1 (emphasis added). Both asserted independent claims only encompass "film [that] is self-supporting." D.I. 1 at ¶ 17, D.I. 1-1 at 42:3 (claim 13 reciting "wherein said film is self-supporting"). But film is not necessarily self-supporting. According to the '167 Patent, film that requires a separate support to maintain its integrity and structure is not self-supporting. *See id.* at 23:37-39 ("Desirably, the films will also be self-supporting or in other words able to maintain their integrity and structure in the absence of a separate support."). Aquestive presents no factual allegations from which one might reasonably infer that BELBUCA® buprenorphine pharmaceutical film is self-supporting.

> **b.** **Aquestive Has Not Pleaded That BELBUCA® Film Features "A Substantially Uniform Distribution … Of Said Active Component Within Said Polymer Matrix," As Required By The Asserted Claims Of The '167 Patent**

Both asserted independent claims only encompass film that features "a substantially uniform distribution … of said active component within said polymer matrix." *Id.* at ¶ 17; D.I. 1-1 at 41:57-58. The '167 Patent discloses that, after a matrix is cast into a film, active particles may be "placed on" its surface. *Id.* at 11:9-30. When the active component is placed on its surface before drying, a film would not have a substantially uniform distribution of the active component *within* the polymer matrix, as required by the asserted claims.

Aquestive presents no allegations about how the buprenorphine active is part of BELBUCA® film. Moreover, Aquestive presents no facts at all concerning the distribution of the buprenorphine active within the BELBUCA® pharmaceutical film matrix. Indeed, BELBUCA® is described as a "bi-layer" film, thereby suggesting that it may not feature a substantially uniform distribution of its active component within its matrix. D.I. 1-3 at 20:2. Thus, Aquestive presents no factual allegations from which one may reasonably infer that

15

BELBUCA® film features "a substantially uniform distribution … of said active component within said polymer matrix," as required by the asserted claims.

> **c.** **Aquestive Has Not Pleaded That BELBUCA® Film Involves "A Controlled Drying Process Which Rapidly Forms A Viscoelastic Matrix To Lock-In Said Active In Place Within Said Matrix and Maintain Said Substantially Uniform Distribution," As Required By The Asserted Claims Of The '167 Patent**

Aquestive touts its alleged improvements in the film-making process as "set forth in the claims of the '167 patent." D.I. 1 at ¶ 17. Both asserted independent claims encompass only film formed by "a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said active in place within said matrix and maintain said substantially uniform distribution." D.I. 1-1 at 41:62-64; *see also* D.I. 1 at ¶ 17. According to the '167 Patent, during the film-making process, the active component can aggregate, conglomerate, or settle. *See* D.I. 1-1 at 2:21-3:31, 7:11-9:4; *see also* D.I. 1 at ¶ 17.

But Aquestive does not assert that BELBUCA®'s drying process prevents undesired aggregation, conglomeration, or settling. In fact, Aquestive presents no factual assertions at all regarding BELBUCA®'s drying process. Thus, even if one were to improperly assume that, before drying began, the BELBUCA® mixture of ingredients had a substantially uniform distribution of active, Aquestive presents no pleadings from which one may reasonably infer that BELBUCA® buprenorphine film is formed by "a controlled drying process which rapidly forms a viscoelastic matrix to lock-in said active in place within said matrix and maintain said substantially uniform distribution."

> **d.** **Aquestive Has Not Adequately Pleaded That, For BELBUCA® Film, "Substantially Equal Sized Individual Unit Doses … Do Not Vary By More Than 10% Of Said Desired Amount Of Said Active Component," As Required By The Asserted Claims Of The '167 Patent**

16

ME1 28572990v.2

Aquestive contends that its allegedly improved uniformity is "set forth in the claims of the '167 [P]atent." D.I. 1 at ¶ 17. Both asserted independent claims require "substantially equally sized individual unit doses which do not vary by more than 10% of said desired amount of said active component." D.I. 1-1 at 42:5-8 (claim 13 reciting the same requirement for substantially "equal" sized individual unit doses); *see also* D.I. 1 at ¶ 17. Aquestive touts the 10% uniformity requirement as a distinguishing feature of its patented film. For example, in the *inter partes* reviews of the '167 Patent, Aquestive argued the patented film has "a superior uniform distribution of active components demonstrating a non-self-aggregating uniform heterogeneity so as to provide a vehicle with substantially evenly distributed components, including the active components, such that individual unit doses cut therefrom vary no more than +/- 10% from the labeled dosage amount (desired amount) for the particular individual unit doses for the drug." Exh. 10 at 14. But Aquestive does not assert that substantially equally-sized individual unit doses of BELBUCA® do not vary by more than 10% of said desired amount of said active component.

Applying Aquestive's own paradigm, Aquestive's assertion that "[t]he strength of each BELBUCA film is dependent on the buprenorphine concentration in the formulation and the surface area of the film" (D.I. 1 at ¶ 22) does not satisfy the foregoing uniformity requirement. During the '167 IPRs, Aquestive argued that a thickness measurement is necessary to determinations of both "size" and "desired amount." *See* Ex. 11, Transcript of Oral Hearing for *Inter Partes* Review of US Patent No. 8,765,167, *BioDelivery Sciences International, Inc. v. MonoSol Rx, LLC*, PTAB Cases IPR2015-00165, IPR2015-00168, and IPR2015-00169 (March 22, 2016), at 51:13-52:9. Thus, applying Aquestive's own paradigm, it cannot reasonably be inferred that "substantially equally sized individual unit doses … do not vary by more than 10%

17

of said desired amount of said active component" from the assertion that the buprenorphine strength of each BELBUCA® film is a function of concentration and surface area.

Again, Aquestive does not assert that the buprenorphine in substantially equal-sized individual unit doses of BELBUCA® has any particular relationship to a desired amount of buprenorphine. Aquestive simply failed to present any factual allegations from which one may infer that substantially equal-sized individual unit doses of BELBUCA satisfy the requirement, in both asserted independent claims, that active not vary by more than 10% of the desired amount.

While the foregoing is merely exemplary, the Complaint fundamentally fails to present the requisite degree of factual specificity to allow one to draw the inference that BELBUCA® satisfies all the elements required by each asserted independent claim. Aquestive has failed to allege any facts that would make its infringement allegation plausible. *See Ashcroft,* 556 U.S. at 679 (requiring pleadings to present a plausible claim for relief to survive a motion to dismiss). In other words, Aquestive fails to satisfy the pleading standard as to alleged infringement by BELBUCA®, and the Court should dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

> **3. Aquestive's Indirect Infringement Pleadings Are Based Upon The Direct Infringement Pleadings, and Exacerbate the Underlying Deficiencies**

The Complaint's indirect infringement allegations compound and exacerbate the underlying deficiencies in its direct infringement allegations.

> **a. Aquestive Has Not Adequately Pleaded Induced Infringement Under 35 U.S.C. § 271(b)**

A claim for induced infringement pursuant to 35 U.S.C. § 271(b) must contain facts plausibly showing that the defendant knew of the patent-in-suit, specifically intended that a third party infringe the patent-in-suit, and knew that the third party's acts constituted infringement.

18

ME1 28572990v.2

Case 5:18-cv-00514-D    Document 80    Filed 11/20/18    Page 24 of 29

*See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). Accordingly, inducement requires evidence supporting a specific intent to encourage another's infringement, not merely that the inducer had knowledge of the direct infringer's activities. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006). "To survive a Rule 12(b)(6) motion to dismiss . . . a complaint alleging induced infringement must contain a plausible allegation of direct infringement as well as 'facts plausibly showing that [the defendants] specifically intended their customers to infringe the ... patent and knew that the customer's acts constituted infringement." *Artrip v. Ball Corp.*, No. 1:14-14, 2017 WL 3669518, at *7 (W.D. Va. Aug. 24, 2017) (quoting *In re Bill of Lading*, 681 F.3d at 1339).

The sole mention of induced infringement in the Complaint reads:

> BDSI has induced the direct infringement of the '167 patent in violation of at least 35 U.S.C. § 271(b) by, among other things, knowingly and with intent, actively encouraging others to make, use, sell, and/or offer for sale BELBUCA in a manner that constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claims 13, …, 95, … of the '167 patent. This inducing activity occurred at least since the time that BDSI received actual notice of the '167 patent.

D.I. 1 at ¶ 36. The Complaint's allegation of induced infringement is a mere legal conclusion cast as factual allegations, which does not satisfy the *Iqbal/Twombly* pleading standard. *See Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Complaint lacks any factual assertions that may elevate the allegation of induced infringement from hypothetical to plausible. For example, the Complaint fails to identify any of the "others" who allegedly directly infringe. Similarly, the Complaint fails to identify how BioDelivery allegedly "actively encourage[ed]" others to directly infringe. Rather than address the deficiencies in the direct infringement allegations against the BELBUCA® pharmaceutical film products, the Complaint's inducement allegation serves only to compound and intensify the underlying deficiencies. The Complaint simply does not contain sufficient factual assertions to

19

constitute a viable allegation of induced infringement. *See Artrip,* 2017 WL 3669518, at \*7 (dismissing "bare-bones allegations" of induced infringement); *Intellectual Ventures I LLC v. Bank of Am., Corp.,* No. 3:13-358, 2014 WL 868713, at \*2 (W.D.N.C. Mar. 5, 2014) (dismissing induced infringement claims where plaintiff failed to "allege[] facts that plausibly demonstrated that Defendants . . . *knew* that the customers' acts constituted infringement.") (emphasis in original).

The Complaint's incomplete allegations regarding the elements of induced infringement, notably lacking in supporting facts, are wholly insufficient to state a plausible claim for induced infringement under 35 U.S.C. § 271(b). Therefore, BioDelivery respectfully requests that the Court dismiss the allegations of induced infringement with prejudice.

> **b.      Aquestive Has Not Adequately Pleaded Contributory Infringement Under 35 U.S.C. § 271(c)**

Contributory infringement requires "a component of a patented machine, manufacture, combination or composition, … constituting a material part of the invention, [that is] not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). To state a claim for contributory infringement, a plaintiff must plead facts that allow a plausible inference that the component sold or offered for sale is material to practicing the invention and has no substantial noninfringing uses, that defendants knew the accused component is especially made or especially adapted to infringe the asserted patents, and that a third party used the accused component to directly infringe the asserted patents. *See In re Bill of Lading*, 681 F.3d at 1337; *Artrip*, 2017 WL 3669518, at \*7.

Here again, Aquestive fails to meet the pleading burden. The only allegations of contributory infringement are:

> BDSI, in violation of 35 U.S.C. § 271(c), has contributed to the direct
> infringement, either literally or under the doctrine of equivalents, of at least

claims 13, …, 95, … of the '167 patent by having BELBUCA made, used, sold, and/or offered for sale by others in the United States, knowing that such products infringe and are not staple articles or commodities in commerce suitable for a substantial noninfringing use.

D.I. 1 at ¶ 37. While the Complaint references BELBUCA, it fails to identify an accused component of BELBUCA that could potentially satisfy the statutory requirements. The Complaint simply does not pinpoint any component of a film, embodied within by either of the asserted independent claims of the '167 Patent, that constitutes a material part of the invention.

The Complaint references "products" apparently with respect to BELBUCA. But with no accused component, the Complaint necessarily fails to allege that any accused component is not a staple article or commodity of commerce suitable for substantial noninfringing use. With no alleged accused component, the Complaint necessarily fails to assert that BioDelivery knew the accused component is especially made or especially adapted to infringe the '167 Patent. Similarly, with no alleged accused component, the Complaint necessarily fails to contend that any third party used an accused component to directly infringe the '167 Patent.

The Complaint simply does not allege all elements of a claim for contributory infringement under 35 U.S.C. § 271(c). The allegations of contributory infringement likewise should be dismissed because the Complaint fails to satisfy the *Twombly-Iqbal* standard.

21

## V. CONCLUSION

For the reasons detailed above, BioDelivery respectfully requests that the Court dismiss the Complaint with prejudice because (1) Aquestive failed to establish patent law jurisdiction and standing to enforce the '167 Patent with respect to a buprenorphine product without Indivior; and (2) Aquestive failed to meet its burden to adequately plead facts in support of its allegations that BELBUCA® buprenorphine film products, directly or indirectly, infringe any claim of the '167 Patent.

OF COUNSEL:

Kia L. Freeman
Wyley S. Proctor
Thomas F. Foley
MCCARTER & ENGLISH LLP
265 Franklin Street
Boston, Massachusetts 02110
Telephone: (617) 449-6500
kfreeman@mccarter.com
wproctor@mccarter.com
tfoley@mccarter.com

/s/ Lynne Borchers
Lynne A. Borchers
NC State Bar No. 32386
Peter D. Siddoway
NC State Bar No. 45647
SAGE PATENT GROUP, PLLC
4120 Main at North Hills St., Suite 230
Raleigh, North Carolina 27609
Telephone: (984) 219-3358
Facsimile: (984) 538-0416
Email: lborchers@sagepat.com
Email: psiddoway@sagepat.com

*Attorneys for Defendant*
*BioDelivery Sciences International, Inc.*

22

ME1 28572990v.2

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2018, I electronically filed the foregoing Defendant's Memorandum in Support of Its Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the registered participants as identified on the CM/ECF docket.

/s/ Lynne A. Borchers
Lynne A. Borchers
NC State Bar No. 32386
SAGE PATENT GROUP, PLLC
4120 Main at North Hills St., Suite 230
Raleigh, North Carolina 27609
Telephone: (984) 219-3358
Facsimile: (984) 538-0416
Email: lborchers@sagepat.com

23