# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

AQUESTIVE THERAPEUTICS, INC.,
f/k/a MONOSOL RX, LLC,

                Plaintiff,

    v.

BIODELIVERY SCIENCES
INTERNATIONAL, INC.,

                Defendant.

Civil Action File No.: 5:18-cv-00514-D

## AQUESTIVE THERAPUETICS, INC.'S ANSWERING BRIEF
## IN OPPOSITION TO BDSI'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 2

II.  LEGAL STANDARDS ............................................................................................... 3

   A.  Standing And Joinder............................................................................................ 3

   B.  Sufficiency Of The Pleadings .............................................................................. 5

III. ARGUMENT ............................................................................................................... 6

   A.  Aquestive Has Standing To Sue BDSI For Its Infringing Acts ........................... 6

      1.  Aquestive Is The Only Necessary Plaintiff In This Action ............................ 7

      2.  Indivior Is Not A Necessary Party Under The Applicable Case Law ............ 8

   B.  Aquestive's Complaint Sufficiently Pleads Patent Infringement ...................... 11

      1.  There Is No Authority For BDSI's Purported Pleading Standard ............... 12

      2.  The Complaint Pleads Patent Infringement With Sufficient Particularity.... 14

      3.  BDSI Cannot Shield Itself By Operating In Secrecy.................................... 16

      4.  The Complaint Pleads Indirect Infringement With Sufficient Particularity ... 21

   C.  BDSI's Ultimate Request for Relief is Improper................................................. 22

IV.  CONCLUSION.......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Diamedix Corp.*,
  47 F.3d 1128 (Fed. Cir. 1995)................................................................................3, 4

*Alfred E. Mann Found. for Sci. Res. v. Cochlear Corp.*,
  604 F.3d 1354 (Fed. Cir. 2010)........................................................................3, 4, 6, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................... *passim*

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
  434 F.3d 1336 (Fed. Cir. 2006)................................................................................6

*Audio MPEG, Inc. v. HP Inc.*,
  No. 2:15-cv-00073-HCM-RJK, 2016 WL 7010947 (E.D. Va. June 29, 2016).....................21

*Avago Tech. General IP v. Asustek Computer Inc.*,
  Civil Action No. 15-4525, 2016 WL 1623920 (N.D. Cal. Apr. 25, 2016)............................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................... *passim*

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)........................................................................6, 12

*Catanzaro v. Int'l Tel. and Tel. Corp.*,
  378 F. Supp. 203 (D. Del. 1974)................................................................................9

*Conair Corp. v. Jarden Corp.*,
  2014 WL 3955172 (S.D.N.Y. Aug. 12, 2014)........................................................................22

*Conbraco Indus., Inc. v. Mitsubishi Shindoh Co.*,
  Civil Action No. 3:14-CV-00368-RJC-DSC, 2015 WL 3506487 (W.D.N.C.
  Jan. 30, 2015)................................................................................5

*Cornell Univ. v. Illumina, Inc.*,
  No. 10-433, 2014 WL 12601516 (D. Del. Sept. 29, 2014)........................................................4

*DermaFocus LLC v. Ulthera, Inc.*,
  201 F. Supp. 3d 465 (D. Del. Aug. 11, 2016)............................................................... *passim*

*Diamond Coating Tech., LLC v. Hyundai Motor Am.*,
  823 F.3d 615 (Fed. Cir. 2016)................................................................................4

- ii -

*Drone Tech., Inc. v. Parrot S.A.*,
838 F.3d 1283 (Fed. Cir. 2016)....................................................................................10, 11

*E-Z Bowz, L.L.C. v. Prof'l Prod. Res. Co.*,
Civil Action No. 00-8670 (LTS) (GWG), 2003 U.S. Dist. LEXIS 15257
(S.D.N.Y. Sept. 5, 2003)............................................................................................9

*Ethicon, Inc. v. United States Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)................................................................................10

*Genetic Veterinary Sciences, Inc. v. LABOklin GmbH & Co.*,
Civil Action No. 2:17cv108, 2017 WL 4638590 (E.D. Va. Oct. 16, 2017) .............................3

*Hall v. Burney*,
454 F. App'x 149 (4th Cir. 2011) ..............................................................................22

*Howes v. Med. Components, Inc.*,
698 F. Supp. 574 (E.D. Pa. 1988) ..............................................................................9

*Incom Corp. v. The Walt Disney Co.*,
Civil Action No. 15-3011 (PSG), 2016 U.S. Dist. LEXIS 71319 (C.D. Cal.
Feb. 4, 2016) ............................................................................................................15

*Independent Wireless Telegraph Co. v. Radio Corp. of America*,
269 U.S. 459 (1926).................................................................................................9

*Israel Bio-Eng'g Project v. Amgen Inc.*,
475 F.3d 1256 (Fed. Cir. 2007).................................................................................10

*K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*,
714 F3d. 1277 (Fed. Cir. 2013)..............................................................12, 14, 17, 20

*Laber v. Harvey*,
438 F.3d 404, 426 (4th Cir. 2006) ............................................................................23

*Lifetime Industries, Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)................................................................................12

*Lujan v. Chowan Univ.*,
No. 2:17-CV-57-FL, 2018 WL 3763121 (E.D.N.C. Aug. 8, 2018)........................................22

*Mylan Labs., Inc. v. Matkari*,
7 F.3d 1130 (4th Cir.1993) ......................................................................................5

*O'Neal v. Harrison*,
No. 5:14-CV-198-FL, 2015 WL 1084321 (E.D.N.C. March 11, 2015) ...................................6

- iii -

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
    390 U.S. 102 (1968) ........................................................................................................9

*Rogers v. Jefferson-Pilot Life Ins. Co.*,
    883 F.2d 324 (4th Cir. 1997) ......................................................................................5

*S. Research Inst. v. Abon Pharms. LLC*,
    No. 12-04709, 2014 WL 413560 (D.N.J. Feb. 4, 2014) ..........................................4

*Schering Corp. v. Roussel-UCLAF S.A.*,
    104 F.3d 341 (Fed. Cir. 1997) ..................................................................................10

*Teets v. Chromalloy Gas Turbine Corp.*,
    83 F.3d 403 (Fed. Cir. 1996) ....................................................................................9

*Uniloc USA Inc. v. Avaya Inc.*,
    Civil Action No. 15-1168 (JRG), 2016 U.S. Dist. LEXIS 181826 (E.D. Tex.
    May 13, 2016) ..........................................................................................................15

*Unique Coupons, Inc. v. Northfield Corp.*,
    12 F. App'x 928 (Fed. Cir. 2001) ............................................................................4

*Waterman v. Mackenzie*,
    138 U.S. 252 (1891) ..................................................................................................9

*Zimmer Surgical, Inc. v. Sryker Corp.*,
    Civil Action No. 16-1679-RGA-MPT, 2017 WL 1296026 (D. Del. Apr. 6,
    2017) ..................................................................................................................13, 15

**Other Authorities**

Federal Rule of Civil Procedure 15(a) ..............................................................................22

Federal Rule of Civil Procedure 19 ............................................................................4, 9

Federal Rules of Civil Procedure Rule 84 ........................................................................14

- iv -

Plaintiff Aquestive Therapeutics, Inc., formerly known as MonoSol Rx, LLC ("Aquestive") respectfully requests that the Court deny Biodelivery Sciences International, Inc.'s ("BDSI") Motion to Dismiss (D.I. 79) ("Motion").

The parties to this litigation are no strangers to one another. In particular, the parties have been involved in several district court proceedings, as well as disputes before the USPTO's Patent Trial and Appeal Board. Despite BDSI's attempts to conflate other litigation with this case, those other matters bear little, if any, relevance to this case. In each of these proceedings and disputes, however, BDSI's strategy is the same: to avoid the merits and to focus on procedural fights. BDSI should finally be made to face the consequences here of launching its infringing BELBUCA product. This case, in particular, has suffered from BDSI's years of delay tactics. Aquestive filed its Complaint nearly two years ago in the District of New Jersey and the case has been pending without any development—let alone resolution—of Aquestive's patent infringement claims.

BDSI has thus far avoided the merits of those infringement claims by repeatedly filing procedural motions, including the instant motion, which is the ***third*** time that BDSI has sought dismissal of Aquestive's Complaint. Aquestive's Complaint, however, which it filed in January 2017, remains unchanged. The first time BDSI filed its motion to dismiss, the case was transferred to the District of Delaware by agreement of the parties before the court could rule on it. Once the case was transferred, BDSI again filed its motion to dismiss, together with a motion to transfer to this Court. The Delaware court granted the motion to transfer and denied the motion to dismiss as moot. Once transferred, BDSI again filed its motion to dismiss, and—consistent with its efforts to delay a resolution of the case on its merits—it also filed a motion to

stay (D.I. 83).[1]  Now that the case has landed in this Court, the time has come for BDSI's motion to be rejected on the merits, for BDSI to answer Aquestive's two year old Complaint, and for the case to proceed.

## I.    INTRODUCTION

Some context is helpful to clarify the record that BDSI's motion seeks to confuse. Aquestive is the owner of U.S. Patent No. 8,765,167 ("the '167 patent").  BDSI markets and sells its BELBUCA product, which infringes the '167 patent.  Accordingly, Aquestive's Complaint asserts that BDSI's BELBUCA product infringes a specific set of the '167 patent claims and describes how the product infringes those claims.  The Complaint also alleges that Aquestive has granted a license on certain of the '167 patent rights, but that Aquestive has "the right to sue and to recover for any current or past infringement of that patent."  D.I. 1 ("Compl.") at ¶ 18.

BDSI's Motion seeks to conflate this case with extraneous litigation, irrelevant facts, and supposition.  Further, BDSI turns the law and the standards on their heads, and asserts two untenable arguments: (1) that Aquestive, the patent owner, does not have the right to sue for infringement of its '167 patent and (2) that the Complaint fails to state a claim upon which relief may be granted.  BDSI is wrong on both points.

First, Aquestive is not required to join any party to bring the instant lawsuit.  It is true that Indivior PLC (f/k/a Reckitt Benckiser Pharmaceuticals, Inc.) ("Indivior") and Aquestive have referred to Indivior as an exclusive licensee under certain of Aquestive's patents, and that Aquestive and Indivior previously brought a separate action against BDSI that is also pending in this Court.  But, BDSI gets the facts backwards and, as a result, misapprehends which party is

_____

[1] Aquestive also opposes BDSI's motion to stay, and will file its opposition on January 7, 2019. *See* Dec. 6, 2018 Text Order.

actually necessary in the case at bar.  Federal Circuit precedent confirms that patent owners situated similarly to Aquestive have the right to maintain a patent infringement action in their own right.  Accordingly, the Motion should be denied because Aquestive is the only necessary plaintiff in this case.

Second, BDSI misapprehends the pleading standard.  BDSI would have this Court believe that a complaint must prove infringement rather than provide a plausible claim for relief.  Indeed, the *Iqbal* and *Twombly* standard does not require a probability of success; it merely requires that a plausible claim for relief be pleaded.  Aquestive's Complaint identifies the specific asserted claims and describes the accused products with particularity as required under the pleading standard.  Courts regularly deny motions to dismiss complaints that provide far less specificity.  In short, the Complaint is well pleaded, and BDSI's Motion should be summarily denied in its entirety.

## II.    LEGAL STANDARDS

### A.  <u>Standing And Joinder</u>

Patent holders have standing to enforce their patents and lose that right only if the patent holder "grants an exclusive license to its patent under such terms that the license is tantamount to an assignment of the patent to the exclusive licensee."  *Alfred E. Mann Found. for Sci. Res. v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010).  A patent owner only loses their right to sue if the license transfers "all substantial rights."  *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995).  "An important consideration in assessing whether the patentee has transferred all substantial rights is determining whether the licensee has the right to enforce the patent and whether the patentee divested itself of that right."  *Genetic Veterinary Sciences, Inc. v. LABOklin GmbH & Co.*, Civil Action No. 2:17cv108, 2017 WL 4638590, at *2 (E.D. Va. Oct. 16, 2017) (citing *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1342 (Fed.

Cir. 2011)). For example, where an exclusive license agreement is so encompassing that it could be considered a "virtual assignment" of the patent, the exclusive licensee may be a necessary party. *Alfred E. Mann*, 604 F.3d at 1363. Conversely, where an exclusive license does not vest all rights in the licensee, such as with "field of use" licenses, the patent owner has the right to sue alleged infringers. *See S. Research Inst. v. Abon Pharms. LLC*, No. 12-04709, 2014 WL 413560, at *4 (D.N.J. Feb. 4, 2014) ("field of use licenses do not constitute a transfer of all substantial rights in the patent"); *see also*, *e.g.*, *Abbott Labs. v. Diamedix Corp.*, 47 F.3d at 1132. Patent owners "retain standing to sue when they transfer less than all substantial patent rights in a transfer." *Cornell Univ. v. Illumina, Inc.*, No. 10-433, 2014 WL 12601516, at *6 (D. Del. Sept. 29, 2014).

"Agreements transferring patent rights occur by assignment or license. 'An assignment of patent rights operates to transfer title to the patent, while a license leaves title in the patent owner' and transfers something less than full title and rights." *Diamond Coating Tech., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016) (quoting *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1116 (Fed. Cir. 1996)).

Federal Rule of Civil Procedure 19 sets forth which parties must be joined to a federal action. Specifically, a person must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(i) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer." *Unique Coupons, Inc. v. Northfield Corp.*, 12 F. App'x 928, 934 (Fed. Cir. 2001) (quoting *Abbott Labs.*,

47 F.3d at 1132-33).

**B. Sufficiency Of The Pleadings**

A court's analysis of a motion to dismiss "is a context-specific task requiring the court 'to draw on its judicial experience and common sense.'" *Conbraco Indus., Inc. v. Mitsubishi Shindoh Co.*, Civil Action No. 3:14-CV-00368-RJC-DSC, 2015 WL 3506487, at *2 (W.D.N.C. Jan. 30, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In considering a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Under this standard, a motion to dismiss "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Id.* (citing *De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir.1991)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need merely "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Indeed, the Fourth Circuit has emphasized that "a rule 12(b)(6) motion should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1997).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. When determining the sufficiency of a complaint, courts in the Fourth Circuit[2] follow the two-step process articulated in *Iqbal*:

---

[2] On appeal, the Federal Circuit reviews a district court's dismissal for failure to state a claim

First, the court must identify the allegations in the complaint that are not

entitled to the assumption of truth because they are conclusory in nature or

nothing more than a formulaic recitation of the elements of a claim. *Id.* at 679.

Then, taking the remaining factual allegations as true, the court must determine

whether the complaint "plausibly suggest[s] an entitlement to relief." *Id.* If, after

conducting this two-part analysis, "the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.*

*O'Neal v. Harrison*, No. 5:14-CV-198-FL, 2015 WL 1084321,at *5 (E.D.N.C. March 11, 2015).

## III.  ARGUMENT

### A.  **Aquestive Has Standing To Sue BDSI For Its Infringing Acts**

Aquestive is entitled to maintain the instant lawsuit without joining any other party.

Where a patent owner transfers less than all substantial rights in a patent to an exclusive licensee,

the patent owner may bring an action in its own right.  *See Alfred E. Mann*, 604 F.3d at 1359-363

(holding patent owner has standing where exclusive license includes a right of first refusal and

therefore is "not a virtual assignment"); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d

1336, 1343 (Fed. Cir. 2006) (holding patent owner "entitled to sue" where exclusive license

included time limitation).  The agreement between Aquestive and Indivior ("Indivior

Agreement") establishes that Aquestive has not transferred all substantial rights because, for

example, the licensed rights relate only to a defined Field and limit Indivior's rights only to use

and sell in that Field.  *See* Mot., Ex. 9 at §§ 1.1, 15.2.  Further, the Indivior Agreement states

---

under the law of the regional circuit.  *See, e.g.*, *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

that, with notice to the other, either party can take steps it considers reasonably appropriate to enforce a subject patent against an infringer. *Id.* at § 15.14. Here, that is precisely what Aquestive has done and has properly brought this infringement action against BDSI.

### 1. Aquestive Is The Only Necessary Plaintiff In This Action

It is true that Indivior is Aquestive's licensee, and that Aquestive has referred to the Indivior Agreement as an exclusive license. It is also true that Indivior joined with Aquestive to bring an action against BDSI that is pending in this Court related to BDSI's BUNAVAIL product, which directly competes with Indivior's Suboxone Film.[3] However, BDSI's argument misapprehends which party is necessary in this case. Aquestive is a necessary party in the BUNAVAIL litigation because it is the patent owner, but Indivior is not a necessary party in this BELBUCA litigation.

BDSI's entire argument that Indivior is a necessary party hinges on two inapposite facts: (1) that Indivior is an exclusive licensee of the '167 patent; and (2) that "Aquestive admits that it sued [BDSI] for infringement of the '167 Patent jointly with Indivior." Mot. at 9. But BDSI fails to point to any facts—because there are none—that present a scenario in which Aquestive is required to join Indivior as a plaintiff in this case.

Aquestive has alleged that Indivior is an exclusive licensee, not that Indivior has sole exclusive rights under the parties' agreement as to any and all fields of use for the patent. Indeed, the asserted claims of the patent are not restricted to a particular active ingredient or to a

---

[3] BDSI's products (BELBUCA and BUNAVAIL) are different, not substitutable, and indicated for different conditions. Unlike BUNAVAIL, which is a dual-active (buprenorphine and naloxone) film indicated for opioid dependence, BELBUCA is a single active (buprenorphine alone) product indicated solely for pain management.

pharmaceutical film for treating a particular condition. Further, a licensee for a particular field of use is not a necessary party where the asserted claims are not limited to that field of use, whether the field is defined in relation to the active ingredients, the treatment objectives, or both. Similarly, if a license allows the licensing party to pursue litigation on its own, then the licensee, by definition, is not a necessary party. That is precisely the scenario that exists under the Indivior Agreement because Aquestive, as the licensing party, has the right to bring suits enforcing the '167 patent on its own, where, as here, Indivior has not elected to participate in the case. *See* Mot., Ex. 9 at § 15.14. BDSI has not provided any evidence that the license confers on Indivior the sole and exclusive right to bring a suit for infringement of the '167 patent, nor can any of Aquestive's allegations be reasonably interpreted in that manner. To the contrary, BDSI's argument that Aquestive is a co-plaintiff in the Indivior case suggests, if anything, that Aquestive, as the patent owner, is the necessary party in that <u>other</u> case.

BDSI's arguments are similar to those raised in *Alfred E. Mann*, *supra*, and rejected by the Federal Circuit. The district court granted defendant's motion to dismiss for failure to join an exclusive licensee, but the Federal Circuit reversed and remanded, finding that the patent owner did not grant the exclusive licensee a "virtual assignment." The Federal Circuit explained that where "the exclusive licensee had the right of first refusal in suing alleged infringers, but if the licensee declined to so do, the licensor had the right to prosecute its own infringement action." *Alfred E. Mann*, 604 F.3d at 1363 (internal quotations omitted).

Because Aquestive is the only necessary plaintiff in this case, the Motion to Dismiss should be denied.

### 2. Indivior Is Not A Necessary Party Under The Applicable Case Law

BDSI's Motion should also be denied because BDSI relies on inapposite—and even superseded—case law. In particular, although BDSI cites several cases for the proposition that

all necessary parties must be present, BDSI fails to cite any case that would support its position that Indivior is in fact a necessary party.  *See* D.I. 80 (BDSI's Opening Brief, "Mot.") at 7-8.

For example, at the outset of its argument, BDSI cites *Waterman v. Mackenzie*, 138 U.S. 252 (1891), for the allegedly "well settled" principle that an exclusive licensee must join the patent owner in infringement suits.  Mot. at 7.  But that case has been superseded by the introduction of Fed R. Civ. P. 19 and the 1966 amendments to the rule.[4]  BDSI also relies on *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459 (1926).  Mot. at 7. However, contrary to BDSI's assertion, *Independent Wireless* does not stand for the proposition that a licensee is a necessary party.  First, the Supreme Court in *Independent Wireless* found that a patent owner or the owner's assignee can maintain an action for patent infringement but that a licensee alone cannot.  Second, like *Waterman*, much of the *Independent Wireless* opinion is no longer valid in light of amendments to Rule 19(a).[5]

The other cases cited in BDSI's Motion regarding standing issues each concern owners and co-owners.  In patent law, similar to the law of real property, a patent can be owned and it can be licensed.  The named inventors are the presumptive owners, and they can assign their

---

[4] *See, e.g.*, *E-Z Bowz, L.L.C. v. Prof'l Prod. Res. Co.*, Civil Action No. 00-8670 (LTS) (GWG), 2003 U.S. Dist. LEXIS 15257, at *10-13 (S.D.N.Y. Sept. 5, 2003) ("courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of a patent co-owner") (internal quotations omitted); *see also, e.g., Howes v. Med. Components, Inc.*, 698 F. Supp. 574, 576 (E.D. Pa. 1988) ("the adoption of the 1966 amendments to Rule 19 'makes inappropriate any contention that patent co-owners are per se indispensable in infringement suits'") (quoting *Catanzaro v. Int'l Tel. and Tel. Corp.*, 378 F. Supp. 203, 205 (D. Del. 1974)).

[5] *See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968); *Catanzaro*, 378 F. Supp. at 208 (finding *Independent Wireless* "unnecessary and perhaps inappropriate in light of the [subsequent amendments to] Rule 19").

ownership interest to others. *See, e.g.*, *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 406 (Fed. Cir. 1996). Owners and assignees can license their ownership rights to their patents in whole or in part. BDSI's citations overlook these fundamental aspects of ownership and licensing. For example, BDSI either misapprehends or mischaracterizes the holding in *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998). *See* Mot. at 8. *Ethicon* concerned two co-inventors – *i.e.*, the original co-owners – of the patent-in-suit. One of the co-inventors (Yoon) granted a license to the plaintiff (Ethicon), and the other co-inventor (Choi) granted his own separate patent license to the defendant (US Surgical). *See, e.g.*, *Ethicon*, 135 F.3d at 1459. That second co-owner, Choi, refused to join the plaintiff in an infringement action, and the court considered whether Choi was required to be joined. *Id.* at 1466-67. The instant case does not involve co-owners of the '167 patent because Aquestive is the sole owner of the patent-in-suit. Accordingly, *Ethicon* is wholly inapposite to this case.

Although BDSI also relies on *Schering Corp. v. Roussel-UCLAF S.A.*, 104 F.3d 341, 345 (Fed. Cir. 1997), that case related to patent co-inventors and co-owners, not a patent owner and its licensee. BDSI even quotes the operative language of *Schering* in its Motion: "[O]ne *co-owner* has the right to impede the *co-owner*'s ability to sue infringers by refusing to voluntarily join in such a suit." Mot. at 8 (emphasis added). Because Aquestive is the sole owner of the '167 patent, *Schering*'s language regarding the rights of co-owners is inapplicable here.

BDSI next cites two cases, *Israel Bio-Engineering*[6] and *Drone Tech.*,[7] for the alleged proposition that a party with a right to enforce a patent lacks standing where others with rights to enforce the patent are absent. Mot. at 8. However, the relevant party in *Israel Bio-Engineering*

_____

[6] *Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007).
[7] *Drone Tech., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016).

was an assignee that refused to join in litigation. Assignees are owners, and like all co-owners of a patent, each has a "pro rata undivided ownership interest" in the patent. *Israel Bio-Engineering*, 475 F.3d at 1264 (quoting *Ethicon*, 135 F.3d at 1460). Accordingly, the Federal Circuit held that the plaintiff lacked standing without a complete ownership interest or the voluntary joinder of the refusing assignee. *Id.* at 1268. Like the cases discussed above, *Israel Bio-Engineering* has little to no relevance to Aquestive's case against BDSI.

Lastly, in the *Drone Tech.* case, the Federal Circuit affirmed the district court's denial of a motion to dismiss where the sole named inventor of the patent-in-suit assigned her rights in the patent to the plaintiff. *Drone Tech.*, 838 F.3d at 1290. The defendant argued that an unnamed person was in fact a co-inventor who had an ownership interest in the patent. *Id.* at 1290-91. The central issue in *Drone Tech.* was whether the alleged unnamed inventor was required to be joined. The Federal Circuit held that the sole named inventor enjoyed a presumption of being correctly named as the sole inventor, and, therefore, the plaintiff had standing to maintain the lawsuit unless and until the defendant could prove that the inventor was not a sole inventor. *Id.* at 1292-93. The court also noted that the issue of "standing can be raised at any time" during litigation. *Id.* at 1293.

In this case, unlike any of BDSI's cited cases, Aquestive is the sole owner of the asserted patent; there are no co-owners. Indivior is a licensee, not a co-owner. None of the case law in BDSI's motion requires, or even suggests, that Indivior must be joined in this case. Aquestive has the right to bring this action, including pursuant to the Indivior Agreement, as discussed above, and has properly done so on its own behalf.

## B. **Aquestive's Complaint Sufficiently Pleads Patent Infringement**

Aquestive's Complaint alleges patent infringement by BDSI with sufficient particularity. Contrary to BDSI's contention, the Complaint identifies the specific asserted claims and

describes the accused products with particularity. The Complaint alleges that BELBUCA is infringing certain claims of the '167 patent and that such infringement has caused and will continue to cause injury to Aquestive.

BDSI argues that Aquestive has not established that BELBUCA meets four claim limitations. This argument would improperly require Aquestive to serve what amounts to infringement contentions in its Complaint, which would necessarily implicate claim construction and expert testimony. BDSI's positions should be rejected.

### 1. There Is No Authority For BDSI's Purported Pleading Standard

BDSI points to numerous cases from around the United States that have required a plaintiff to allege that the accused product embodies every element from at least one claim in a well-pleaded complaint. Mot. at 11-12. Aquestive's Complaint does that with the allegations that BDSI infringes each and every element of claim 95 of the '167 patent, and further analyzes the claim in light of BELBUCA. Nevertheless, BDSI demands that Aquestive's Complaint *prove* infringement, without pointing to any case holding that the *Iqbal*/*Twombly* standard requires such element-by-element proof of infringement at the pleading stage.

On the contrary, there are many cases that support the sufficiency of Aquestive's Complaint, and the Federal Circuit has repeatedly rejected the heightened standard for which BDSI advocates here. In *Lifetime Industries, Inc. v. Trim-Lok, Inc.*, the Federal Circuit rejected the defendant's argument that specific details of infringement were required, and instead found the complaint to be sufficient where the patentee pled where the infringement occurred, when it occurred, who performed the infringing act, and why the act was done. 869 F.3d 1372, 1379 (Fed. Cir. 2017). The Federal Circuit emphasized that its precedent required only notice of the specific accused activity, and not detailed factual allegations, and stated that "[defendant's] complaints concerning lack of detail ask for too much. There is no requirement for [plaintiff] to

'prove its case at the pleading stage.'" *Id.* (quoting *In re Bill of Lading Transmission and Processing Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

Similarly, in *K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, the Federal Circuit found that the plaintiff met the requirements of "notice and facial plausibility" where the plaintiff's complaint pled sufficient information to put defendant on notice of "what [plaintiff's] patents claim, . . . what [plaintiff] asserts their systems do, and why." 714 F3d. 1277, 1287 (Fed. Cir. 2013). The Court confirmed the sufficiency of the plaintiff's complaint, even though it could not specifically identify how the defendant performed the allegedly infringing method, and stated that "[a] defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible." *Id.* at 1286.

Other district courts, including the District of Delaware, have followed this same approach. In *DermaFocus LLC v. Ulthera, Inc.*, the district court rejected defendant's contentions that plaintiff failed to point out exactly "which particular combinations of components . . . allegedly infringe when used," or "allege how all of the claimed method steps are performed." 201 F. Supp. 3d 465, 470 (D. Del. Aug. 11, 2016). The court reviewed the only independent claim recited in the complaint and found that it was broad enough to plausibly encompass defendant's process and that "it is not apparent to the court whether the information demanded by defendant is in the public domain and, therefore, reasonably available to plaintiff." *Id.* Thus, the *DermaFocus* court acknowledged that a plaintiff is not responsible for providing facts that are not reasonably ascertainable at the pleading stage of litigation. [8]

_____

[8] More recently, in *Zimmer Surgical, Inc. v. Stryker Corp.*, Civil Action No. 16-1679-RGA-MPT, 2017 WL 1296026 (D. Del. Apr. 6, 2017), the Delaware court adopted the *DermaFocus* analysis

Aquestive has sufficiently identified BELBUCA and its components. In any event, these cases, and the Federal Circuit's precedent, confirm that Aquestive is not required to provide an element-by-element infringement analysis at the pleading stage.

### 2. The Complaint Pleads Patent Infringement With Sufficient Particularity

The facts alleged in Aquestive's Complaint "allow[] the court to draw the reasonable inference that [BDSI] is liable for [patent infringement]" by making, selling, or offering for sale BELBUCA. *Iqbal*, 556 U.S. at 678. Accordingly, the Complaint alleges "enough facts to state a claim to relief that is plausible on its face," which is all that is required at this stage. *Twombly*, 550 U.S. at 570.

Just as it did on the issue of standing, BDSI attempts to confuse the pleading standard by focusing on irrelevant law. Specifically, BDSI relies on the abrogation of Rule 84 of the Federal Rules of Civil Procedure and the resulting inadequacy of a complaint taking the form of previously available Form 18. Under Form 18-type pleading, nothing more than notice of infringement was required. For example, a plaintiff did not even need to identify an accused product. But, Aquestive's Complaint is not a mere Form 18-style notice pleading.

While a patent owner can no longer rely on Form 18 to satisfy the pleading standard, no precedent requires a plaintiff to include expert infringement opinions, claim construction positions, or detailed claim-by-claim, element-by-element infringement contentions. Indeed, due to the confidential nature of various accused products and processes, "[a] defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible." *K-Tech*, 714 F3d. at 1286; *see also DermaFocus*, 201 F. Supp. 3d

_____

in concluding that the infringement allegations were sufficiently pled because the complaint "specifically identif[ied] the products and its components." *Id.* at *4-5.

at 473 n.7 ("it may not be possible for a plaintiff to describe its case-in-chief with particularity at the outset of litigation, without access to the accused method, the accused apparatus for reverse engineering, or confidential data."). Such a bar to litigation is not contemplated by *Iqbal* and *Twombly*, which simply require that a plausible claim for infringement be alleged. Indeed, Aquestive's Complaint relies on information from BDSI's website and the FDA to identify: (1) the infringing BELBUCA product, (2) the dosage strengths sold, (3) that "BELBUCA is a buccal film providing transmucosal delivery of buprenorphine hydrochloride"; (4) that the strength of each "BELBUCA film is dependent on the buprenorphine concentration in the formulation and the surface area of the film"; and (5) all ingredients in BELBUCA. *See, e.g.*, Compl. ¶¶ 19-23.

Further, many courts have held that the *Iqbal*/*Twombly* standard is satisfied by no more than an identification of a representative claim of the patent-in-suit, with some description of the patented invention, and an identification and some description of the accused products. *See, e.g.*, *Zimmer* at *10; *DermaFocus* at 469; *Incom Corp. v. The Walt Disney Co.*, Civil Action No. 15-3011 (PSG) (MRWx), 2016 U.S. Dist. LEXIS 71319 at *5-8 (C.D. Cal. Feb. 4, 2016) ("Plaintiff has stated a plausible claim for direct infringement by specifically identifying Defendants' products and alleging that they perform the same unique function as Plaintiff's patented system."); *Avago Tech. General IP v. Asustek Computer Inc.*, Civil Action No. 15-4525, 2016 WL 1623920, at *4 (N.D. Cal. Apr. 25, 2016) (stating "nothing about *Twombly* and *Iqbal* suggests that a patent infringement complaint that largely tracks the language of the claims to allege infringement is insufficient per se"); and *Uniloc USA Inc. v. Avaya Inc.*, Civil Action No. 15-1168 (JRG), 2016 U.S. Dist. LEXIS 181826 at *15-17 (E.D. Tex. May 13, 2016) (rejecting defendant's argument that element-by-element claim analysis is required for a well pleaded

complaint).

For example, in *Uniloc*, the court found the heightened pleading standard was satisfied where the plaintiff "identified with specificity representative claims from each patent-in-suit that are allegedly infringed, . . . identified by name the accused products, described the accused functionality within these products, and provided descriptive illustrations of these products and the accused functionality." 2016 U.S. Dist. LEXIS 181826, at *15-17. The court found that such "factual allegations are sufficient to support a reasonable inference that [the defendant] is liable for direct infringement of the asserted claims." *Id.*

As in the *Uniloc* case, Aquestive's Complaint identifies and describes the accused product. *See, e.g.*, Compl. ¶¶ 19-23. The Complaint alleges that BELBUCA infringes a specific subset of the claims (13, 33, 39, 45, 52, 66, 73, 83, 89, 95-98, 100-103, 105, 107, 108, 117 and 118). *See, e.g.*, Compl. ¶¶ 32, 36. Further, the Complaint sets forth specific aspects of BELBUCA from which infringement can reasonably be inferred. *See* Compl. at ¶¶ 14-23. Accordingly, the Complaint sufficiently pleads infringement of the asserted claims by BDSI's sale of BELBUCA.

### 3. BDSI Cannot Shield Itself By Operating In Secrecy

As set forth above, the Complaint sufficiently pleads infringement. Therefore, nothing further need be pleaded, nor is any further justification needed for Aquestive's infringement allegations. Nevertheless, out of an abundance of caution, Aquestive provides the following additional discussion that, while not required, further supports the sufficiency of Aquestive's pleading.

BDSI incorrectly asserts that the Complaint fails sufficiently to allege infringement of four claim elements. *See* Mot. at 14-18. For example, BDSI alleges that the Complaint fails to plead elements related to uniformity and how the product is formed. *Id.* However, BDSI

publicly advertises that BELBUCA is "approved by the U.S. Food and Drug Administration (FDA)." Compl., Ex. B at 1. In order for the FDA to approve BELBUCA, the product must be sufficiently uniform to meet FDA standards for drug content uniformity. Thus, the fact that BELBUCA has been approved by FDA supports a reasonable, plausible inference that BELBUCA may be sufficiently uniform to meet the content uniformity limitations of the asserted claims. Further, the typical manufacturing process for a commercial pharmaceutical film like BELBUCA generally involves mixing the ingredients together to make a flowable wet blend, and then casting the viscoelastic, wet blend of ingredients, the film matrix, onto a carrier which travels through an oven to dry the film into a sheet which is then cut into individual units. In order to maintain a high level of uniformity of drug content during the manufacturing process, a number of steps must be taken, including, as claimed in the '167 patent, the use of a controlled drying process, one aspect of which is to form the viscoelastic matrix and lock the active component in place so that it minimizes migration so that it does not result in a disuniform product.[9]

The specifics of BDSI's confidential manufacturing process will be obtained during discovery, and BDSI should not be allowed to "shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible." *K-Tech.*, 714 F.3d at 1286. Certain aspects of the BELBUCA product cannot be <u>proved</u> without

_____

[9] This is not to say that the FDA's drug content uniformity requirements and those of the asserted claims are coterminous, but simply that having been approved by FDA, and hence having met the FDA's uniformity requirements, a plausible basis exists to plead that BELBUCA's manufacturing process meets the uniformity limitations of the claims. Therefore, Aquestive has a good faith basis for asserting, and has adequately pled, that the manufacturing process for making BELBUCA meets those claim elements.

discovery; thus, Aquestive must draw on inferences such as those discussed above, which are sufficient at the pleading stage. *See DermaFocus*, 201 F. Supp. 3d at 469 (recognizing that in patent infringement actions, "it is logical to presume that a defendant has greater access to and, therefore, more information about any accused method"). BDSI's manufacturing process, including its drying process, is not publicly disclosed. Therefore, proof of the specifics of the drying method that BDSI uses when manufacturing BELBUCA and the resulting specific uniformity cannot be proven without discovery. But, proof is not required at the pleading stage. BDSI cannot be allowed to infringe the '167 patent with impunity simply because some of the information about its product is not publicly available. BDSI has such information, and it should be made available through discovery. Nevertheless, the facts available and provided in the Complaint allow the Court to draw reasonable inferences regarding the infringing nature of BDSI's product.

For example, the Complaint alleges that BELBUCA film is self-supporting. *See*, *e.g.*, Compl. ¶¶ 2, 28, and 37. BDSI's position appears to be that the Complaint fails to describe *why* BELBUCA is self-supporting. But as BDSI admits in its Motion, "self-supporting" merely means that the films are "able to maintain their integrity and structure in the absence of a separate support." Mot. at 15 (quoting the '167 patent at 23:37-39). BDSI's argument puts form over substance – BDSI's admission that it understands the meaning of the claim element allows it to determine whether there is some separate support that maintains the integrity of the film (which there is not). For example, as stated in the Complaint, the product insert for BELBUCA demonstrates that the film is removed from the foil package and applied directly against the cheek and left in place until the entire film dissolves. *See* Compl., Ex. C at 28-31. There is no separate support from which the film is removed, or that is leftover in the mouth after the film

itself dissolves.  *Id*.  The illustration in the product insert also demonstrates that the film is "self-supporting" on the patient's finger.  *Id*.

Likewise, BDSI asserts that the Complaint fails to plead that BELBUCA features "a substantially uniform distribution . . . of said active component within said polymer matrix." Mot. at 15-16.  BDSI's assertions are baseless, particularly in light of the table in the Complaint showing the strength of the "active component," buprenorphine, by dosage size.  Compl. at ¶ 22. The information in this table supports a reasonable inference that BELBUCA features a substantially uniform distribution of the active component.

BDSI argues that the information pleaded regarding Table 6 is not sufficient to infer that its product meets the claim limitation.  *See* Mot. at 15.  But that argument misses the mark and is more appropriately raised through expert discovery, not in a motion to dismiss.  Aquestive does not have access to BDSI's factory floors to confirm whether individual doses of the BELBUCA film are cut from a larger film.  Nevertheless, given the practice of the industry, it would be highly unusual for the individual doses of BELBUCA not to be cut from a larger sheet of film. In order for the BELBUCA product to be cut into individual doses and maintain the level of consistency in dosage versus size, the BELBUCA product must feature "a substantially uniform distribution . . . of said active component within said polymer matrix."  Because BELBUCA is sold in certain dosage units, and has been approved by FDA, the films must have sufficient drug content uniformity to ensure the appropriate dosage amount is in each film.  Indeed, the fact that BELBUCA is sufficiently uniform to receive FDA approval is more than ample to support the reasonable inference at the pleading stage that BELBUCA infringes this claim element.[10]

_____

[10] BDSI's argument regarding the statements made during an *inter partes* review of the '167 patent are similarly unavailing.  Statements made during those proceedings are irrelevant to

Contrary to BDSI's assertions, the Complaint also sufficiently alleges that "substantially equal sized individual unit doses [of BELBUCA] do not vary by more than 10% of said desired amount of said active component." *See* Mot. at 16-18. As stated in Exhibit B to the Complaint, BDSI advertises that "BELBUCA™ was approved by the [FDA] on October 23, 2015 . . . ." Compl. at ¶ 3. As noted above, FDA requires a high level of drug content uniformity for drug approval, and required BDSI to perform testing to demonstrate such uniformity. While this testing is not publicly available and can only be obtained from BDSI through discovery, the fact that BELBUCA has been approved by FDA confirms that BDSI performed the required testing and supports a plausible inference that BELBUCA is sufficiently uniform to meet the drug content uniformity limitations of the asserted claims.

Finally, BDSI asserts that the Complaint does not allege that BELBUCA film is made by the claimed controlled drying process. Mot. at 16. Aquestive alleges this element in, for example, paragraphs 17 and 28 of the Complaint. Moreover, given that the commercial manufacture of such pharmaceutical films typically involves drying a wet blend to make a sheet of film that is then cut into individual dosage units, and because the drying process must be carefully controlled to avoid conditions that may result in disuniformity, it can be plausibly inferred that BELBUCA is made using the claimed controlled drying process. Again, that the specifics of BDSI's manufacturing process can only be determined by discovery is not a reason to dismiss the Complaint. *See DermaFocus*, 201 F. Supp. 3d at 470 (denying motion to dismiss

whether Aquestive has sufficiently pled infringement because those statements were made in the context of the Patent Office's review of BDSI's rejected invalidity arguments. *See* Mot. at 17-18. They cannot establish, as BDSI now argues, that Aquestive's Complaint does not adequately allege an infringement claim that is plausible on its face.

where the court could not determine "whether the information demanded by defendant is in the public domain and, therefore, reasonably available to plaintiff").  To find otherwise would allow BDSI to shield itself from infringement for any process or method claim, a result that the Federal Circuit has squarely rejected.  *See K-Tech.*, 714 F.3d at 1286 (stating that a defendant should not be allowed to "shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible.")

### 4.  The Complaint Pleads Indirect Infringement With Sufficient Particularity

As with its direct infringement arguments above, BDSI overstates the standard by which Aquestive must plead its indirect infringement claims.  Because BDSI bases its indirect infringement arguments on the same "underlying" direct infringement allegations, BDSI's Motion should be denied with respect to Aquestive's induced and contributory infringement claims.  *See* Mot. at 17.

"To plausibly state a claim for inducement, the Complaint should allege direct infringement and that 'the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'"  *Audio MPEG, Inc. v. HP Inc.*, No. 2:15-cv-00073-HCM-RJK, 2016 WL 7010947, at *9 (E.D. Va. June 29, 2016) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)).  As stated in the Complaint, BDSI "sold and offered for sale BELBUCA to end-consumers through a third-party licensee."  *See* Compl. ¶ 19.  As further alleged in the Complaint, BDSI has had actual notice of the '167 patent since at least October 13, 2014, had knowledge that the use of BELBUCA was directly infringing the '167 patent, and has actively encouraged the use of BELBUCA in an infringing manner.  *See id.* at ¶¶ 20, 32, and Compl. Ex. C.  Because Aquestive adequately pled direct infringement, these induced infringement allegations are sufficient to withstand BDSI's motion.  *See DermaFocus*, 201 F. Supp. 3d at 471, n.11 (denying motion to

dismiss induced infringement claims and rejecting "the notion that a complaint for patent infringement needs to match up specific instructions to claims [*sic*] elements").

Similarly, "to plausibly state a claim for contributory infringement, the Complaint should allege '1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention.'" *Audio MPEG, Inc.*, 2016 WL 7010947, at *9 (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)). As discussed above, the Complaint contains allegations concerning BDSI's knowledge of the patent and its knowledge of the infringing nature of its BELBUCA product. The Complaint further alleges that BDSI knew that "such products infringe and are not staple articles or commodities of commerce suitable for a substantial noninfringing use." Compl. ¶ 37. Such allegations are all that is required post-*Iqbal*, and they are therefore sufficient to overcome BDSI's motion to dismiss. *See Conair Corp. v. Jarden Corp.*, 2014 WL 3955172, at *4 (S.D.N.Y. Aug. 12, 2014) (stating that, because of "the difficulty of alleging enough facts to demonstrate a negative at th[e pleading] stage … numerous post-*Iqbal* cases have not required detailed factual allegations in support of a plaintiff's claim that a defendant's product lacks substantial noninfringing uses.") (collecting cases).

### C. **BDSI's Ultimate Request for Relief is Improper**

Curiously, BDSI moves to dismiss Aquestive's Complaint with prejudice (*see* Mot. at 22), which would be a nonsensical result under the Federal Rules. Given the status of this case, where no responsive pleading has ever been filed, Aquestive has the right under Federal Rule 15(a) to file an amended complaint, even if the Court were to find some deficiency in the existing Complaint. Indeed, dismissal at this stage of this litigation, where no responsive pleading has been filed, would be an abuse of discretion in the Fourth Circuit. *See, e.g.*, *Hall v. Burney*, 454 F. App'x 149, 151-52 (4th Cir. 2011).

Even where leave of court is required, the Federal Rules dictate that "[t]he could should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Lujan v. Chowan Univ.*, No. 2:17-CV-57-FL, 2018 WL 3763121, at *2 (E.D.N.C. Aug. 8, 2018) (quoting *Foman v. Davis*, 371 US 178, 182 (1962)). These "reason[s]" do not exist in this case. As emphasized by the Fourth Circuit, "[t]his liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (emphasis added). As explained above, there is no basis for dismissing Aquestive's Complaint, and BDSI should be made to file an answer so that the Court can proceed to resolving the infringement claims on their merits.

## IV. CONCLUSION

Aquestive has the right to bring this action on its own behalf. And Aquestive did so with a sufficiently pleaded complaint. For the foregoing reasons, Aquestive respectfully submits that the Motion to Dismiss should be summarily denied in its entirety. In the unlikely event the Court finds there is some deficiency in the Complaint, Aquestive should be allowed to amend the Complaint.

Dated: January 2, 2019                    Respectfully submitted,

                                         By: */s/ James F. Hibey*
                                             James F. Hibey
                                             STEPTOE & JOHNSON LLP
                                             1330 Connecticut Avenue, N.W.
                                             Washington, D.C. 20036
                                             (202) 429-6407
                                             jhibey@steptoe.com

Jamie L. Lucia
STEPTOE & JOHNSON LLP
1 Market Street, Suite 1800
Steuart Tower
San Francisco, California 94105
(415) 365-6711
jlucia@steptoe.com

*Attorneys for Plaintiff*
*Aquestive Therapeutics, Inc.*


By:  */s/ E. Bradley Evans*
     E. Bradly Evans
     N.C. State Bar I.D. No.:28515
     Email: ebe@wardandsmith.com
     Joseph A. Schouten
     N.C. State Bar I.D. No.: 39430
     Email: jas@wardandsmith.com
     WARD AND SMITH, P.A.
     Post Office Box 8088
     Greenville, NC 27835-8088
     Phone: 252-215-4025
     Fax: 252-215-4077

     *Local Civil Rule 83.1 Counsel for*
     *Plaintiff Aquestive Therapeutics, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2019, I electronically filed the foregoing AQUESTIVE THERAPEUTICS, INC.'S ANSWERING BRIEF IN OPPOSITION TO BDSI'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants: Lynne A. Borchers, Esq., Peter D. Siddoway, Esq., Kia Freeman, Esq., Wyley S. Proctor, Esq., and Thomas F. Foley, Esq.

*/s/ E. Bradley Evans*
E. Bradley Evans
N.C. State Bar I.D. No.: 28515
Email: ebe@wardandsmith.com
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835-8088
Phone: 252-215-4000
Fax: 252-215-4077

*Local Civil Rule 83.1 Counsel for*
*Plaintiff Aquestive Therapeutics, Inc.*